UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| James P. Laplante, | : | |
| **Plaintiff** | : | |
| v. | : | **C.A. 07-0062ML** |
| York Insurance Company of Maine | : | |
| **Defendant** | : | |

**Plaintiff's Memorandum In Response to Defendant's Objection to Its Request to Compel Production.**

**Background:**

This is a state case which was removed under the Diversity Clause in which the core issue is whether or not the policy of the State of Rhode Island, the forum state, as expressed in the statute R.I. 27-7-2.1 (i) mandating intra-policy stacking of mandated uninsurance coverage supercedes the holding in non forum state as contained in the holding in *Sanders v. St. Paul Mercury Insurance Co.*, 148 Vt.496, 498-99, 536 A.2d 914, 915-16 (1987), permitted insurance contract limitations on intra policy stacking.

The Plaintiff is requesting information to meet the criteria for the interest weighing approach used by Rhode Island as the forum state in a conflict of laws application.

- **Choice of Law Factors require Information about Stacking.**

This is a dispute about the coverage of an insurance contract between York Insurance Company of Maine and James Laplante who was living in Rhode Island when he was involved in serious disabling accident in Lincoln, Rhode Island on February 23, 2003. This is a diversity case where the choice of law frame work of the forum state, Rhode Island, must be followed. *Crellin Technologies* v. *Equipmentlease Corp*., 18 F.3d 1,5 (1st Cir. 1994[1]), *Toledo v. Van Waters & Rogers, Inc*., 92 F. Supp.2d 44 (D.R.I. 2000); *URI Cogeneration v. Bd. Of Governors*, 915 F. Supp. 1267, 1279, (R.I. 1996).

[1] *Crellin Technologies v. Equipmentlease Corp*., 18 F.3d 1, 5 (1st Cir. 1994)
**A. Choice of Law.**

The forum state not only chooses the method of selection of the law to be chosen for the choice of law, it also selects the characterization of the law to be chosen [2] The measure of damages in an automobile accident involving a Rhode Islander is to be s characterized by R.I. law.[3]

*Interest weighting* is guided by the U.S. Constitution,[4]. Article 4, section 1, of the United States Constitution mandates that full faith and credit be "given in each state to the public acts, records, and judicial proceedings of every other state", Vermont must recognize that an act of the State of Rhode Island, *R.I.G.L.*§27-7-2.1(i), mandates that an insured is entitled to be paid for the all of the coverage provided by premiums paid within a single policy. Subsection (i) of Chapter 7 of Title 27 covers any Rhode Island domiciliary. The purpose of that uninsurance coverage is to protect persons, not vehicles. Subsection (i) is not modified by any provisions of law. It makes no exception in its

---

[18] It is, of course, a black-letter rule that state substantive law must be applied by a federal court sitting in diversity jurisdiction. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In determining what state law pertains, the court must employ the choice-of-law framework of the forum state, here, Rhode Island. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Putnam Resources v. Pateman*, 958 F.2d 448,464 (1st Cir. 1992). Choice-of-law judgments are legal in nature, and courts of appeals exercise plenary oversight in respect thereto. See Soo Line R.R. Co. v. Overton, 992 F.2d 640, 643 (7th Cir. 1993); Waggoner v. Snow, Becker, Kroll, *Klaris*, *&Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993); Putnam Resources,958 F.2d at 466. Consequently, a de novo standard of review obtains.[fn5]

[2] *Gordon v. Clifford Metal*, **602 A.2d 535,557(R.I. 1992). It is well settled that the forum state is required to apply its own conflict-of-law rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The forum state is also free to characterize the nature of the dispute. See Restatement (Second) Conflict of Laws § 124, comment a at 354 (1971).**

[3] *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,301(1968).
Accordingly the defendants' alleged wrongful conduct is to be judged by the law of Massachusetts, but the host's duty of care to his passengers and **the measure of damages to be applied are to be governed by the law of Rhode Island**

[4] R.I. and Vermont must recognize the provisions of the provisions of Article 4, section 1, of the United States Constitution mandates that full faith and credit be "given in each state to the public acts, records, and judicial proceedings of every other state,".

mandate for residents of Vermont who have moved to Rhode Island. It is R.I. legislative benefit provided to any Rhode Island who pays additional premiums for coverage in any automobile policy. There is nothing in the language of subsection (i) which limits in benefits to only Rhode Islanders who have received an insurance policy which was delivered in Rhode Island.

Such interest weighing must also take into consideration Due Process[5] and Reciprocity considerations under the Constitutions of the United States and Rhode Island[6]. Automobile insurance policies intertwine principles of contract law and tort law. Rhode Island's "interest weighting" model for choices of law intertwines factors relating to both traditional tort law and traditional contract law. Rhode Island combines the factors formerly related to the location of the injury and the location of the contract. Both Vermont and Rhode Island have joined twenty nine other States in utilizing the interest balancing approaches contained in the Restatement (Second)of Conflict of Laws (1971).

---

[5] *Mitchell v. State Farm Ins. Co.,* 315 Mont. 281, 68 P.3d 703 (2003) 102, 2003 MT); U.S.C.A. Const Amend XIV.. Anti-stacking provision in automobile insurance policies violated substantive due process, where provision permitted insurer to charge premiums for five separate uninsured motorist (UM) coverages, in spite of fact that the anti-stacking provision only permitted insured to recover for one coverage.

[6] *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,295-2961(1968).Furthermore, if a forum confronted a hard case and there was no rationale upon which the controlling matters could be labeled as procedural, it could always apply the rule that it is not constitutionally obligated to give full faith and credit to a foreign jurisdiction's laws if to do so would violate some "public policy" of the forum state The strict *lex loci delicti* doctrine, as it was being applied by the courts in the first half of the twentieth century, therefore, no longer provided the uniformity of result considered to be its primary virtue. This undermined the justification for its use when the effect was to override a forum's domestic law in cases in which the forum had the principal interest.

[1] Of course a forum court is not constitutionally free to apply its own laws to every element of every tort case brought before it . The full faith and credit, due process, and equal protection clauses of the federal constitution still require that the forum have some rational basis for applying its own laws to a tort or injury which occurred in a foreign jurisdiction and which is being litigated in the forum.

The choice of law frame work followed by both Rhode Island[7],[8] and Vermont[9] look to factors which bear the **"most significant relationship"** to the event and to the parties.

---

[7] *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997). We follow instead the interest-weighing approach. In so doing, we look at the particular case facts and determine therefrom the rights and liabilities of the parties "in accordance with the law of the state that bears the **most significant relationship** to the event and the parties." Pardey v. Boulevard Billiard Club, 518 A.2d 1349, 1351 (R.I. 1986), see also *Putnam Resources* v.*Pateman*, 958 F.2d 448, 464 (1st Cir. 1992); *Blais v. Aetna Casualty & Surety Co*., 526 A.2d 854, 856-57 (R.I. 1987); *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176 (1969). That approach has sometimes been referred to as a rule of "choice-influencing considerations." See Robert A. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U. L. Rev. 267, 282 (1966).
[13] In applying the interest-weighing or choice-influencing considerations, we consider as noted in Pardey, 518 A.2d at 1351:

"(1) predictability of result;
"(2) maintenance of interstate and international order;
"(3) simplification of the judicial task;
"(4) advancement of the forum's governmental interests; and
"(5) application of the better rule of law."

[14] We also consider the particular factors pertaining in each case setting as noted in Woodward and Brown as well as in Restatement (Second) Conflict of Laws, § 145(2) at 414 (1971) which provides:

"(a) the place where the injury occurred,
"(b) the place where the conduct causing the injury occurred,
"(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and "(d) the place where the relationship, if any, between the parties is centered."

[8] *Najarian v. Nat'l Amusements Inc*., 768 A.2d 1253, 1255(R.I. 2001).

9 *Matson v. Anctil*, 979 F. Supp. 1031, 1034,1035 (Vt. 1997). A. Choice of law
In diversity cases, a federal court must follow the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994). Recently the Vermont Supreme Court adopted the "significant contacts" approach of the Restatement (Second) for choice of law decisions in tort cases, in *Amiot v. Ames*, 693 A.2d 675 (Vt. 1997). See also *Miller v.White*, ___ Vt. ___, 702 A.2d 392 (1997).*** The Defendants argue that, under ***Amiot,*** this Court should apply Rhode Island law to the issues of whether the Defendants may sue Emily's parents for contribution, and whether the Defendants' liability, if any, may be weighed against the parents' liability, if any. The Plaintiff asserts that Vermont law should apply.

According to the Restatement's section 145(1), "[t]he rights and liabilities of the parties with respect to an issue in tort will be determined by the local law of the state which, with respect to that issue, **has the most significant relationship** to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (1971). In a personal injury action, the state or country with the **most significant relationship** will usually be that where the injury occurred. Amiot, 693 A.2d at 678.

Of the seven general choice of law principles set forth in section 6, only four factors are significant in the field of torts: the needs of the interstate systems; the relevant policies of the forum; the relevant policies of other interested states, and the relative interests of those states in the determination of the issue; and ease in the determination and application of the law to be applied. Id.; Miller, 702 A.2d at 393; Restatement (Second), § 6(2)(a)-(c), (g). In applying these factors, a trial court takes into account the following contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second), § 145(2).

The “choice-influencing considerations” utilized in Rhode Island cover factors which are relevant to mixed tort and contract questions. Those factor are the following factors: "(1) predictability of result; "(2) maintenance of interstate and international order; "(3) simplification of the judicial task; "(4) advancement of the forum's governmental interests; and "(5) application of the better rule of law." Id. Rhode Island also considers particular factors such "(a) the place where the injury occurred, "(b) the place where the conduct causing the injury occurred, "(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and "(d) the place where the relationship, if any, between the parties is centered." When the public policy of the forum state conflicts with a non forum state, the forum state does not have to follow the dictates of non forum state. See *Allstate Ins. Co. v. Sullam*, *76 Misc.2d 87, 349 N.Y.S.2d 550,* (1973). which held that when a Massachusetts automobile-insurance law conflicts with the public policy of a state in which an accident has occurred, the court of the forum state need not follow Massachusetts law.

- **Rule 26 (b(1)**

Rule 26 (b)(1) of the Federal Rules of Civil Procedure allows a party to “obtain discovery regarding any matter that is relevant to the claim*** of any party,”

Since the Defendant’s agent, **OneBeacon Insurance Company**, to whom the Defendant has ceded its entire business, had written a letter on June 15, 2004, Exhibit 1, to the Defendant indicating it was following R.I. law when it made a medical payment under his policy coverage of five thousands ($5000.00), that was an indication that R.I. law is followed by the agents of the Defendant. Thus, Plaintiff is seeking to discover information from the Defendant and its agents handling this claim about the payment of stacking claims in the State of Rhode Island. These requests are relevant.

With regard to the stacking issue, the Plaintiff asked Defendant to respond to the following six (6)requests:

“3. To the extent not described and produced above, any and all similar tangible material of any kind or description in your possession, care, custody or control (including but not limited to OneBeacon Insurance Group) that in any way is in support of your claim that the motor vehicle accident which gives rise to this Complaint **was not, either in whole, or in part, caused by an uninsured motorist, and/or an unknown vehicle.**

“6. Any and all documents, to include but not be limited to, all complaints, inquiries, or responses either to Defendant (including but not limited to OneBeacon Insurance Group) or from Defendant (including but not limited to OneBeacon Insurance Group) to the Rhode Island Department of Business Regulation, Insurance Division respecting business conducted by Defendant (including but not limited to OneBeacon Insurance Group) in Rhode Island from three (3) years prior to the date of the motor vehicle accident referenced in this Complaint to three (3) years subsequent to that accident.

“7. With respect to the above Request Number 6, but not by way of limitation, and for the time periods referenced therein, any and all documents of any kind or description that make reference to **policy stacking** in Rhode Island (whether intra-policy stacking, or inter-policy stacking).”

“8. Complete copies of any and all **Adjuster(s) reports**, notes, letters, or correspondence of any kind or description (whether internal, and not delivered, or delivered) from Defendant (including but not limited to OneBeacon Insurance Group) to James Laplante or Joseph Laplante which in any way is related to the motor vehicle accident that gives rise to this Complaint. “

“9. Any and all records (with the name(s) and identifier(s) of individual policyholder’s redacted) that serve to disclose **any stacking claim**(s) (whether inter-policy or intra-policy) paid to or otherwise settled by Defendant (including but not limited to OneBeacon Insurance Group) to any insured in any jurisdiction for the time period of five (5) years prior to the motor vehicle accident in question here to the present. “

With respect to the request for production made on June 29, 2007, any documents relating to a defense to stacking covered under that request; to wit,

“Any and all documents in your care, custody, control or possessions, which refer in any way to the Motor Vehicle Accident, involving James Laplante that relates to any defense of the above lawsuit”

On June 29, 2007, Plaintiff requested the following**:**
“that the Defendant or an agent engaged under a ceding agreement by the Defendant, pursuant to Rule 34 of the F.R.Civ. produce the following documents:

> Any and all documents in your care, custody, control or possessions, which refer in any way to the Motor Vehicle Accident, involving James Laplante that relates to any defense of the above lawsuit. "

Defendant has objected to the Plaintiff's motion to compel on a number of grounds, to which Plaintiff herein provides a response.

- **OneBeacon Insurance Group Claims Department is a related entity.**

Both York Insurance Company of Maine and OneBeacon Insurance Company of Maine are members of OneBeacon Insurance Group, which is unincorporated group of insurance companies which operate in all fifty states, which advertise nationally under the heading of OneBeacon Insurance Group, and whose members cede its other in particular cases their premiums and insurance business, and in some case provide re-insurance and excess coverage policies to each other, according to the deposition of Dennis Smith, Secretary of York Insurance Company, and of several other member insurance groups. Many of those insurance companies are located in States which allow intra policy stacking. The decisions on adjusting of the claims of James Laplante and of his father,Joseph Laplante have been by OneBeacon Insurance Company, a member of OneBeacon Insurance Group, which is incorporated in Pennsylvania, and does business in Massachusetts. All of the letters heads, such as the letter of June 15, 2004 from OneBeacon Insurance Company regarding the claim of James Laplante, OB6009087, have been written on letter head, which state they are being sent from OneBeacon Insurance Group Claims Department in Foxboro, Massachusetts. Exhibit 1. Attached.

If OneBeacon Insurance Group and OneBeacon Insurance are non entities, why then would their attorney, Keith Athen, send copies of letters to those non entities? See Exhibit 3 and 4. Why would the insurance policy have the logo One Beacon Insurance on

it? Why would all the letters to the Plaintiff and his father have the OneBeacon Insurance Group Claims Department on their letterhead?

The pleadings and Deposition in the previous case have demonstrated that the members of OneBeacon Insurance Group are related entities that have been involved in the determination of Laplante's claim on stacking. Earlier depositions and pleadings have demonstrated that their actions are related to the conflict of laws criteria which have been enumerated above, in particular, "(d) the place where the relationship, if any, between the parties is centered.".

- **Status of York Insurance Company of Maine**.

1. York Insurance Company of Maine is incorporated with its principal place of business in the State of Maine. (Answer of York Insurance Company of Maine, Paragraph 3. February 14, 2007).
2. Dennis Smith is the Secretary of York Insurance Company of Maine. (Deposition of Dennis Smith, page 13 lines 9-10, February 21, 2006, C.A. 05-496ML).
3. York Insurance Company of Maine is a member of OneBeacon Insurance Group. (Deposition of Dennis Smith, page 11 lines 17 -18, February 21, 2006, C.A. 05-496ML).
4. OneBeacon Insurance Group operates in all fifty states. "Some companies are licensed in all fifty, some are licensed to one."(Deposition of Dennis Smith, page 10 lines 1 -4, February 21, 2006, C.A. 05-496ML).
5. York Insurance Company of Maine is a wholly owned subsidiary of OneBeacon America Insurance Company, a Massachusetts Corporation. (Answer of York Insurance Company of Maine, Paragraph 3. February 14, 2007).

6. OneBeacon America Insurance Company is a wholly owned subsidiary of OneBeacon Insurance Company, A Pennsylvania Corporation. (Answer of York Insurance Company of Maine, Paragraph 3. February 14, 2007)
7. OneBeacon Insurance Company, a Pennsylvania Corporation, is in turn a wholly owned subsidiary of OneBeacon Insurance Group, LCC, which is a limited liability company, formed in the State of Delaware, with a principal place of business in Boston, Massachusetts. (See Answer of York Insurance Company of Maine, Paragraph 3. February 14, 2007; Deposition of Dennis Smith, page 11 lines 17 -18, February 21, 2006, C.A. 05-496ML.).
8. OneBeacon Insurance Company, a Pennsylvania Corporation, a wholly owned subsidiary of OneBeacon Insurance Group, LLC handled the adjustment of claims for York Insurance Company of Maine under a ceding agreement of premiums and claims with York Insurance of Maine . (Answer of York Insurance Company of Maine to paragraph 9 of Plaintiff's Complaint, Paragraph 6, February 14, 2007), (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006, C.A. 05-496ML).
9. OneBeacon Insurance Company, a Pennsylvania Corporation, is a foreign corporation licensed to do business in the State of Rhode Island. (R.I. Department of Business Regulation).
10. York Insurance Company of Maine "reinsures 100 percent of its business with OneBeacon Insurance Company. (Deposition of Dennis Smith, page 17 lines 18-19, February 21, 2006, C.A. 05-496ML). "It's 100 percent reinsurance agreement by which York Insurance Company of Maine cedes 100 percent of its insurance

business to OneBeacon Insurance Company, which in turns assumes all of that business in exchange for receipt of premiums and its handles the claims on policies written by York Insurance Company of Maine." (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006, C.A. 05-496ML). "Cede is when an insurance company transfers some amount of some portion of its business to another, to a reinsuring company, which assumes that particular amount of the business." (Deposition of Dennis Smith, page 33, lines 11-14, February 21, 2006, C.A. 05-496ML).

**11.** York Insurance Company of Maine "ceded" its authority to adjust and pay its claims to OneBeacon Insurance Company, which has its principal office in Massachusetts, and is a licensed foreign insurer, subject to the laws of Rhode

**Request 3,**

The Defendant has not designated any documents which are privileged and ask the Court to determine the applicability of the privilege, whether it might be. In the various letters the Plaintiff and his father, Joseph Laplante have received from the OneBeacon Insurance Group Claims Department have used different claims numbers, such as Claim Numbers 0B6 00908Z BL03-02-05 and 0B6 00908Z-03-06; and the policy indicates that there are separate files for each vehicle that was covered during the duration of the policy, from file number 14 through 18. Those files contain information which might lead to discoverable information regarding stacking and limits of liability under Rhode Island law. Kathleen Ahearn in her letter of June 15, 2004 though R.I. law applied. If other staff had opinion within the adjusting department of OneBeacon Group that R.I. law applied on stacking, Plaintiff needs to present such evidence at part of the

Forum State, Rhode Island, adoption of a combined tort-contract model under interest weighing approach adopted by R.I. in conflict of laws situations. There are only three separate files at most to be examined. That should not be a burdensome task.

**Request 6-Rhode Island Department of Business Regulation**

OneBeacon Insurance 's response from Edward Faschetti, Exhibit 2,attached,to the R.I. Department of Business Regulation is an admission that the Defendant recognizes that R.I. has regulatory control over the claim. R.I.Law is applicable to the Plaintiff's complaint regarding failure to provide stacking. The files and communications of the Defendant and their ceded agent with the State of Rhode Island's regulatory department are thus relevant to stacking.

- **Request 7. One Beacon Insurance and OneBeacon Insurance Group**.

As indicated above OneBeacon Insurance Group and OneBeacon Insurance are not non entities. They have a direct financial interest in the outcome of this litigation on stacking. The claims adjusting department of OneBeacon Insurance Group is handling this case through one of its members, OneBeacon Insurance Company. They have a very sophisticated computerized filing system for claims management. With a stroke of a computer key they can easily analyze the claims paid in Rhode Island and determine the number and type of stacking claims paid. It should not be burdensome.

- **Request 9**

As stated above, the claims department of OneBeacon Insurance Group, under the direction of its member, OneBeacon Insurance Company, are computerized. Depositions in the previous cases of OneBeacon Insurance Company employees handling clams

indicated an ability to provide detail information about claims made and paid. There should be no burden on the Defendant to provide the information requested.

- **June 29,2007 Request**

Defendant avers that he did not receive that request in June, but it admits it has received that request in August. To the extent that the accident claim files of the James Laplante contains any information regarding stacking, Defendant should produce such information.

- **Residency and Domicile Dispute.**

Plaintiff disagrees with Defendant's partial analysis in his response of paragraphs 1 and 19 of his complaint[10].[11]

Averments are factual statement subject to proof in the legal process and to legal analysis[12]. James Who is a resident and who is not a resident of any state is legal

---

[10] **Excerpt from Complaint Filed in R.I. Superior Court and Removed;**
07-0062ML, Averments
**Parties:**

1.Your Plaintiff is James P. Laplante currently a resident of Quechee, Vermont, who, at the time of the events complained of herein, was a then domiciliary of the State of Rhode Island, residing at 217 Douglas Pike, in North Smithfield, Rhode Island, when, driving a vehicle principally garaged in Rhode Island, when he was in an accident with a hit and driver in Lincoln, Rhode Island, on February 23, 2003, which caused him serious physical injury to him and the destruction of his vehicle, and during the period in which carried automobile insurance provided by the Defendant..

***

**19**. At the time of the accident in question, James Laplante was a temporary Rhode Island domiciliary, and a Vermont resident, subject to the benefit of his extraterritorial coverage provision, and therefore the beneficiary of Rhode Island statutes regulating types of coverage required to be provided motorists in Rhode Island.

[11] *Aetna Life and Casualty Co.v. Carrera,* 577 A.2d 980, 985 (R.I. 1990). We have previously stated that the determination of residency is a mixed question of law and fact.

[12] *Flather v. Norberg, 119 R.I. 276, 377 A.2d 225,281,282 (1977).*

[4] It is true that "residence is sometimes construed to mean domicile and the terms are often used to connote the same meaning." Reese & Green, *That Elusive Word, "Residence."* 6 Vand. L. Rev. 561, 569-74 (1953). Nonetheless, domicile, as it is properly understood, has a reasonably distinguishable and constant meaning. "`To establish a domicile and become a domiciled inhabitant there must be an actual abode in the state with the intention in good faith to live here permanently and without any *present* intention of changing the home in the future. Actual residence without such intention does not suffice.'" *Nevin* v. *Nevin*, 88 R.I.426, 433, 149 A.2d 722, 725 (1959), *quoting McCarthy* v. *McCarthy*,45 R.I. 367, 369, 122 A.529, 531 (1923). Generally, the controlling factor in determining a person's domicile is whether **he or**

definition. Plaintiff contents that Laplante had not lived 30 continuous days in Rhode Island, he did not otherwise qualify as a legal resident of Rhode Island. However, it does not follow that his prior residency in Vermont meant that the law of Vermont will be applied in the Court's choice of law selection. As the result of the Plaintiff's deposition, Plaintiff has discovered additional documents relating to residency and stacking, such as photographs of the premises in North Smithfield which he intends to use in his summary motion, affidavits, and undisputed statement of facts.

- **Defendant's Limited Objection to the Extension of Filing Date.**

Plaintiff is not seeking to extend discovery other than to have the documents requested produced and to update his own discovery duties to the Plaintiff in order that there is sufficient time to include relevant items with the Summary Judgment motions of both parties.. Defendant asked for photographs related to the residency in Rhode Island in his last deposition. Plaintiff has produced them via email and he has other photographs which is desirous of producing. Plaintiff's finance' also located other documents relating to residency which Plaintiff intends to use in his affidavits and statement of undisputed facts which he intends to use as support for his summary judgment motion. Note that the Plaintiff has been severely handicapped by the accident and he has been dependent upon Corinna Brown for assistance. Defendant is not prejudiced by the production of recently discovered records which it were originally requested prior to the order relating to Summary Judgments on Stacking. These are all documents related to the issues required

---

**she possesses the requisite domiciliary intent**. *Soucy* v. *Knight*, 52 R.I. 405, 408-09, 161 A. 132, 133(1932). [5] Residence, on the other hand, is not a word of fixed legal definition but must be interpreted according to the context and the purpose of the statute in which it is found. *District of Columbia* v. *In re H.J.B.*, 359 A.2d 285. (App. D.C. 1976). *See* Reese & Green, *That Elusive Word*,Page 282 *"Residence," supra*, at 563-64; Cramton, Currie, & Kay, *Conflict of Laws* 48 (2d ed. 1975). (Emphasis Added)

for consideration in the interest weighing test for decision on conflict of laws issues arising from depositions which the Defendant has taken this summer. The Plaintiff's supplemental production of additional items it found and of items to be produced by the Defendant do not prejudice either party but will help the Court decide this mixed question of fact and law on the choice of laws.

Filing ten days from date of production does not delay this matter nor prejudice either party.

**Plaintiff**
James P. Laplante
By His Attorney

(S)____________________
Keven A. McKenna, Esq.
Keven A. McKenna, PC
23 Acorn Street
Providence, RI 02903
(401) 273-8200
(401) 521-5820 Facsimile

**Certification of Notice**

I, the undersigned, hereby certify that on the 31 day of September, 2007, a true copy of the within document was filed electronically, and is available for viewing and downloading from the ECF system; and that C.Russell Bengston, the Attorney for York Insurance Company of Maine, C. Russell Bengsten, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903 will receive notice through the ECF system and by direct email, rbengstson@CKMlaw.com.

(s)Keven A.McKenna____________________