UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JAMES P. LAPLANTE | : | |
| | : | |
| vs. | : | C.A. No. 07-62 ML |
| | : | |
| YORK INSURANCE COMPANY OF MAINE | : | |

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, York Insurance Company of Maine, hereby moves, in accordance with this Court's Order of May 7, 2007, for partial summary judgment relative to the issue of the plaintiff's ability to stack Uninsured Motorist Insurance coverage limits and asserts as grounds therefore that there are no disputed issues of material fact relative to the issue and the defendant is entitled to judgment in its favor on the issue as a matter of law. In support of this Motion, the Court is respectfully referred to the Statement of Undisputed Facts, Affidavit of Kristin O'Donnell and Memorandum of Law filed contemporaneously herewith.

YORK INSURANCE COMPANY
OF MAINE
By its Attorneys,
CARROLL, KELLY & MURPHY

/s/ C. Russell Bengtson
C. RUSSELL BENGTSON #1233
PATRICIA A. BUCKLEY #2987
One Turks Head Place, Suite 400
Providence, RI 02903
(401) 331-7272 Telephone
(401) 331-4404 Facsimile
rbengtson@ckmlaw.com

CERTIFICATION

I hereby certify that on September 28, 2007, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that Keven A. McKenna, Esquire, KevenM@McKennalaw.cc will receive notice through the ECF system.

/s/ C. Russell Bengtson

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JAMES P. LAPLANTE | : | |
| | : | |
| vs. | : | C.A. No. 07-62 ML |
| | : | |
| YORK INSURANCE COMPANY | : | |
| OF MAINE | : | |

DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. Preliminary Statement

This case involves an uninsured motorist claim asserted by the plaintiff against his automobile insurance carrier. There are two issues presented by the case: whether the plaintiff is entitled to uninsured motorist coverage and, if he is, whether he is entitled to stack coverages for the three vehicles insured under the policy. The defendant has asserted that Vermont law applies to the interpretation of the policy in issue here and that under Vermont law as applied to the terms of the policy, stacking is prohibited. The plaintiff has asserted that Rhode Island law should govern this dispute and that stacking should be allowed.

Pursuant to this Court's order of May 7, 2007, the parties have completed discovery on the stacking issue and this Motion for Partial Summary Judgment is being submitted on that issue, alone.

## II. Facts

The plaintiff, James Laplante, was involved in a motor vehicle accident on

February 23, 2003 in Lincoln, Rhode Island while driving a 1978 Ford truck owned by him (hereafter, "the 1978 Ford"). Complaint, ¶ 1. At the time of the accident, the 1978 Ford was covered for liability and uninsured motorist coverage under an automobile policy renewal issued to the plaintiff and Corrina Brown ("Brown") at their stated address of P.O. Box 909, Quechee, Vermont, 05059 (hereafter, "the Policy"). Affidavit of Kristin O'Donnell at paragraph 2 (hereafter "O'Donnell Aff. ¶ __") and Exhibit A thereto. The plaintiff and Ms. Brown had been living together in Vermont since approximately the late 1990s and continuing to the present. Laplante T. at 5 and 25.

The Policy was issued by York Insurance Company of Maine (hereafter "York") through the Ford Insurance Agency in Woodstock, Vermont. O'Donnell Aff. ¶ 3. York is a Maine corporation with its principal place of business in Maine. O'Donnell Aff. ¶ 6. It is authorized to write policies in the states of Maine, Vermont and New Hampshire. O'Donnell Aff. ¶ 6. It does not have a place of business in Rhode Island, does not do business in Rhode Island and is not authorized to do business in Rhode Island. O'Donnell Aff. ¶ 6. The Policy has a single limit of coverage in the amount of $300,000.00 and contains a provision that states:

> SINGLE LIMIT OF LIABILITY
>
> A. Our maximum limit of liability for all damages for bodily injury resulting from any one accident is the limit of liability shown in the Declarations for bodily injury Uninsured Motorists Coverage. . . . Our maximum limit is the most we will pay regardless of the number of:
>
> 1. . . .
>
> 2. . . .

> 3. Vehicles or premiums shown in Declarations.
>
> Exhibit A to the O'Donnell Affidavit, Personal Auto Composite Endorsement – Vermont, Form G11244 03 02, page 4 of 6, Endorsement G13156 03 02.

When the Policy was issued, an "alternate garage location" was required to be listed for each of the vehicles covered by the Policy because the mailing address provided by Mr. Laplante and Ms. Brown was a post office box and the identification of the location where the vehicles are principally garaged is required for determination of the rating information and the ultimate issuance of the Policy. O'Donnell Aff. ¶ 3. The alternate garage location for each vehicle covered under the Policy is stated in the Policy's declarations to be Hartland, Vermont where the plaintiff and Ms. Brown resided. O'Donnell Aff. ¶ 3, Deposition Transcript of James Laplante at page 5 (hereafter, "Laplante T. at __").

The operators of the vehicles covered by the Policy were James Laplante and Corrina Brown who both are stated in the declarations to have licenses to operate motor vehicles in the state of Vermont. O'Donnell Aff. ¶ 4. Under the "Rating Data" section of the declarations, the "Risk State" is stated to be Vermont. O'Donnell Aff. ¶ 4.

The 1978 Ford was purchased by the plaintiff prior to 2000. Laplante T at 73-74. It was registered in the state of Vermont, as were all other vehicles identified in the Policy. Laplante T. at 26 and Exhibits A and B to the O'Donnell Affidavit. It was not a part of the Policy as originally issued, but was added to the Policy by Change Endorsement dated January 2, 2003 with an effective date of December

20, 2002. O'Donnell Aff. ¶ 5 and Exhibit B thereto. Ms. Brown called the Ford Agency to have the 1978 Ford added to the Policy and during the course of that conversation she "may have said it's in Rhode Island now and he needs to bring it home, or its here and he is bringing it to Rhode Island for his next project . . ." Deposition transcript of Corinna Brown at page 90 (hereafter "Brown T. at __").

The Change Endorsement deleted a previously covered vehicle (vehicle No. 16) and substituted for it the 1978 Ford (vehicle No. 18). O'Donnell Aff. ¶ 5. It also states that the garage location for the 1978 Ford being added to the Policy was Hartland, Vermont, as it was for all other vehicles covered by the Policy, and that James Laplante would be using it for "pleasure". O'Donnell Aff. ¶ 5. Accompanying the endorsement was the Vermont Automobile Insurance Card for the 1978 Ford which states in capital letters across the top: "VERMONT AUTOMOBILE INSURANCE IDENTIFICATION CARD". O'Donnell Aff. ¶ 5 and Exhibit B thereto.

In September of 2001, Corinna Brown purchased property at 217 Douglas Pike in North Smithfield, Rhode Island. Laplante T. at 51. The down payment for the property was provided equally by the plaintiff and Ms. Brown but title to the property and the mortgage on the property were in her name, alone. Brown T. at 8, Laplante T. at 51 and 98-99. When the property was ultimately sold after the accident, the plaintiff did not receive any proceeds from the sale. Brown T. at 80. The proceeds were used to purchase property in Vermont in Ms. Brown's name, alone. Brown T. at 79.

The plaintiff and Ms. Brown intended to move to the North Smithfield property at some point in time but decided against this when they determined that they did

not like the congestion or the driving habits of Rhode Islanders. Laplante T. at 16 and 106. The plaintiff's parents decided that they could use the property despite the plaintiff and Ms. Brown being unable to do so and they moved into the property shortly after it was purchased and remained there until it was ultimately sold after the February, 23, 2003 accident. Laplante T. at 16 and 97. They paid rent to Brown along with reimbursement for utilities they utilized. Laplante T. at 15 and 97.

Bills connected to the North Smithfield property were paid by Ms. Brown from either a Vermont checking account that was in her name alone with Mascoma Savings Bank or a Rhode Island account with Sovereign Bank that was in the plaintiff's name alone for a short time until Ms. Brown's name was added as well. Brown T. at 19-20 and 78, Laplante T. at 37. The two bank accounts were also utilized by Ms. Brown to pay bills related to her own credit cards, car payments, cell phone and other living expenses in Vermont. Brown T. at 20-23, 34, 53 and 76. Ms. Brown kept the check books for both accounts with her and the plaintiff used the only ATM card from the Sovereign account. Brown T. at 20-21 and 70, Laplante T. at 65.

Prior to the purchase of the North Smithfield property and continuing to the present, Ms. Brown has been employed full time as the manager of Pizza Chef in Quechee, Vermont. Brown T. at 4. She has held this job for 17 years and has never looked for a job in Rhode Island. Brown T. at 65.

After Ms. Brown's purchase of the North Smithfield property, the plaintiff periodically stayed there with his parents and the plaintiff's brother stayed there for a period of time as well. Laplante T. at 19 and 86. Ms. Brown would visit the

property when she had time off for two or three days in a row and then would return to Vermont. Brown T. at 66-67. The plaintiff worked on repairing and customizing the 1978 Ford at the North Smithfield property and also utilized a 1985 Subaru, registered in Vermont and included under the Policy, to commute back and forth between Vermont and Rhode Island. Comp. ¶ 26 and Laplante T. ¶ 34.

At the time of the February 23, 2003 accident and in the years preceding it, the plaintiff's work required that he travel frequently. Laplante T. at 23. In October of 2001, the plaintiff's work for A-1 Gunite required his presence in Ocean City, Maryland for several months where his employer put him up in a house with other employees working on the project for the project's duration. T. at 57-58. In November of 2001 the plaintiff was engaged on a job in Rehoboth, Delaware that lasted a few months. Laplante T. at 59. During 2002, the plaintiff continued to travel relative to his work and the record of his ATM purchases indicates that he was variously in Rehoboth, Delaware; Brattleboro, Vermont; Fitchburg, Massachusetts; Nashua, New Hampshire; Raynham, Massachusetts; Plymouth, Massachusetts; Bellows Falls, Vermont; Claremont, New Hampshire and North Attleboro, Massachusetts, among other locations. Laplante T. at 65

When the plaintiff was working at a job some distance away his employer would take care of his lodging. Laplante T. at 98. For jobs in Massachusetts, Vermont and New Hampshire, the plaintiff would drive to the jobs and stay with his parents at 217 Douglas Pike, North Smithfield or with Ms. Brown in Vermont. Laplante T. at 98. At no time did the plaintiff register any vehicles in the state of Rhode Island, obtain a Rhode Island drivers' license, report to the Town of North

Smithfield that he had any vehicles garaged in the state or pay any North Smithfield property taxes on any vehicles. Laplante T. at 20 and 33. Further, the plaintiff has filed income tax returns with the state of Vermont since at least 2000 and has never filed income tax returns in the state of Rhode Island. Laplante T. at 25 and 50-51. The address utilized by the plaintiff for his income taxes since at least 2000 has been the Vermont address he shares with Ms. Brown. Brown T. at 29.

Against this back-drop, the plaintiff has commenced this action against York demanding uninsured motorist coverage under the Policy and asserting that he is entitled under R.I.G.L. §27-7-2.1(i) to stack coverages for the three vehicles covered under the Policy at the time of the accident for a total of $900,000.00 in potential coverage. York disputes that §27-7-2.1 applies to this Policy that was not delivered or issued for delivery in this state, and asserts that even if §27-7-2.1 applies, the policy language prohibiting stacking must be interpreted in accordance with the law of the state where the insurance contract was made: Vermont. Since Vermont law enforces anti-stacking language in insurance policies, the terms of the York policy must be given effect and the plaintiff, if he should prevail relative to his uninsured motorist claim, is limited to the policy limit of $300,000.00.

**III. Argument**

Rule 56 of the Federal Rules of Civil Procedure permits the court to "isolate and dispose of factually insupportable claims" and to "avoid protracted, expensive and harassing trials" through the use of the summary judgment motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986), Mieri v. Dacon, 759 F.2d 989, 998 (2nd Cir, 1985), cert. denied, 474 U.S. 829 (1985). It is an "integral part" of the

Federal Rules which are designed to "secure the just, speedy and inexpensive determination of every action." Celotex, supra, at 327 (quoting Fed. R. Civ. P. 1).

In ruling upon a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party and determine that there are no genuine issues as to any material facts such that judgment is appropriate as a matter of law. Carlton v. Worcester Insurance Company, 744 F. Supp. 395, 398 (D.R.I., 1990) All inferences must be drawn in favor of the non-moving party. Complaint of Tracey, 608 F.Supp. 263, 265 (D. Mass, 1985). The burden is clearly upon the moving party to establish the lack of any triable issues of fact. Id., at 265. However, the moving party does not have to submit affirmative evidence to negate one or more elements of the other party's case. Celotex, supra, at 324. The moving party need only show "that there is an absence of evidence to support the nonmoving party's case." Id., at 325.

In evaluating the evidence proffered by the non-moving party, it is appropriate for the court to assess the evidence's probative value. Cleary v. Perfectune, Inc., 700 F.2d 774, 778 (1st. Cir., 1983). The evidence illustrating the factual controversy cannot be "conjectural or problematic; it must have substance in the sense that it limits differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1st Cir., 1989). Further, the opposing party must show that there is more than a "metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Such facts must have the possibility of affecting the outcome of the case, and not be irrelevant or

unnecessary. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). There is a genuine dispute over the facts if a reasonable jury could find for the party not moving for summary judgment. Id., at 248.

The stacking issue turns, in the first instance, on whether §27-7-2.1 applies to this matter and, if it does, which state's law applies to the interpretation of this Vermont insurance policy since Vermont and Rhode Island law on this issue is in conflict. Vermont law is clear: its statute is neutral on whether stacking is allowed and, therefore, Vermont enforces clear policy language that prohibits stacking. Sanders v. St. Paul Mercury Insurance Co., 536 A.2d 914, 919 (Vt., 1987). In Rhode Island, R.I.G.L. §27-7-2.1(i) permits stacking where separate premiums have been paid by the insured for uninsured motorist coverage for each vehicle covered by the Policy – no matter what policy language is employed to the contrary.[1] It should be noted, however, that §27-7-2.1(a) applies by its terms to policies which "shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state . . ." York asserts that this requirement is equally applicable to subsection (i). Since there is no question that the plaintiff's Policy was not delivered or issued for delivery in Rhode Island, his claim that Rhode Island law allows him to stack in this case is fatally flawed. Absent the application of §27-7-2.1, the clear terms of the Policy apply and stacking is not permitted. It is only if this Court determines that §27-7-2.1 applies here, that it is

[1] The pertinent section of §27-7-2.1 reads:

> (i) Whenever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary.

necessary to address the balance of York's argument since only then will there be a conflict in the law to be applied as between Rhode Island and Vermont.

While there is no question that the plaintiff and Ms. Brown paid separate premiums for each of the three vehicles insured under the Policy, by the unambiguous terms of the Policy, the "maximum limit of liability for all damages for bodily injury resulting from any one accident is the limit of liability shown in the Declarations for bodily injury Uninsured Motorists Coverage. . . . Our maximum limit is the most we will pay regardless of the number of: . . . 3. Vehicles or premiums shown in Declarations", stacking is prohibited. This language is very similar to the language which confronted the Vermont court in the Sanders case, *supra*. The "Limit of Liability" provision in issue in Sanders provided in pertinent part:

> [T]he limit of liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. This is the most we will pay regardless of the number of . . . 3. Vehicles shown in the Declarations . . . Id., at 498.

The Sanders court determined that this language was clear and unambiguous on its face. Since it also determined that Vermont's statutory scheme "neither promotes nor prohibits stacking", the Vermont court held that the clear intention of the policy language to prohibit stacking would be enforced. Id. At 504. The court held:

> In the absence of ambiguity in the agreement, a statutory violation or inherently unfair or misleading language, we should give effect to the plain meaning of the policy's prohibition against stacking of uninsured motorist claims. [Citations omitted]. In the final analysis a policy meets the consumer's expectations if the issuer

> complies with statutory requirement in every respect; if policy language limiting liability within a single policy is clear; and if additional premiums within the policy relate to additional risks. Id. At 507-508.

Therefore, the plaintiff argues that Rhode Island law applies to the interpretation of this insurance contract such that stacking will be allowed in the amount of $900,000.00 (three times the limit of liability of $300,000.00) if the plaintiff proves entitlement to uninsured motorist coverage. However, if Vermont law applies, the plaintiff will be denied the opportunity to stack coverages and will be limited to a maximum potential recovery of the Policy's limit of liability of $300,000.00.

In determining which state's law will apply to resolve this issue, this Court applies Rhode Island's substantive choice of law rules. Okmyansky v. Herbalife Intern. Of America, Inc., 415 F.3d 154, 158 (1st Cir., 2005). While the Rhode Island Supreme Court has not explicitly determined whether to apply the "lex loci contractus" analysis or the "interest weighing" approach in contract cases, it has clearly stated that in cases involving insurance policies, the law of the place where the insurance contract was made governs its construction and the Court has never wavered from this principal of construction. Toledo v. Van Waters & Rogers, 92 F. Supp.2d 44, 50 (1st Cir., 2000), Bartholomew v. ICNA, 502 F. Supp. 246, 250 (DRI, 1980), Baker v. Hanover, 568 A. 2d 1023, 1025 (RI, 1990). Indeed, the Rhode Island Supreme Court has stated without equivocation:

> Rhode Island law simply does not attempt to regulate the content of insurance policies that drivers or owners of motor vehicles purchase in other states when those drivers do not choose to register their vehicles in Rhode Island. Mendez v. Brites, 849 A.2d 329, 227 (RI, 2004).

The reason for this approach is sound. In Coderre v. Travelers, 136 A. 305 (RI, 1927), the court refused to apply this state's "direct action" statute, which allows suit to be commenced against an insurer directly when attempts to serve the insured have been returned non est inventus, to an insurance policy written and issued by the defendant insurer in Massachusetts to a Massachusetts resident. The court held that if it were to interpret the statute in accordance with the plaintiff's theory that it applied to out-of-state policies:

> [I]t would be beyond the constitutional power of a state Legislature to regulate the contracts of a foreign corporation made in another state with a citizen of such other state. If the statute under consideration was enacted with the legislative intent for which the plaintiffs contend, it would amount to an attempt by the General Assembly of this state to regulate the manner of doing business in Massachusetts between residents of that state. In the absence of special provision in the contract to the contrary, a contract is to be construed in accordance with the law of the state where it is made. [Citations omitted]. Id. at 306.

Here, there is no question that the insurance contract between York and its insureds, the plaintiff and Ms. Brown, was issued in Vermont by a Maine corporation licensed to do business in the state of Vermont and which did not do business of any kind in Rhode Island. It was issued through a Vermont insurance agency for vehicles that the insureds reported were garaged and registered in the state of Vermont and Vermont rating data was utilized to determine the premiums required. Finally, the Policy was issued to the insureds at their Vermont address. It is simply beyond doubt that this insurance contract was made in the state of Vermont in accordance with the laws of that state.

However, even if the interest weighing analysis is employed, here, the result is still the same: Vermont has the most significant contacts with this insurance contract and it is Vermont law which must apply to the stacking issue. Under the interest weighing approach, the court must take into account a number of issues and policies. Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 5-6 (1st Cir., 1994). As to the issues, the court must examine:

- the place of contracting;
- the situs of negotiations;
- the place of performance;
- the location, if any, of the contract's subject matter; and
- the business locations and states of incorporation of corporate parties. Id. at p. 6.

As to the policies, the following are relevant:

- the needs of the interstate system;
- relevant policies of the forum;
- policies of other affected states and their interest in the outcome of the litigation;
- protection of the parties justified expectations;
- uniformity and predictability of results' and
- ease in determining and applying different bodies of law. Id. at page 6.

Applying this analysis, the factual issues are easy to dispose of. It is beyond dispute that the place of contracting was Vermont. Ms. Brown, a Vermont resident contacted the Ford Agency, located in Vermont for a policy covering vehicles registered and garaged in the state of Vermont, owned and operated by drivers with Vermont licenses and a Vermont address. Ms. Brown is also the one who made the telephone call which resulted in the endorsement adding the 1978 Ford to the Policy and this was, again, accomplished through the Ford Agency. York is a Maine corporation that does business in Vermont and has no ties of any kind with Rhode

Island. Under these circumstances, it is beyond question that the contract was made in Vermont, that the site of negotiations was in Vermont and that the location of York was in Vermont or Maine – not Rhode Island.

The place of performance of the contract is less relevant in this case than in most contract cases where the subject matter of the contract sets the place of performance. Certainly, the insureds' identification of the garage location of the vehicles as being in Vermont, their Vermont address and drivers' licenses as well as the application of Vermont ratings data and endorsements to the Policy support the conclusion that the vehicles would be in Vermont much of the time. All of these factors additionally support the conclusion that Vermont was also the location of the "subject matter" of the contract.

Against all of these unassailable facts, the plaintiff asserts that he was a "temporary domiciliary" of Rhode Island at the time of the accident and that this factor, combined solely with the location of the accident in Rhode Island, should satisfy this Court that Rhode Island has the more significant contacts with this policy coverage dispute. To begin with, even if it were true that the plaintiff was a temporary domiciliary of Rhode Island at the time of the accident, this factor does not create sufficient contacts with Rhode Island to justify the application of Rhode Island law, here. Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338 (1930). In Dick, the Court held that the plaintiff, as assignee of an insurance policy, could not maintain suit in Texas where the policy was issued in Mexico by a Mexican insurer to a resident of Mexico. The policy had been assigned to the plaintiff who was a resident of Mexico but maintained a "nominal, permanent" residence in Texas. The

Court rejected the plaintiff's attempt to use nothing more than his nominal residency to create sufficient contacts with Texas to justify application of Texas law. Similarly, in John Hancock Mutual Life Ins. Co. v. Yates, a resident of Georgia argued that Georgia law should apply to a coverage dispute involving a life insurance policy issued by a Massachusetts corporation to a New York resident that was applied for, issued and delivered in New York. Subsequent to the death of the insured, the insured's spouse moved to Georgia and brought suit there. The Supreme Court reversed the Georgia court's application of Georgia law on the grounds that applying Georgia law based purely on the residency of the spouse was unconstitutional.

Perhaps most interesting for our purposes, here, is the case of Allstate Ins. Co. v. Hague, 449 U.S. 302, 101 S.Ct. 633 (1981) because it dealt with a choice of law question involving different stacking policies in two different states: Minnesota and Wisconsin. In Hague, the plaintiff's husband died in a motor vehicle accident in Wisconsin where stacking was not permitted. The policy had been issued in Wisconsin to the plaintiff and her husband when they were living in Wisconsin. The decedent had worked in Minnesota for 16 years and after her husband's death, the plaintiff widow moved to Minnesota. She ultimately commenced suit there to force the defendant insurer to allow stacking of coverages under the policy. The Minnesota court applied Minnesota law to the dispute and the Supreme Court affirmed citing as the most significant facts the decedent's long term connection with Minnesota over his working life, the presence of the insurer doing business in Minnesota and the fact that the widow had moved to Minnesota for "bona fide"

reasons before suit was commenced. Id., at 314-315, 101 S.Ct. at 640-641. Of these factors, the presence of the insurer in the state was critical. The Court noted:

> [A]llstate was at all times present and doing business in Minnesota. By virtue of its presence, Allstate can hardly claim unfamiliarity with the laws of the host jurisdiction and surprise that the state courts might apply forum law to litigation. "Particularly since the company was licensed to do business in [the forum], it must have known it might be sued there, and that [the forum] courts would feel bound by [forum] law." [*Footnote and citation omitted*.] Moreover, Allstate's presence in Minnesota gave Minnesota an interest in regulating the company's insurance obligations insofar as they affected both a Minnesota resident and court-appointed representative-respondent – and a longstanding member of Minnesota's work force – Mr. Hague. Id., at 317-318, 101 S.Ct. at 642-643.

Here, there is no question that York is not present in the state of Rhode Island and has never been present here. It is not licensed to do business in this state and does not do business in this state. York had no reason in the world to anticipate that it would be hailed into a Rhode Island court for the resolution of a coverage dispute between it and residents of Vermont in connection with a policy issued in Vermont with Vermont endorsements for vehicles registered in Vermont and represented by the insureds to be garaged in Vermont. Imposing Rhode Island's statutory requirements for the issuance of Rhode Island insurance policies on a company that does not issue Rhode Island policies or do business of any kind here, violates precepts of fundamental fairness and defies York's justified expectations. It is equally true that based on these facts, the plaintiff could not possibly had had any justifiable expectation that Rhode Island law would somehow apply to his Vermont policy of insurance – no matter what he says after the fact.

In addition, the plaintiff does not have the significant and long-standing relationship with this state that the plaintiff's decedent had in Hague. Mr. Laplante worked all over the northeast and occasionally stayed at the property in North Smithfield when in the area. In fact, he has never asserted that he was ever any more than a "temporary domiciliary" of Rhode Island – a status which, if it ever existed, he gave up after the accident when he returned to Vermont on a permanent basis.

Further, the plaintiff's assertion of even "temporary domiciliary" status in this state at the time of the accident rings hollow when the undisputed facts are examined. Virtually every piece of information provided to York about the plaintiff and the vehicle in question indicated presence in Vermont: his stated address was there, the garage location provided for the 1978 Ford was there – as were the garage locations of all of the other vehicles covered under the Policy, he had a Vermont operator's license and the vehicles were all registered in Vermont. Ms. Brown, after the fact, testified only that she believed she may have indicated to the Vermont insurance agency she called that she was adding the 1978 Ford to the Policy because the plaintiff was either bringing it "home" to Vermont from Rhode Island or that the vehicle was in Vermont and the plaintiff was bringing it to Rhode Island "for his next project." If the plaintiff considered himself a domiciliary of Rhode Island, temporary or otherwise at any time before the accident, neither he nor Ms. Brown ever shared that fact with York – or with any taxing authorities of the state of Rhode Island.

Further, the plaintiff filed his yearly income tax documents from his Vermont

address, paid taxes to the state of Vermont – not the state of Rhode Island, and rented the property in North Smithfield to his parents from the time it was purchased by Ms. Brown. In fact, the nature of his work required him to be absent from Vermont for long stretches of time and also made it convenient for him to be able to stay with his parents when he was in the area or to stay at his home with Ms. Brown in Vermont when possible. He has also admitted that any plans for he and Ms. Brown to live at the North Smithfield property "someday" were abandoned well in advance of the accident when they discovered they did not like the "congestion" in Rhode Island. Ms. Brown, with whom the plaintiff has lived since the late 1990s, has had the same job in Vermont for 17 years and never looked for a job in Rhode Island.

While the plaintiff has made much of the fact that he had a checking account at a Rhode Island bank, it is also true that Ms. Brown kept the checkbook with her in Vermont, along with the checkbook for their Vermont account, and paid the couples' bills from both accounts without any discrimination about who incurred them or where they were incurred. The plaintiff's main connection to the Rhode Island bank account seems to be that he used the ATM card wherever he happened to be working or living at the time.

Under these circumstances, the plaintiff's attempt to assert some type of Rhode Island residency, even a "temporary" one, in order to take advantage of Rhode Island's stacking statute is patently transparent. The unvarnished facts fail to establish any significant contact with the state of Rhode Island, let alone contact sufficient to justify the application of Rhode Island law to this coverage dispute.

From a policy standpoint, it is also clear that Vermont has the more important interest in this dispute as well. York does not do business in Rhode Island so, unlike the insurer in Hague, the forum state has no interest or ability to regulate the manner in which York, a foreign corporation that does not do business here, does its business in other jurisdictions. In fact, the Rhode Island Supreme Court stated this explicitly in Mendez v. Brites, *supra*: if the owners of insured vehicles do not chose to register their vehicle here, Rhode Island law does not attempt to regulate the contents of insurance contracts related to the vehicles that are purchased in other states. Along these same lines, Vermont has the more significant interest in the outcome of the litigation since it is charged with regulating the businesses doing business within its borders – such as York – and in ensuring that insurance policies issued in the state of Vermont to its citizens comply with Vermont law.

As to the remaining policy factors to which this Court must look in evaluating the choice of law issue, Vermont's law on stacking is clear and uncomplicated and may easily be applied by this Court. The application of Vermont law will also promote the uniformity and predictability of results in that both insureds and insurance companies should be able to depend on the interpretation of their policies in accordance with the law of the state in which the company does its business and where the insureds do business with the company. Stated another way, it does not advance any legitimate interest to allow insureds to alter the insurance contract after the fact based on information that they never provide to the insurer that could materially affect the risk and rating – or to permit insureds to completely change the law that applies to the insurance contract simply by establishing "temporary

domiciliary" status in a jurisdiction in which the insurer does not even do business. No interests or needs of the interstate system and no relevant policy of the state of Rhode Island would be served by such a result here.

No matter what approach is taken to the choice of law issue in this matter, it is clear that Vermont law must be applied. Rhode Island's connection to this coverage dispute is simply too tangential to warrant the application of Rhode Island law. The policy provisions regarding stacking are clear, fully in compliance with Vermont law where the policy was issued and must be applied as written. Under Vermont law, the single coverage limit for this policy of $300,000.00 is the maximum uninsured motorist coverage available to the plaintiff should he ultimately prove his entitlement to uninsured motorist benefits.

## IV. Conclusion

For the above-stated reasons, defendant York Insurance Company of Maine respectfully requests that its Motion for Partial Summary Judgment be granted, that the plaintiff's attempt to stack coverage under the Policy be denied and that York's liability to the plaintiff be limited to no more than the policy limit of $300,000.00 should the plaintiff prevail in his uninsured motorist claim.

YORK INSURANCE COMPANY
OF MAINE
By its Attorneys,
CARROLL, KELLY & MURPHY
/s/ C. Russell Bengtson
C. RUSSELL BENGTSON #1233
PATRICIA A. BUCKLEY #2987
One Turks Head Place, Suite 400
Providence, RI 02903
(401) 331-7272 Telephone
(401) 331-4404 Facsimile
rbengtson@ckmlaw.com

CERTIFICATION

I hereby certify that on September 28, 2007, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that Keven A. McKenna, Esquire, KevenM@McKennalaw.cc will receive notice through the ECF system.

/s/ C. Russell Bengtson