**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**James P. Laplante**, :
Plaintiff :
v. : C.A. 07-0062ML
**York Insurance Company of Maine**:
Defendant :

**Plaintiff's Memorandum in Support of Motion for a Partial Summary Judgment To Determine the Limits of Liability of the Defendant's Insurance Contract**.

1. **Partial Summary Judgment on Auto Insurance Payment Obligations**.

Plaintiff has moved for a Partial Summary Judgment to declare void a single limit of liability claimed by the Defendant within its form based national styled insurance policy because it violates Rhode Island's public policy which is to protect "persons" harmed by uninsured and underinsured drivers when the insured has paid for multiple premium for uninsured coverage and for underinsured coverage.

Plaintiff asked, in his original State Complaint, which was removed to Federal Court under the diversity clause, that Rhode Island law, under its declaratory judgment law, be utilized to construe[1][2] his rights under his insurance policy, Exhibit 1, with the Defendant.

2. **Background.**

The facts in this controversy are set forth in detail in the Affidavits of James Laplante with attached exhibits and photographs, in the Affidavit of Joseph Laplante, and in the Plaintiff's Statement of *Undisputed Facts*, which are enclosed herein by reference.

On February 23, 2003, the Plaintiff, James Laplante, was a domiciliary of Rhode Island, who had garaged his rebuilt truck in Rhode Island, and who had a severe accident,

[1] R.I.G.L.§9-30-1, et seq.
[2] Compare 28 USC §2201 Creation of Remedy.

in which he suffered compensatory damages in Lincoln, Rhode Island as a consequence of a hit and run driver forcing his truck to hit a traffic control pole. (*James Laplante Affidavit*, (*Exhibits* 15 throught31), (*Undisputed Facts*) James Laplante claims damages for personal injury and property damage in sum of $3,484,054.90. (See *Affidavit of James Laplante*, Par.55.)

Laplante contends the Defendant York Insurance Company of Maine, through its ceded assignee, OneBeacon Insurance Company, is required to pay him those damages under the provisions of his uninsured and underinsured coverage in his policy, *Exhibit 1*, as supplemented by the law and policy of the State of Rhode Island regulating automobile insurance policies. The Defendant Insurer however, claims that, under Vermont law, it can shelter itself from its contracts liabilities by an anti-consumer single limit of liability. Laplante contends that the Single Limit of Liability Per Accident[3] subverts the Public Policies of both Rhode Island and Vermont. Laplante, in his affidavit , contends that he can prove that he is "legally entitled to recover damages for "**bodily injury**"[4] in the sum of $3,474,054.90 and "**property damage**" in sum of $10,000.00 from a "hit and run" driver. The impact of that demand upon a single limit is to eliminate any other statutory or paid type coverages in excess of $300,000.

---

[3] See *Exhibit 1*, Insurance Policy No YM-Z2639796F, Personal Auto Policy, Form No. 13007 09 05, Single Limit of Liability, A,B.and C at page 5 of 18, and See Personal Auto Composite Endorsement-Vermont, Form G11244 03 02 (G11244-7) Single Limit of Liability for Uninsured at Page 4 of 6.

[4] See *Exhibit 1*, York Insurance Policy No YM-Z2639796F, Personal Auto Policy, Form No. 13007 09 05, Part C Insuring Agreement, Part C , A. –We will pay compensatory damages which an "insured is legally entitled to recover from the owner or operator of an" **uninsured motor vehicle "** because of bodily injury:" at Page 5 of 18 of Attachment to Declaration, and , and See Personal Auto Composite Endorsement-Vermont, Form G11244 03 02 (G11244-7) , at Page 3 of 6 pages, which provides as follows Uninsured Motorist Coverage Vermont, G13156 -0302, 1 Part C, Uninsured Motorist Coverage. Part C is replaced by the following: Insuring Agreement A. We will pay compensatory damages which an "**insured"** is legally entitled to recover from the owner of an "**uninsured**" motor vehicle" because of 1. Bodily Injury *** and 2. **Property Damage** ***

A single limit of liability when there is one accident with enormous bodily injury damages, can, by its mathematical nature, eliminate other State mandated and contracted coverages. Applying the benefit of R.I. law, and the benefit of his auto insurance policy, the Plaintiff, is requesting a declaration that the Defendant, insurer, has a duty to pay for his actual compensatory damages in the following sums;:

(1) The Sum of Nine Hundred Thousand dollars ($900,000) for the three(3) premiums paid for Uninsured coverage, with each premium having a three hundred thousand dollar ($300,000) limit;

(2) The sum of nine hundred thousand dollars ($900, 000) for three premiums paid for Underinsured coverage, with each premium having a three hundred thousand dollar limit;

(3) The sum of Ten Thousand dollars ($10,000) for the complete destruction of his truck as additional Property damage to the minimum limit of $25,000

**3. Coverage provided under R.I. Law for Rhode Islanders And Non Residents.**

For the purpose of the R.I. Motor vehicle laws R.I.G.L§ 31-1-18 (b), James Laplante was a resident of Rhode Island[5]. He worked from his residence at 217 Douglas Pike, North Smithfield, and he garaged his Ford 378 Truck in North Smithfield. He did travel to Hartland, Vermont to be with his finance, Corrina Brown, and he did register his vehicle under his finance's automobile insurance policy which was issued to her in Vermont. Although she owned their house in North Smithfield, she worked and rented an

---

[5] *R.I.G.L§ 31-1-18 Resident and nonresident*. *** (b) "Resident" means a person:
(1) Who owns, rents, or leases real estate within the state as his or her residence and:
(i) Engages in a trade, business, or profession in this state; or
(ii) Enrolls his or her children in a school in this state for a period exceeding ninety (90) days; or
(2) Who is registered to vote or is eligible to register to vote under the laws of this state.

apartment in Vermont, thus she was a *non resident* of Rhode Island under the provisions of *R.I.G.L.§*31-1-18(b) and was allowed to have insurance which provided coverage in both Rhode Island and Vermont[6]. James Laplante was not a student or a member of military living in Rhode Island; and thus James Laplante was not a *non resident* pursuant to the provisions of R.I.G.L§ 31-1-18 (b)[7]. Nevertheless, since he visited with his finance' every week when he was not working from Rhode Island, neither he nor his truck was in Rhode Island for thirty (30) continuous days[8],[9] and thus he was not otherwise required to carry insurance issued by a Rhode Island insurer. The Vermont insurer of Corinna Brown and James Laplante, York Insurance Company of Maine, nevertheless provided *extra –territorial coverage*[10] which indicated it met the requirements of Rhode Island law. Consequently, due to his travel schedule, Laplante was a R.I. resident who met R.I. law by through an insurance policy obtained in Vermont, as do many modern mobile citizens.[11]

---

[6] *R.I.G.L.§* 31-47-8 Revocation of registrations (h) ***With respect to a nonresident the policy may also be issued by a non admitted insurance carrier provided the requirements of this chapter, with respect to issuance of an owner's policy of liability insurance by the carrier, have been met.

[7] *R.I.G.L§* 31-1-18 Resident and nonresident. —
(a) "Nonresident" means any person who is not a resident of this state or is temporarily residing in this state as a student or as a member of the armed forces of the United States.

[8] *R.I.G.L.*§ 31-3-2 Every motor vehicle*** owned by a resident of this state when operated or drawn upon a highway within this state for a period of thirty (30) days shall be subject to the registration provisions of chapters 3 — 9 of this title except: except: (a) Any vehicle operated upon a highway in conformance with the provisions of the chapters relating *** nonresidents;

[9] *R.I.G.L.§ 31-10*-1 License required to drive. — (a) No person, except those expressly exempted in this chapter, shall drive any motor vehicle upon a highway in this state unless that person has a valid license as an operator or chauffeur under the provisions of this chapter ***. Any resident as defined under § 31-1-8 shall be required to obtain a Rhode Island operator's or chauffeur's license within thirty (30) days of establishing residency.

[11] ***Exhibit 1***, See Form G11244 03 02 (G11244-7) , Personal Auto Composite Endorsement-Vermont, at page 1 of six which states the following endorsements contained in your policy booklet are not applicable if your "covered auto" is principally garaged in Vermont. (Note that Any doubt regarding this intent is resolved for the insured under contract of adhesion standards and remedial law interpretation.)

Like Rhode Island, Vermont required any liability carrier to carry coverage for accidents caused by uninsured motorists. In effect, both Rhode Island and Vermont bootstrapped mandatory liability coverage to provide a requirement that all such insurer also provided coverage of accidents caused by hit and run drivers.

The insurance policy provided by York Insurance Company was a combination[12] of several standardized forms[13] prepared and copyrighted[14] by Insurance Service Organization for insurance companies throughout the United States, in a manner similar to those uniform forms produced by private organizations used to secure debt interests under the Uniform Commercial Code in each State of the United States. The standardized Automobile Insurance Policy, as set forth in *Exhibit 1*, provided automobile insurance benefits to its insured persons in every State of the United States[15] for damages caused by drivers of uninsured[16] and underinsured motor vehicles. That policy also provided coverage for damages, consistent with the laws of each State, caused by uninsured drivers for damages that they might have caused to a domiciled person of any State in the United States.[17].The form policies utilized by the Defendant recognize its coverage in all fifty

---

[12] ***Exhibit 1***, Policy Number YM-Z263796F, The Declaration Pages are denominated as form G20802 06 99 and the attachments are noted as follows within the Declaration.

| Form No. | Title |
|---|---|
| G13007 09 95 | Personal Auto Policy and Endorsements |
| G11244 03 02 | Vermont Personal Auto Composite Endorsement |
| G135770101 | Vermont Changes: Property/Casualty-Civil Union |

[13] *Widiss, Alan I; Thomas, Jeffrey*, Uninsured and Underinsured Motorist Coverage, Third Edition, (Copyright-2005, Volume I,§3.4, at page 63. Standardized forms and standardized provisions,). "In practice, most insurance companies have used the standard forms for the uninsured motorist coverage, either in their entirety or with minor variations or deletions."

[14] ***Exhibit* 1**, Page 1 of Declaration pages for Policy Year, 2002-2003, "Includes Copyrighted Material of Insurance Office, Inc with its permission. Copyright, Insurance Services Office, Inc. 1988-2003.

[15] ***Exhibit 1***,Policy Number YM-Z263796F, Form G13007 09 95, page 9 of 18,**Part F, Policy Period and Territory, B 1.**

[16] **Exhibit 1**, Policy Number YM-Z263796F, Form G13007 09 95, page 5 of 18, **Part C Uninsured Motorists Coverage; See also** G11244 03 02, page 3 of 6, Endorsement 13156 03 03,Part C **Uninsured Coverage** Replacement **.**

[17] **Exhibit 1**.Personal Auto Policy, **Out of State Coverage**. Form G13007 09 95, page 4 of 18.

states and make a distinction between vehicles principally garaged in Vermont and alternatively garaged in other states.[18], [19].

**4. The Defendant's Insurance Contract Was Written to Conform to R.I. Law; And R.I. Law and Vermont Law Are Not In Conflict, But if They Are In Conflict R.I. Law Must Prevail.**

The insurance contract between the Plaintiff and Defendant, *Exhibit 1,* provides indemnity for bodily injury and property damages caused by uninsured and underinsured drivers in any State of the United States and the coverage is designed to meet the mandatory standards of any State in which a vehicle of the insured is principally garaged. The 1978 Ford F378 which was principally garaged in North Smithfield, Rhode Island, where the insured, James Laplante was domiciled, had an accident with a hit and run driver in Lincoln, R.I. To maintain its promise in its insurance policy to conform to State law in which its insured is principally garaged, York Insurance must provide as required by Rhode Island law, which is a statutory supplement to the contract, indemnity amounts equal to the amount covered by each of the premiums for uninsured coverage, equal to the premium amounts of the underinsured coverage, equal to the minimum amount of medical payments required by R.I. law, and to the minimum amount of property damages required by R.I. law.

The auto insurance contract of the Defendant envisioned that Laplante's vehicles would be garaged in another state. The policy has provisions of coverage which do not relate to vehicles not principally garaged in Vermont. R.I.'s coverage is not conditioned upon vehicles only be registered in R.I. A non resident is subject to the requirement to

---

[18] **Exhibit 1,**Policy Number YM-Z263796F Form G11244 03 02, page 1 of 6, Vermont Personal Auto Composite Endorsement, see top of page 1, applies to vehicles not garaged in Vermont..

[19] [19] **Exhibit 1,**Policy Number YM-Z263796F Page 15 of 18, PP 031 06 94 Definitions. Exclusion B.Only Vehicles garaged in the United States are eligible for limited coverage in Mexico.

maintain coverage for liability and uninsured and underinsured accidents of vehicles in R.I. A resident whose vehicle is principally garaged in Rhode Island must maintain the appropriate insurance. To achieve that end, Laplante obtained insurance from the Defendant and purchased separate premiums for uninsured and under insured coverages. RI's particular section on stacking of premiums does not require that such insurance policy be issued or delivered in Rhode Island. York voluntarily provided the coverage in R.I. As such, the insurer must provide in R.I. the benefits required in R.I.

5. . **Laplante Conformed to Both RI and Vermont Law**.

Both the States of Rhode Island and Vermont encourage consumers to have sufficient insurance coverage to pay for injuries to themselves and to others caused by automobiles for his coverage. When a consumer purchases uninsured and underinsured coverage, he is fulfilling state mandates to purchase insurance coverage for another person, who may not have such coverage and who might do him harm.

Both Vermont, 23 V.S.A. § 941 (a)-(g), and Rhode Island, *R.I.G.L.*§ 27-7-2.1 (a)-(i)have statutes designed to "for the protection of <u>persons</u> *** who are legally entitled to recover damages, from owners or operators of uninsured, underinsured or hit-and-run motor vehicles***" According to the provisions of *R.I.G.L* § 27-7-3," All policies described in this chapter shall be deemed to be made subject to the provisions hereof, and all provisions of policies inconsistent herewith shall be void." The provisions of 23 V.S.A. § 941(a) provides that No policy insuring against liability *** may be delivered ***in this state with respect to any motor vehicle registered ***in this state unless coverage is provided *** for the <u>protection of persons</u> *** who are legally entitled to recover damages, from owners or operators of uninsured, underinsured or hit-and-run

motor vehicles***." Laplante met those terms since his vehicle was registered in Vermont. The provisions of R.I.G.L.§ 27-7-2.1 (a) provide that " No policy *** shall be *** issued for delivery in this state with respect to any motor vehicle *** principally garaged in this state unless coverage is provided, *** for the protection of persons *** entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles ***. Laplante also met those terms since his vehicles were "principally garaged" in Rhode Island and he had insurance coverage.

The provisions of R.I.G.L.§ 27-7-2.1 (i) further provide that " (i) Whenever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary." The provisions of R.I.G.L.§ 27-7-2.1 (i) is a separate law unto itself, a reflection of the "public policy" of the State, and R.I.G.L.§ 27-7-2.1 (i) contains no limitations on the location of the insured or the location of the insurer or the number of persons insured.

Although the provisions of R.I.G.L. §27-7-2.1 (i) do not require the insured policies providing benefits to be issued and delivered in Rhode Island, in accordance with the minimum liability coverage mandates under the provisions of R.I.G.L.§ 27-7-2.1 (a) for being a domicile of Rhode Island and having a motor vehicle "principally garaged" in Rhode Island; Laplante obtained a Vermont Policy which voluntarily submitted to such mandates. Vermont law itself like Rhode Island, requires, under the provisions of 23 V.S.A. § 941 (b), that auto insurance coverage be provided thorough the United States; and that, under 23 V.S.A. § 941(c), coverage for liability be in the same amount as

uninsured coverage ,and, that, under 23 V.S.A. § 941 (a), such policy also include underinsured coverage.

The Plaintiff, James Laplante, the Insured, a domiciliary of Rhode Island, at the time of the accident, contends that under the public policy and law of this state, R.I.G.L.§27-7-2.1 (i)[20],[21].[22],. the limits of liability coverage contained in the ISO form based contract initially issued by the Defendant, Exhibit 1, the initial Insurer, York Insurance Company of Maine, were intended to conform to the law of Rhode Island, and, to the extent those provisions do not, they are void. The sum of the coverages accruing to the injured automobile consumer as a consequence of the payments of separate premiums for uninsured and under insured coverages are not different than the mandated amounts for liability insurance purchased by the consumer to meet claims for bodily injury and property damages.

**6. Both Contract and Statute Includes Underinsured Coverage.**

R.I.G.L.§ 27-7-2.1 (g) provides that ***"uninsured motorist" shall include an underinsured motorist. Thus, to the extent that Laplante purchased premiums for uninsured coverage, he was purchasing premiums for underinsured coverages. Since his damages for uninsured coverage has been exhausted, he is entitled to the excess coverage provided by his underinsurance provisions. Both Rhode Island and Vermont statutes required underinsured coverage. The Declaration Sheets indicate that underinsured

---

[20] *R.I.G.L.§ 27-7-2.1 (i)* Whenever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary.

[21] *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 356, 223 A.2d 447,450 (1966)"It is well settled that where the lawmaking power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is what the [legislature] enacts.***Thus contracts of insurance carriers must conform to constitutionally valid conditions imposed by the legislature."

coverage is provided and that it is included with uninsured coverage. A tortfeasor is an underinsured only if the limits of the tortfeasor's liability coverage are less than the injured insured's own damages or underinsured limits of coverage. *Bernard v. Rhode Island Insurer's Insolvency Fund*, 651 A.2d 1232 (R.I. 1994). The tortfeasor in this case is the uninsured driver. Underinsured coverage by definition must be an additional coverage otherwise it is an illusory benefit. Laplante is not seeking a double recovery, he is only seeking to be made whole. The limits of liability within the contract can not limit the limit the amount of damages to the amount paid for liability coverage or to the amount paid for uninsured coverage. To do so, would be to provide no payment for a statutorily mandated insurance benefit under both Rhode Island and Vermont law. Laplante contends that the underinsurance coverage is “excess” coverage, up to the limits of three hundred thousand dollars, and thus the Defendant owes him $900,000 for three premiums for underinsured coverage, together with the three premiums for uninsured for $900,000,which is less than the $3,484,054.90 is entitled to recover under law. To the extent that the declaration pages are ambiguous, Laplante is entitled to the benefit of the doubt[23].In both R.I. and Vermont[24], limits of liability provisions may not eliminated

---

[23] *U.S. Aviation v. Fitchburg-Leominster*, 42 F.3d 84, 86 (1st Cir. 1994). In interpreting the insurance policy at issue in this case, we apply the three fundamental principles articulated in *Camp Dresser & McKee, Inc. v. Home Ins. Co.,Citation Deleted*): we construe the policy "according to the fair and reasonable meaning of its words," interpret exclusionary clauses against the insurer, and resolve all ambiguities against the insurer.

[24] *Feeley v. Allstate Insurance Company*, 2005 VT 87 178 Vt. 642, 644, 645 882 A.2d 1230 (2005 Vt ) Citations Deleted The coverage is intended to provide "the prudent motorist with maximum insurance coverage," *Monteith v. Jefferson Ins. Co*,159 Vt. 378, 386, 618 A. 2d 488, 492 (1992), when involved in an accident with a marginally insured (or uninsured) motorist. *Colwell v. Allstate Ins. Co.*, 2003 Vt 5, 10, 175 Vt. 61, 819 A.2d 727.,Section 941 defines when a driver is "underinsured" by comparing the tortfeasor's liability limits with the limits of the insured's UIM coverage. 23 V.S.A. § 941(f). **If the insured purchased UIM coverage greater than the limits of liability in the tortfeasor's policy, the tortfeasor is "underinsured" within the meaning of § 941. *Id.*;** *Colwell*, 2003 Vt 5, 8. This type of "gap coverage" "place[s] the insured in the same position as if, at the time of the accident, the tortfeasor had liability coverage equal to the insured's UIM coverage." *Colwell*, 2003 Vt 5, 14; see *Webb v. U.S. Fid. & Guar. Co.*,

mandated underinsured coverage when the uninsured coverage is less than his damages. .Because subsection (g) of section (R.I.G.L.§27-7-2.1)is phrased in the disjunctive, the underinsured motorist's liability coverage need only be less than either the insured's limits or the damages in order that he is entitled to recover. *Archambault v. Federal Ins. Co*., 690 A.2d 1348 (R.I. 1997).

7. **The Automobile Insurance Contract is Compilation of National Forms and Endorsements, Designed To Conform to Law of All States.**

There are several indicia that the Master Driver Automobile Policy was designed to insured risks throughout the United States. Every page of the policy declaration has a logo inscribed of "OneBeacon Insurance." One Beacon Insurance Group is a group of related insurance companies which issues automobile insurance policy in each State of the United States. The automobile policy has a notice that includes Copyrighted Material of the Insurance Services Office, Inc. 1988-2003. Every page has a reference number to standardized form and endorsement. The declaration references form number G208020699. The personal auto policy references form number G133007 09 95. and is denominated Personal Auto Policy (PP 00 01 06 94). The *Out of State Coverage* provision, at page 4, in form number G133007 09 95 promises to comply with the financial responsibility and compulsory insurance law of every state. *The Policy Period and Territory* Provision, at page 9, names the United States of America as part of the policy territory.

8. **The Garaging Provisions of the Contract Imply that R.I. Law is to be followed.**

---

158 Vt. 137, 141, 605 A.2d 1344, 1347 (1992) (describing Vermont's UIM statute as filling the gap between the tortfeasor's liability coverage and the insured's UIM coverage).*** A policy clause limiting UIM coverage in a manner inconsistent with § 941's central purpose is unenforceable.

The contract, *Exhibit 1*, contains several references to "covered autos" either principally garaged in Vermont, those not principally garaged in Vermont,. and those at alternative locations. For example, travel expenses are paid when a loss occurs more than 100 miles from the place of alternative garaging. [25]. Changes in premiums[26] can be made if the principal place of garaging for covered vehicles is changed. [27]. In the Master Driver Automobile Declaration, effective December 20, 2002, it noted a change endorsement was made effective December 20, 2002 by adding coverage of a 1978 Ford 378, File 18, for no additional premium based on "information/coverage change-garage territory." [28] The Master Policy Declaration, under its Covered Auto Section, has a heading entitled "Alternative Garage Location" for each vehicle of the two automobiles, one truck, and one camper covered insured under the policy. Coverage is provided for persons involved in accidents in all fifty states[29]. Coverage is designed to conform to mandatory

---

[25] Exhibit 1**Part F-General Provisions. 6. Travel Expense Coverage**. ***This coverage applies only if the loss occurs more than 100 miles from your address shown on the declarations page **or your place of alternative garaging**.(Page 18, Policy Number YMZ263796F, Form Number G13007 09 95, Process Date 7-09-2002).

[26] Exhibit 1, **Part F-General Provisions**-Changes-B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease, include, but are not limited to, changes in:
1. The number, type or use classification of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles;
4. Coverage, deductible or limits.

[27] *Exhibit 1***Part F-General Provisions**
**Changes**
****
**B.*****Changes during the policy term that may result in a premium increase or decrease include *** **The place of principal garaging of insured vehicles**

[28] Exhibit 1. **Master Driver Automobile Policy Declarations**
***** Change Endorsement**
Policy has been amended as follows:
Premium Adjustments: Additional Premiums None
**Information/Coverage Change –Garage Territory**
Substitution of Vehicle 18 for 16.
(Page 1, Master Driver Automobile Policy Declarations Number YMZ263796F, Process Date 01-02-2003)

[29] Exhibit 1-Contract, **Part F-General Provisions**
**Policy Period and Territory**
*****B. The Policy territory is: 1. The United States of America, its territories ***.

insurance[30] coverage in all fifty states. Some contract provisions are not applicable to vehicles garaged in Vermont.[31]

**9. OneBeacon Insurance Company, As A Foreign Insurer, Licensed In R.I., And As The Ceded Insurance Company Of The Defendant, With The Duty To Pay The Claim, Is Subject To Rhode Island Law.**

OneBeacon Insurance Company, to which the Defendant, York Insurance Company of Maine, ceded its policy, premiums, payment responsibilities, and adjustment duties prior to the accident, was a licensed foreign insurance company in the State of Rhode Island, which was subject to the insurance laws of Rhode Island. The Defendant, York Insurance Company of Maine "reinsures 100 percent of its business with OneBeacon Insurance Company. (Deposition of Dennis Smith, Secretary of York, page 17 lines 18-19, February 21, 2006, C.A. 05-496ML). "It's 100 percent reinsurance agreement by which York Insurance Company of Maine cedes 100 percent of its insurance business to OneBeacon Insurance Company, which in turns assumes all of that business in exchange for receipt of premiums and its handles the claims on policies written by York Insurance Company of Maine." (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006, C.A. 05-496ML). "Cede is when an insurance company transfers some amount of

---

[30] *Exhibit 1*-Personal Auto Policy and Endorsements, Form G130070995 at page 4 of 18 pages
Part A –Liability Coverage provides -
***
**Out of State Coverage**
If an **auto accident** to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:
A, If the state or province has:
1. A financial responsibility or similar law specifying limits of liability for :bodily injury " or "property damage" higher than the limit in the Declarations, your policy will provide the higher specified limit.

[31] Exhibit 1, Contract, Personal Auto Composite Endorsement- Vermont
(G11244 03 02 (G11244-77)
*** The following endorsements contained in your policy booklet are not applicable if your "covered auto" is principally garaged in Vermont.
PP 03 11 06 94 Underinsured Motorists Coverage
PP 04 01 04 86 Split Uninsured Motorist Coverage
PP 04-02 04 86 Split Underinsured Motorists Limits

some portion of its business to another, to a reinsuring company, which assumes that particular amount of the business." (Deposition of Dennis Smith, page 33, lines 11-14, February 21, 2006, C.A. 05-496ML).

OneBeacon Insurance Company, a Pennsylvania Corporation, which is a wholly owned subsidiary of OneBeacon Insurance Group, LLC, collected the premiums and handled the adjustment of claims for York Insurance Company of Maine under a ceding agreement of premiums and claims with York Insurance of Maine . (Answer of York Insurance Company of Maine to paragraph 9 of Plaintiff's Complaint, Paragraph 6, February 14, 2007), (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006, C.A. 05-496ML).Under the ceding agreement, except for the issuance of contract, OneBeacon Insurance Company, a foreign corporation subject to the insurance laws of Rhode Island stood in the shoes of the Defendant, York Insurance Company of Maine. By ceding its contract with a R.I. domiciliary to an insurer subject to R.I. insurance law, York Insurance Company of Maine chose to be subject to R.I. insurance laws which mandate stacking.[32] OneBeacon Insurance Company is also a foreign corporation doing business in Rhode Island and thus subject to the insurance laws of Rhode Island[33], which is a intra policy stacking state.*R.I.G.L.*§27-7-2.1(i). Thus, by its ceding agreement the insured in effect agreed to accept the stacking law of Rhode Island.

10. **The Insurer Had Indicated that It is Following R.I. Law**.

On June 15, 2004, Kathleen Ahearn, on letterhead of OneBeacon Insurance, wrote a letter to James Laplante, Exhibit 2, with an enclosed payment of $5000 for medical

---

[32] See *Rupert v. Liberty Mut. Ins. Co*., 291 F.3d 243, 246 (3rd Cir. 2002.)
[33] *R.I.G.L.*§ 27-2-2 Applicability. The general provisions of law *** which appertain to insurance companies not incorporated under the authority of this state, and defining the powers and duties of the insurance commissioner in reference to those companies, shall be and are applicable to all corporations, *** doing, *** in this state, any insurance business of any name, kind, or description.

payments under claim number OB600908Z-02-05, for a date of loss of February 23,2003 on Policy Number, YMZ263796 which indicated that notice of such payment was done pursuant to Rhode Island law. Kathleen Ahearn of OneBeacon Insurance said as follows: "Rhode Island general law section 27, chapter 3, subsection 5.1 requires that we inform you that a check has been issued for the limits of your medical payments coverage of $5000.00 in this matter."

**11. A Comparison of Vermont and Rhode Island Statutes Indicate No Repugnant Statutes.**

The compulsory statutory overrides of automobile insurance policies in Rhode Island and Vermont are very much similar to each other. See *R.I.G.L.31-47-8; R.I.G.L.§* 27-7-2.1; *R.I.G.L.27-7-2.2 R.I.G.L.27-7-2.5,23 V.S.A. § 941; 23V.S.A. §942; 23 V.S.A.§800;* 23 V.S.A. § 802., 23 V.S.A. § 803.8, V.S.A. § 4203. Both States provide civil penalties for violations of mandatory liability insurance laws by motorists, and both are party to an interstate compact requiring mutual recognition of the other State's sovereignty *23 V.S.A. § 3552* [34]; *23 V.S.A. § 3553;* 23 V.S.A. § 3561. [35] Both Rhode Island [36], [37],[38] and Vermont[39] require motorists to have automobile insurance liability

[34] ***23 V.S.A. § 3552 ******
(b) The purpose of this compact is to:
(1) Provide a means through which the party jurisdictions may participate in a reciprocal program to effectuate the policies enumerated in paragraph (a) above in a uniform and orderly manner.
(2) Provide for the fair and impartial treatment of traffic violators operating within party jurisdictions in recognition of the motorist's right of due process and the sovereign status of a party jurisdiction.
[35] ***23 V.S.A. § 3902***. Findings and declaration of policy — Article I
(a) The party states find ***.
(b) It is the policy of each of the party states to:
(2) make the reciprocal recognition of licenses to drive and eligibility for licensure more just and equitable by considering the overall compliance with motor vehicle laws, ordinances, and administrative rules as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.
[36] *R.I.G.L.§ 31-47-2 Definitions.* **(Motor Vehicle Reparations Act)—**
(13) "Owner's policy of liability insurance" means a policy:
(A) *** Nothing *** shall prohibit any insurer from affording coverage under an owner's policy of liability insurance more liberal than that required by the minimum provisions. Every owner's policy of liability insurance

coverage. Both Rhode Island at R.I.G.L. §27-7-2.1 (a)-(i)[40] and Vermont at 23 V.S.A.§941 require that insurance contracts of coverage of liability for motor vehicles accidents also provide uninsured motorist coverage, which includes coverage of damages caused by motorists who leave the scene of the accident. Both Rhode Island and Vermont [41], provide that their statutory mandates override and otherwise supplement any contrary provisions in an automobile insurance contracts for motor vehicles accidents and that statutory provisions must be considered as part of the automobile insurance contract.

---

shall provide insurance***against loss from the liability*** for damages within the state of Rhode Island or elsewhere in the United States in North America or the Dominion of Canada, subject to a limit, exclusive of interest and costs, with respect to each motor vehicle of twenty-five thousand dollars **($25,000**) because of bodily injury to or death of one person in any one accident, and subject to the limit for one person, ***, and a limit of twenty-five thousand dollars **($25,000**) because of *** destruction of property of others in any one accident, or seventy-five thousand dollars ($75,000) combined single limit.
(B) ***
(C) In the case of a vehicle registered in another state in the name of a nonresident, either a policy issued by an authorized insurer, or a policy issued by an unauthorized insurer authorized to transact business in the state of the nonresident's residence ***if the unauthorized insurer files with the commissioner in a form to be approved by him or her statement r.

[37] *R.I.G.L.§ 31-47-8* Revocation of registrations — Drivers' licenses and nonresident privileges. —
(e) (3) This subsection shall not apply to any person who at the time of operation of the motor vehicle had in effect an operator's policy of liability insurance with respect to his or her operation of the motor vehicle.

[38] R.I.G.L.§ 31-47-8 Revocation of registrations — Drivers' licenses and nonresident privileges. —
(h) *** With respect to a nonresident the policy may also be issued by a non-admitted insurance carrier provided the requirements of this chapter, with respect to issuance of an owner's policy of liability insurance by the carrier, have been met.

[39] *23 V.S.A. § 800*. Maintenance of financial responsibility
(a) No owner or operator of a motor vehicle required to be licensed shall operate or permit the operation of the vehicle upon the highways of the state **without having in effect an automobile liability policy** or bond in the amounts of at least $25,000.00 for one person and $50,000.00 for two or more persons killed or injured and $10,000.00 for damages to property in any one accident. ***

[40] **R.I.G.L.§ 27-7-2.1** (a) **No policy insuring against loss** resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this **state unless coverage is provided therein** or supplemental thereto, **for bodily injury** or death in limits set forth in each policy, but in no instance less than the limits set forth in §31-31-7 or §31-32-24 under provisions approved by the insurance commissioner**, for the protection of persons insured thereunder who are legally entitled to recover damages from** owners or operators of uninsured motor vehicles and **hit-and-run motor vehicles** because of property damage, bodily injury, sickness, or disease, including death, resulting therefrom. **The insurer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits.***** However, the named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31-31-7 or § 31-32-24, unless the named insured is purchasing only the minimum coverage required by compulsory insurance provisions of the general laws, in which case the limit can be reduced to zero, but only after signing an advisory notice approved by the director of business regulation concerning the hazard of **uninsured and underinsured motorists**. ***(Emphasis Added)

[41] **23 V.S.A. § 943.** Provisions in insurance policies.***

Both Rhode Island[42],[43] and Vermont require that the coverage for uninsured and underinsured motorists who suffered damages from phantom vehicles cover at the least the same amount damages as is covered by liability coverage of the insured motorists who suffered the damages.

12. **A Comparison of Vermont and Rhode Island Court Decisions Indicate No Actual Conflict.**

Both the Courts of Rhode Island and Vermont require that insurers allow its insured motorists to stack the coverage provided in separate policies of automobile insurance, i.e. interpolicy stacking. *Monteith v. Jefferson Ins. Co. of New York*, 159 Vt. 378, 618 A.2d 488 (Vt. Oct 23, 1992) (NO. 91-244),allowed *inter policy stacking*; and Vermont has criticized its earlier holding permitting contract limitations on intra policy stacking in *Sanders v. St. Paul Mercury Ins. Co*.148 Vt. 496, 536 A.2d 914 (Vt.,1987). Rhode Island's use of the interest weighing approach is reflected in *Woodward v. Stewart*, 104 R.I. 290243 A.2d 917 (1968); ,*Mendez v. Brites*, *849 A.2d 329, 337* (R.I. 2004) and *Amick v. Liberty Mutual Insurance Co.*,455 A.2d 793,(R.I. 1983).

Although the Vermont Supreme Court in *Sanders v. St. Paul Mercury Ins. Co*.148 Vt. 496, 536 A.2d 914 (Vt.,1987) has upheld a contract provision prohibiting intra policy stacking claims that finding, applicable to a Vermont resident with a vehicle principally garaged in Vermont, is not apposite to the Laplante matter; and would be

---

[42] R.I.G.L.§ 27-7-2.1 (a)***The insurer shall provide uninsured motorist coverage in **an amount equal to the insured's bodily injury liability limits**.***

[43] *Cardoso v. Nationwide Mut. Ins. Co*., 659 A.2d 1097 (R.I. 1995). The statute at issue is now found at G.L. 1956 (1994 Reenactment) § 27-7-2.1(i).*** The redesignation of subsection (c) as subsection (i) in the 1994 Reenactment does not change the statutory language.*** This amendment was added in 1987 after this court ruled in *Constant v. Amica Mutual Insurance Co.,* 497 A.2d.343 (R.I. 1985), that the insureds were not entitled to stack the uninsured-motorist benefits of their two separate policies when the policies had specific language prohibiting stacking. Despite the fact that the insureds in *Constant* had paid two separate premiums, this court ruled that the policy's unambiguous limit-of-liability clause "conveys most clearly * * * the maximum limit [that the insurer will pay] regardless of the number of * * * vehicles or premiums shown"' on the declarations page. *Id.* at 345.

otherwise overridden by analysis suggested in the various cases rooted in the Restatement..

The Vermont Court in the matter of *Monteith v. Jefferson Ins. Co. of New York*, 159 Vt. 378, 618 A.2d 488 (Vt. Oct 23, 1992) (NO. 91-244), did allowed *inter policy stacking.* The Court said that the insured could stack the underinsured motorist (UIM) coverages of his motorcycle and automobile policies, even though the UIM limits of the motorcycle policy equaled the liability limits of 23 V.S.A. 941(f).*** In *Sanders* (the Court)e held that the insurer could write and enforce an *intra*policy stacking provision, but we did not extend our rationale to *inter*policy stacking provisions. 148 Vt.503, 536 A.2d at 918.id. 618 A.2d 491. "Although we implied some disapproval of interpolicy anti-stacking provisions in *Sanders*, 148 Vt at 503, 536 A.2d at 918, we now explicitly hold that interpolicy, anti-stacking provisions violate the terms of §941 and will not be enforced. (*Emphasis Added*)

It is clear that the same Vermont Court today using its own conflict of laws analysis, *Amiot v. Ames*,, id, would allow the intra policy stacking disallowed in *Sanders*, id. in this instance, on the grounds that Rhode Island has the most important interests to be weighted and that the R.I. stacking law is not incompatible with the purposes of the uninsured and underinsured mandates of the Vermont statute which is designed to protect persons who purchased the various premiums for uninsured coverage, and not the vehicles.

The cases cited by Defendant in its communications with the Plaintiff and his father and counsel in 2003, 2004, and 2005, See *Exhibits 32- 39*, which cite cases which are not apposite to the matter at hand.

In *Mancini v. Utica Mut. Ins. Co*., 653 A.2d 727 (R.I. 1995), a driver under a policy purchased by fleet owner was not allowed to stack because he had not purchased the coverage, but in *Colwell v. Allstate Ins. Co.*175 Vt. 61, 819 A.2d 727, (Vt.-2003), a driver was allowed to recover under both the company's statutorily mandated underinsured coverage as well as through worker's compensation on the basis that separate insurance policies were being provided under separate statutory obligations. Neither case addressed the contract the prohibition condition of dual recovery without set off sets. Laplante only seeks to be made whole once. Laplante did pay for three (3) premiums for uninsured coverages and three (3) medical payment coverages.

13. **The Choice of Law is Rhode Island, Whether or Not There is a Conflict**.

This is a diversity case where the choice of law frame work of the forum state, Rhode Island, must be followed. *Crellin Technologies* v. *Equipmentlease Corp*., 18 F.3d 1,5 (1st Cir. 1994[44]), *Toledo v. Van Waters & Rogers, Inc*., 92 F. Supp.2d 44 (D.R.I. 2000); *URI Cogeneration v. Bd. Of Governors*, 915 F. Supp. 1267, 1279, (R.I. 1996); *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997). *Amick v. Liberty Mutual Insurance Co*.,455 A.2d 793,(R.I. 1983). To be a choice of law question, there has to be a conflict of laws between two states. Compare *Levin v Dalva Brothers, Inc*., 459 F.3d 68,73 (1st Cir. 2006). An initial task of a choice-of-law analysis is to determine whether there is an

---

[44] *Crellin Technologies v. Equipmentlease Corp*., 18 F.3d 1, 5 (1st Cir. 1994).
**A. Choice of Law.**
[18] It is, of course, a black-letter rule that state **substantive law** must be applied by a federal court sitting in diversity jurisdiction. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In determining what state law pertains, the court must employ the choice-of-law framework of the forum state, here, Rhode Island. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Putnam Resources v. Pateman*, 958 F.2d 448,464 (1st Cir. 1992). Choice-of-law judgments are legal in nature, and courts of appeals exercise plenary oversight in respect thereto. See Soo Line R.R. Co. v. Overton, 992 F.2d 640, 643 (7th Cir. 1993); Waggoner v. Snow, Becker, Kroll, *Klaris, &Krauss*, 991 F.2d 1501, 1505 (9th Cir. 1993); Putnam Resources,958 F.2d at 466. Consequently, a de novo standard of review obtains.

actual conflict between the substantive law of the interested jurisdictions[45]. *See Millipore Corp. v. Travelers Indem. Co.*, **115 F.3d 21**, **29** (1st Cir. 1997).

If there is a conflict, the Defendant should not complaint about the application of R.I. Law in a Court in R.I.[46] Unlike *Mendez* in the interest weighing in *Mendez v. Brites*, *849 A.2d 329, 337* (R.I. 2004), Laplante like *Amick*, in *Amick v. Liberty Mutual Insurance Co.*,455 A.2d 793,(R.I. 1983) [47] .chose to have extra territorial coverage in R.I., had a Rhode Island accident, and, thus using interest weighing analysis is entitled to *intra-policy* stacking. Subsection (i) of Chapter 7 of Title 27 covers any Rhode Island domiciliary, and Laplante was a domiciliary and conditionally entitled to his coverage once he bought an appropriate policy. He was required only to have coverage, not necessarily coverage from a Rhode Island insurer.. The purpose of that uninsurance coverage is to protect persons, not vehicles. Subsection (i) is not modified by any provisions of law. It makes no exception in its mandate for residents of Vermont who have moved to Rhode Island. It is a R.I. legislative benefit provided to any Rhode Islander who paid additional premiums for coverage in any automobile policy. Having

---

[45] *Goodrich v. Lumbermens Mut. Cas. Co.*, 423 F. Supp. 838,841, *(D. Vt. 1976*

[46] *Freeman v.Package Machinery Co*.,865 F.2d 1331 at 1349 (1st Cir. 1988) "A defendant who chooses to remove a case from a state forum to a federal one is hard put to complain if the federal court follows state practice in regard to state-law claims contained in the complaint

[47] *kMendez v. Brites*, ***849 A.2d 329, 337*** (R.I. 2004) *** (See discussion of Similar *Amick*-Laplante situation) Id. at 794. This Court applied Rhode Island law to that policy's coverage and reformed the minimum coverage limits to conform to applicable Rhode Island law. Id. at 796. In doing so, the Court reasoned that raising the limit on the policy to meet Rhode Island's minimum coverage requirement implemented the state's public policy that those who undertake to insure a vehicle against accidents occurring in this state must do so for at least the statutory minimum amount of coverage. See id. And the Court also ruled that such a reformation of the contract was consistent with the parties' intent when they entered into the contract. See id. Because the insured had selected this optional out-of-state coverage, Rhode Island law would have to deem him an underinsured motorist — unless the Court reformed the policy to raise the limit on the policy's coverage to conform to Rhode Island laws. Id. at 795.In these circumstances, the Court said, "[w]e do not believe that the insured bargained for the status of an uninsured motorist when he purchased the optional coverage from Liberty Mutual." Id. at 796. Thus, the Court reformed the policy and raised the policy limit from the Massachusetts minimum to the minimum that Rhode Island law required. Id.

sold its policy to a person who happened to live in Rhode Island, Laplante is entitled to have that benefit in Rhode Island protected by the Due Process[48] and Reciprocity considerations under the Constitutions of the United States and Rhode Island. Article 4, §1, of the United States Constitution mandates that Full Faith and Credit be "given in each state to the public acts, records, and judicial proceedings of every other state". Vermont must recognize that the public policy of the State of Rhode Island, as reflected in the provisions of *R.I.G.L.*§27-7-2.1(i), mandates that an insured is entitled to be paid for the all of the coverage provided by the separate premiums paid within a single policy.

14. **Restatement 2d Conflicts on Law Rules Predominates Defendant's Old Cites.**

The Defendant, in his post accident communications, relied upon old law on the location of the Contract which has been replaced by applicable, multiple provisions of the Restatement Second on Conflict of Laws. (See Exhibits 32 through-40). Single variable analysis based on location of the tort and contract is no longer utilized.

Automobile insurance policies intertwine principles of contract law and tort law. Rhode Island's "interest weighting" model for choices of law intertwines factors relating to both traditional tort law and traditional contract law.. Both Vermont and Rhode Island have joined twenty nine other States in utilizing the interest balancing approaches contained in the Restatement (Second)of Conflict of Laws (1971).

In torts Rhode Island clearly follows the Restatement (Second) on Conflicts of Law. *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,301(1968). In contracts, Rhode Island has been slow in moving to the Restatement Second's positions. See *Gordon v.*

---

[48] *Mitchell v. State Farm Ins. Co.*, 315 Mont. 281, 68 P.3d 703 (2003) 102, 2003 MT); U.S.C.A. Const Amend XIV.. Anti-stacking provision in automobile insurance policies violated substantive due process, where provision permitted insurer to charge premiums for five separate uninsured motorist (UM) coverages, in spite of fact that the anti-stacking provision only permitted insured to recover for one coverage.

*Clifford Metal*, 602 A.2d 535, 539, 557(R.I. 1992). Circuit Justice Bruce Selya noted in 1992, while noting *Gordon v. Clifford*, supra, the R.I. Supreme Court. has "indicated a preference for an interest-weighting analysis in contract related matters.

In torts and contracts, Vermont utilizes a significant relationship formula under the *Restatement Second*. *Pioneer Credit Corp. v. Carden,* 127 Vt. 229, 233,245 A.2d 891, 894 (1968);*Amiot v. Ames*, 166 Vt. 288,292,293 (1997); *Miller* v. *White*, 702 A.2d 392 167 Vt. 45 (1997).Maine has a adopt the most significant contacts test[49].[50],. Massachusetts applies a "functional approach".[51] .

**15. There Is Little Difference Between Choice Of Law Formats In R.I And Vermont.**

There appears to be little significant difference between the interest weighing approaches of Vermont, *Amiot v. Ames*, 166 Vt. 288, 693 A.2d 675, 1997*); Miller* v. *White*, 167 Vt. 45, 702 A.2d 392 ((1997) and of those of Rhode Island,[52] *Najarian v. Nat'l Amusements Inc*., 768 A.2d 1253, 1255 (R.I. 2001).. *Blais v. Aetna Casualty*, 526 A.2d 854, (R.I. 1987.)

16. **R.I. As The Forum State Chooses The Substantive Law**.

The forum state not only chooses the method of selection of the law to be chosen for the choice of law, it also selects the characterization of the law to be chosen if

---

[49] *Harlow v. Children's Hosp.*, 432 F.3d 50,67 (1st Cir. 2005). (Maine has adopted the "most significant contacts and relationships" test for choice of law ***

[50] *Uncle Henry's Inc. v. Plaut* ***Consulting* Co**, 399 F.3d 33 (1st Cir. 2005). ***Maine looks to the Restatement(Second)of Conflict of Laws, and that conclusion is consistent with our precedent. *See Ricci v.Alternative Energy, Inc.*, 211 F.3rd 157,165 (1st Cir. 2000).

[51] *Levin v. Dalva Brothers*, Inc., 459 F.3d 68 (1st Cir. 2006). Massachusetts applies a "functional approach to choice of law."***).

[52] *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,293 (1968) ***

there is a conflict. [53] The measure of damages in an automobile accident involving a Rhode Islander is to be s characterized by R.I. law.[54] Stacking is a measure of damages.

The choice of law frame-work followed by both Rhode Island[55],[56] and Vermont[57] look to factors which bear the "most significant relationship" to the event and to the parties.

Moreover, when the public policy of the forum state conflicts with a non forum state, the forum state does not have to follow the dictates of non forum state. In the matter of *Allstate Ins. Co. v. Sullam, 76 Misc.2d 87, 349 N.Y.S.2d 550,* (1973), It was held that when a Massachusetts automobile-insurance law conflicts with the public policy of a state in which an accident has occurred, the Court of the forum state need not follow Massachusetts law.

---

[53] ***Gordon v. Clifford Metal***, 602 A.2d 535,557(R.I. 1992). ***The forum state is also free to characterize the nature of the dispute. See Restatement (Second) Conflict of Laws § 124, comment a at 354 (1971).

[54] *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,301(1968). Accordingly the defendants' alleged wrongful conduct is to be judged by the law of Massachusetts, but the host's duty of care to his passengers and **the measure of damages to be applied are to be governed by the law of Rhode Island**

[55] *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997). We follow instead the **interest-weighing** approach. In so doing, we look at the particular case facts and determine therefrom the rights and liabilities of the parties "in accordance **with the law of the state** that bears the **most significant relationship** to the event and the parties." *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I. 1986), see also *Putnam Resources* v.*Pateman*, 958 F.2d 448, 464 (1st Cir. 1992); *Blais v. Aetna Casualty & Surety Co.*, 526 A.2d 854, 856-57 (R.I. 1987); *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176 (1969). That approach has sometimes been referred to as a rule of "**choice-influencing considerations**." See Robert A. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U. L. Rev. 267, 282 (1966).

[56] *Najarian v. Nat'l Amusements Inc.*, 768 A.2d 1253, 1255(R.I. 2001).

57 *Matson v. Anctil*, 979 F. Supp. 1031, 1034,1035 (Vt. 1997). A. Choice of law. In diversity cases, a federal court must follow the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994). Recently the Vermont Supreme Court adopted the "significant contacts" approach of the Restatement (Second) for choice of law decisions in tort cases, in *Amiot v. Ames*, 693 A.2d 675 (Vt. 1997). See also *Miller v.White*, ___ Vt. ___, 702 A.2d 392 (1997).*** The Defendants argue that, under ***Amiot,*** this Court should apply **Rhode Island law** to the issues of whether the Defendants may sue Emily's parents for contribution, and whether the Defendants' liability, if any, may be weighed against the parents' liability, if any. The Plaintiff asserts that Vermont law should apply.

According to the Restatement's section 145(1), "[t]he rights and liabilities of the parties with respect to an issue in tort will be determined by the local law of the state which, with respect to that issue, **has the most significant relationship** to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (1971). In a personal injury action, the state or country with the **most significant relationship** will usually be that where the injury occurred. *Amiot*, 693 A.2d at 678.

**17. Applying the *Pardey-Cribb's interest weighing approach*, as set forth in Restatement (Second)of Conflict of Laws (1971, *Ch.1, § 6*[58], on Choice of Law Principles, to the facts of this case, Rhode Island law would prevail.**

Pursuant to the Restatement (2d),§6 (1)on Choice of Law, Rhode Island as the forum state , is directed **"to follow**" the provisions of its State Constitution, Article I §2 on due process and equal protection, Article I §5 on remedies, and, pursuant to Article VI§2, and to implement the "**statutory directives"** contained in provisions of (i) *R.I.G.L.*§27-7-2.1(i) and of *R.I.G.L*§27-7-2.1(g). Those directives require insurers of R.I. residents to provide economic protection from bodily injury from uninsured and underinsured drivers in an amount equal to the sum of the separate premiums sold to Rhode Islanders regardless of a single limit of liability provision, and to (ii) to follow the provisions of *R.I.G.L.*§27-7-2.1(a), *R.I.G.L.*§31-31-7, *R.I.G.L.*§31-32-24, and *R.I.G.L.§31-47-2 (13) (A*) and (B), and R.I.G.L.§31-47-8 (h), to provide a economic protection from property damage up to the sum of twenty five thousand dollars ($25,000) dollars. York Insurance Company voluntarily decided to cover accidents in Rhode Island of its insureds and to cover vehicles insured which were garaged in Rhode Island, and to comply with R.I. laws in such situation.

Assuming there is no choice of law directive, and assuming that there is a question of conflict,[59] between R.I. statute and a Vermont case,, the relevant factors of the Restatement (2d),§6 still point to Rhode Island, when applying the test suggested in

---

[58] *Restatement (Second) Conflict of Laws (1971) Choice of Law Principles*. (1) A court, subject to constitutional restrictions, will follow **a statutory directive** of its own state on choice of law. (2)When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of interstate and international systems, (b) the relevant policies of the forum, (c)the relevant polices of other interested states and the relative interest of those states in the determination of the particular issue,(d) the protection expectations, (e)the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application to be applied.

[59] Compare *OneBeacon v. Georgia-Pacific*, 474 F.3d 6,9 (1st Cir. 2007); *Roy* v. *Star Chopper Co., Inc*., 584 F.2d 1124, 1129-1130 (1st Cir. 1978)

*Pardey* v. *Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I. 1986), *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997. and *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,293 (1968), *La Plante* v. *American Honda Motor Co.*, *Inc*., 27 F.3d 731,743 (1st Cir. 1994).

Vermont simply has no "significant relationship" in any set of factual variables related to tort under the *Restatement*, **§ 145, § 146, § 171** *as to damages*, or contract, **§188, §189,** and **§ 193.** Laplante lived in Rhode Island and was harmed in Rhode Island and suffered damages in Rhode Island. It was a form contract of adhesion, which was not negotiated in Vermont and is essentially the same in all 50 States. The geographic home of York Insurance Company is in Maine, but its operational heart and soul has been ceded to a nationally licensed company, OneBeacon Insurance Company, located in Massachusetts.

(1) "**Predictability of result**": The application of Rhode Island law is easily predictable if the statute of the state where the accident occurred and the insured was domiciled is followed. The provisions of insurance contract issued in Vermont envisioned enforcement under R.I. law. All states expect their citizens will receive the same privileges and benefits of citizens of the State in which they are driving.

(2) "**Maintenance of interstate and international order**": Each State of the United States is expected to respect the laws of other states and provide reciprocity, consistent with the Full Faith and Credit Clauses, and the Privileges and Immunities Clause of the United States Constitution. R.I. and Vermont have reciprocal motor vehicle violations laws and somewhat similar consumer protection laws for motor vehicle drivers The Vermont insurance statutes are not repugnant to Rhode Island statutes, and in fact some are similar or, at times, neutral on stacking. Laplante's insurance contract purports to

provide extraterritorial coverage, conforming to the requirements of other states. mandating certain forms of insurance coverage. The Vermont issued policy envisioned enforcement in R.I. Although R.I.'s law for the most part is more generous, requiring the provision of greater coverage for persons with Vermont registrations living in Rhode Island is not inconsistent with Vermont statutes, which have been interpreted to provide inter policy stacking. Insurers who provide national coverage who happen to write policies in Vermont do not expect Vermont to provide them a shelter from more generous laws in other states.

(3) "**Simplification of the judicial task**." Recognizing the law of the jurisdiction where the accident occurred, and where the insured was a domiciliary, covered by a contract, based upon uniform forms of the insurance industry, such an extra territorial clause enforcement provision of other state motor vehicle insurance coverage laws, as the most significant relationship is not a complicated formula for any jurisdiction to apply.

(4) "**Advancement of the forum's governmental interests**." Intra-policy stacking of premiums is the policy of the forum state, as required by R.I. statute, *R.I.G.L*§27-7-2.1(i). It advances the interests of the forum state in ensuring full compensation for its accident victim and its concern that the R.I. creditors caused by that accident will be paid. Intra-policy stacking advances the underlying policy of Rhode Island statutes, which seek to fully compensate injured drivers for all premiums they may have paid in order that they receive the he full benefit of their bargain. R.I. law protects persons, not vehicles. Moreover, there is $136,000 of unpaid Rhode Island bills resulting from the

accident, which have statutory liens upon the proceeds of the settlement which will be paid.(See Affidavit of James Laplante)

(5) "**Application of the better rule of law**." The Rhode Island intra-policy stacking statute[60] is the better rule of law for both Rhode Island and Vermont. It encourages motorists to buy expanded coverage for other motorists who will do them harm. Single limits of liability do by the "back door" complexity which statutes prohibit at the "front door;." They are contrary to the remedial purposes of consumer protection laws, such as stacking. Those extra premiums payments should not provide illusory benefits. The auto insurance form contract, by its owns terms, was designed to be applicable in Rhode Island and to cover persons with vehicles garaged in Rhode Island. Rhode Island provides greater mandated economic protection under the laws to which the Defendant, in its automobile insurance policy, indicated conformance and fidelity, to the highest standards, for its insured cars garaged in Rhode Island. Neither State need prohibits the other from providing more extensive consumer protection to anyone regardless of their residency.

**18. If the Restatement (Second) *Conflict of Laws,* Tort Factors, Contained in§ 145[61] at 414 (1971) Are Applied, then Rhode Island Interests Would Also Prevail.**

---

[60] See *Wildiss,* Alan, *Thomas,* Jeffrey, Uninsured and Underinsured Motorist Coverage (Third Edition)(Nov. 2005), Chapter 2 Mandated Coverage Generally, Chapters 12 and 13 on Limits of Liability.
[61] *Restatement (Second) Conflict of Laws* §145 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and parties under the principles stated in §6. (2)Contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred;(c)the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties, are centered.

Every thing was centered in Rhode Island under § 145(2);,. "(a*) the place where the injury occurred*", is Lincoln Rhode Island;, (b) "*the place where the conduct causing the injury occurred,"* is Lincoln, Rhode Island, and"(c) "*the domicile, residence, nationality, place of incorporation and place of business* of the Plaintiff is Rhode Island. York Insurance Company of Maine was incorporated in Maine, doing business in Vermont, and had ceded all of its revenues and duties to One Beacon Insurance Company, a Pennsylvania Corporation, doing business in Massachusetts. OneBeacon Insurance was licensed as a foreign insurance corporation to in Rhode Island, subject to mandates of the insurance laws of Rhode Island, and in forty nine other states. (*Exhibit 43*, NAIC List). OneBeacon Insurance, on behalf of the Defendant, told the Plaintiff by that it was subject to the laws in Rhode Island. (See Exhibit June 15, 2004). Thus, "(d) ***The place where the relationship, if any, between the parties is centered" is*** Rhode Island.. Only one event occurred in Vermont; i.e. the issuance of a Maine Policy. All of the other events occurred in Rhode Island. The weight of the interests was centered in Rhode Island.

**19. Applying the Restatement (Second) *Conflict of Laws,* § 146 (1971), Rhode Island interests would prevail.**[62]

Nothing happened in Vermont other than the mailing of insurance cards to James Laplante. The injuries were in Rhode Island. The accident was in Rhode Island. The domicile was in R.I. R.I. Law must be applied under §146.

**20. Utilizing Restatement (Second) *Conflict of Laws*, § 171 (1971) R.I. Law would apply..**[63]

---

[62] *Restatement (Second) Conflict of Laws §146. Personal Injuries*. In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the occurrence and the parties, in which event the local law of the other state will be applied.
[63] Restatement (Second) Conflict of Laws §171. Damages. The law selected by application of the rule of §145 determines the measure of damages.

The policy of York Insurance of Maine, which is customized by OneBeacon Insurance Company for use in the fifty states in which it is licensed, is a promise to pay damages in Rhode Island. The stacking law, the minimum liability amounts for personal injury coverage and property damage is measures of damages utilized by Rhode Island.

**21. The Requirements Of Restatement (Second) *Conflict Of Laws,* § 188 (1971) Would Again Result In The Application of R.I. law..[64]**

Section (1) of §188 is not otherwise applicable R.I. has a statute on stacking but, Vermont only has a form of stacking, interpolicy stacking.. Nevertheless, there was no negotiation in Vermont. An order was place and filed much like that done at theatre ticket agency. The risk assumed was nationwide and focused on Rhode Island as noted in the June 5, 2003 termination letter from Ford agency basis noting that the basis for non renewal was excess accidents in Rhode Island. See Exhibit. 35.)

**22. The Requirements of Restatement (Second) *Conflict of Laws,* § 193 (1971) have been met by the Application of R.I. Law..[65]**

---

[64] *Restatement (Second) Conflict of Laws §188*. Law Governing in Absence of Effective Choice by the Parties. (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles in §6. (2) In the absence of an effective choice of law by the parties (see §187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue. (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of the state will usually be applied, except as otherwise provided in §§189-199 and 203.

[65] *Restatement (Second) Conflict of Laws* §193. Contracts of Fire, Surety or Casualty Insurance. The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the transaction and the parties, in which event the local law of the other state will be applied.

The insured risk was primarily in Rhode Island and no more in Vermont than in Massachusetts, where the ceded business has been directed.. There was no risk in Maine which was the Defendant's headquarters. On the Declarations, *Exhibit 1*, York itself notes Vermont as an alternate location for the vehicles of James Laplante.

**Summary:**

The Defendant, York Insurance Company of Maine, through its ceded agent, OneBeacon Insurance, has a duty to pay to the Plaintiff the sums demanded by the Plaintiff, in accordance with R.I. Law and the premiums paid.

Plaintiff
James P. Laplante
By His Attorney
(S)____________________
Keven A. McKenna, Esq.
Keven A. McKenna, PC
23 Acorn Street
Providence, RI 02903
(401) 273-8200
(401) 521-5820 Facsimile

**Certification of Notice**

I, the undersigned, hereby certify that on the 30th day of September 2007, a true copy of the within document was filed electronically, and is available for viewing and downloading from the ECF system; and that C.Russell Bengston, the Attorney for York Insurance Company of Maine, C. Russell Bengsten, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903 will receive notice through the ECF system and by direct email, rbengstson@CKMlaw.com.

(s)Keven A.McKenna____________________