UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**James P. Laplante,** :
Plaintiff :
v. : C.A. 07-0062ML
**York Insurance Company of Maine**:
Defendant :

**Plaintiff's Memorandum in Support of Motion for a Partial Summary Judgment To Determine the Limits of Liability of the Defendant's Insurance Contract.**

1. **Partial Summary Judgment on Auto Insurance Payment Obligations.**

Plaintiff has moved for a Partial Summary Judgment to declare void a single limit of liability claimed by the Defendant within its form based national styled insurance policy because it violates Rhode Island's public policy, which is to protect "persons" harmed by uninsured and underinsured drivers, when the insured has paid multiple premiums for uninsured coverage and for underinsured coverage.

Plaintiff asked, in his original State Complaint, which was then removed to Federal Court under the Diversity clause, that Rhode Island law, through its Declaratory Judgment statute[1], [2], be utilized to construe his rights to indemnification under his insurance policy, *Exhibit 1*, with the Defendant, as those rights have been supplemented by State law.

2. **Background.**

The facts in this controversy are set forth in detail in the Affidavits of James Laplante with attached exhibits and photographs, in the Affidavit of Joseph Laplante, and in the Plaintiff's *Statement* of *Undisputed Facts*, which are enclosed herein by reference.

---

[1] R.I.G.L.§9-30-1, et seq.
[2] Compare 28 USC §2201 Creation of Remedy.

EXHIBIT A

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 2 of 30

On February 23, 2003, the Plaintiff, James Laplante, was a domiciliary of Rhode Island, who had garaged his rebuilt truck in Rhode Island, and who had a severe accident, in which he suffered compensatory damages in Lincoln, Rhode Island, as a consequence of a hit and run driver forcing his truck to hit a traffic control pole. (See *James Laplante Affidavit*, (*Exhibits* 15 throught31), (*Undisputed Facts*) James Laplante claims damages for personal injury and property damage in sum of $3,484,054.90. (See *Affidavit of James Laplante*, Par.55.) Laplante contends the Defendant York Insurance Company of Maine, through its ceded assignee, OneBeacon Insurance Company, is required to pay him those damages under the provisions of his uninsured and underinsured coverage in his policy, *Exhibit 1*, as it is supplemented by the law and policy of the State of Rhode Island regulating automobile insurance policies.

As altered

The Defendant, Insurer, however, claims that, under Vermont law, it can shelter itself from its contracts liabilities by its an anti-consumer single limit of liability. The impact on Laplante damages of the single limit of liability is to eliminate any other statutory or paid type coverages in excess of $300,000. Laplante contends that such Single Limit of Liability Per Accident[3] subverts the Public Policies of both Rhode Island and Vermont. Laplante, in his affidavit, contends that he can prove that he is "legally entitled to recover damages for "**bodily injury**"[4] in the sum of $3,474,054.90 and "**property**

moved

---

[3] See *Exhibit 1*, Insurance Policy No YM-Z2639796F, Personal Auto Policy, Form No. 13007 09 05, Single Limit of Liability, A,B.and C at page 5 of 18, and See Personal Auto Composite Endorsement-Vermont, Form G11244 03 02 (G11244-7) Single Limit of Liability for Uninsured at Page 4 of 6.

[4] See *Exhibit 1*, York Insurance Policy No YM-Z2639796F, Personal Auto Policy, Form No. 13007 09 05, Part C Insuring Agreement, Part C , A. –We will pay compensatory damages which an "insured is legally entitled to recover from the owner or operator of an" uninsured motor vehicle " because of bodily injury:" at Page 5 of 18 of Attachment to Declaration, and , and See Personal Auto Composite Endorsement-Vermont, Form G11244 03 02 (G11244-7) , at Page 3 of 6 pages, which provides as follows Uninsured Motorist Coverage Vermont, G13156 -0302, 1 Part C, Uninsured Motorist Coverage. Part C is replaced by the following: Insuring Agreement A. We will pay compensatory damages which an "**insured"** is legally

**damage**" in sum of $10,000.00 from a "hit and run" driver. A single limit of liability when there is one accident with enormous bodily injury damages, can, by its mathematical nature, eliminate other State mandated and contracted coverages.

¶ change

- **"Legally Entitled Damages" Under R.I. Law and the Policy:**

Applying the benefit of R.I. law, and the benefit of his auto insurance policy, the Plaintiff, is requesting a declaration that the Defendant, insurer, has a duty to pay for his actual compensatory damages in the following sums;:

(1) The Sum of Nine Hundred Thousand dollars ($900,000) for the three(3) premiums paid for Uninsured coverage, with each premium having a three hundred thousand dollar ($300,000) limit;

(2) The sum of nine hundred thousand dollars ($900, 000) for three premiums paid for Underinsured coverage, with each premium having a three hundred thousand dollar limit;

(3) The sum of Ten Thousand dollars ($10,000) for the complete destruction of his truck as additional Property damage to the minimum limit of $25,000

**3. Coverage provided under R.I. Law for Rhode Islanders And Non Residents.**

For the purpose of the R.I. Motor vehicle laws R.I.G.L§ 31-1-18 (b), James Laplante was a resident of Rhode Island[5]. He worked from his residence at 217 Douglas Pike, North Smithfield, and he garaged his Ford 378 Truck in North Smithfield. He did

---

entitled to recover from the owner of an "**uninsured**" motor vehicle" because of 1. Bodily Injury *** and 2. **Property Damage** ***

[5] *R.I.G.L§ 31-1-18 Resident and nonresident.* *** (b) "Resident" means a person:
(1) Who owns, rents, or leases real estate within the state as his or her residence and:
(i) Engages in a trade, business, or profession in this state; or
(ii) Enrolls his or her children in a school in this state for a period exceeding ninety (90) days; or
(2) Who is registered to vote or is eligible to register to vote under the laws of this state.

travel to Hartland, Vermont to be with his finance, Corrina Brown. Laplante did obtain a Vermont license to drive and registered his vehicle in Vermont before he moved to Rhode Island, and he did receive coverage through his fiancée's automobile insurance policy issued in Vermont.(See James Laplante Affidavit) Although she owned their house in North Smithfield, she worked and rented an apartment in Vermont, thus Brown was a *non resident* of Rhode Island under the provisions of *R.I.G.L.§*31-1-18(b). However they both were allowed to have insurance which provided coverage in Rhode Island and Vermont[6]. [James Laplante was not a student or a member of military living in Rhode Island; and thus James Laplante was not a *non resident* pursuant to the provisions of R.I.G.L§ 31-1-18 (b)[7]] Nevertheless, since he visited with his fiancee' every week when he was not working from Rhode Island, neither he nor his truck was in Rhode Island for thirty (30) continuous days[8],[9]; and thus he was not otherwise required to carry insurance issued by a Rhode Island insurer. The Vermont insurer of Corinna Brown and James Laplante, York Insurance Company of Maine, nevertheless provided *extra –territorial coverage*[10] which indicated by terms that it met the requirements of Rhode Island and of

moved

---

[6] *R.I.G.L.§* 31-47-8 Revocation of registrations (h) ***With respect to a nonresident the policy may also be issued by a non admitted insurance carrier provided the requirements of this chapter, with respect to issuance of an owner's policy of liability insurance by the carrier, have been met.

[7] *R.I.G.L§* 31-1-18 Resident and nonresident. —
(a) "Nonresident" means any person who is not a resident of this state or is temporarily residing in this state as a student or as a member of the armed forces of the United States.

[8] *R.I.G.L.§* 31-3-2 Every motor vehicle*** owned by a resident of this state when operated or drawn upon a highway within this state for a period of thirty (30) days shall be subject to the registration provisions of chapters 3 — 9 of this title except: except: (a) Any vehicle operated upon a highway in conformance with the provisions of the chapters relating *** nonresidents;

[9] *R.I.G.L.§ 31-10*-1 License required to drive. — (a) No person, except those expressly exempted in this chapter, shall drive any motor vehicle upon a highway in this state unless that person has a valid license as an operator or chauffeur under the provisions of this chapter ***. Any resident as defined under § 31-1-8 shall be required to obtain a Rhode Island operator's or chauffeur's license within thirty (30) days of establishing residency.

new footnote [ [10] Exh.1 Auto Policy, Page 4, G13007 09 05, *Out of State Coverage*, A.(liability coverage bootstraps uninsured coverage at its highest limit which is stacking.) "***your policy will provide the **higher specified limit.**"

Vermont law. Laplante was a R.I. resident as a matter of law who met his auto insurance duties with a Vermont policy. His policy allowed different places for garaging.[11] As do many modern other mobile citizens, Laplante utilized insurance services in states other than those where he called his home. As R.I. and other states, Vermont requires liability carriers to offer supplemental coverage for accidents caused by uninsured motorists in any state. In effect, both Rhode Island and Vermont bootstrapped mandatory liability coverage to provide a requirement that such insurers provided coverage of accidents caused by hit and run drivers throughout the U.S.

The insurance policy provided by York Insurance Company was a combination[12] of several standardized forms[13], prepared and copyrighted[14] by the Insurance Service Organization, throughout the United States, in a manner similar to uniform forms produced by private organizations to secure debt instruments under the Uniform Commercial Code in each State. The standardized Automobile Insurance Policy, as set forth in *Exhibit 1*, provide automobile insurance benefits to its insured persons in every State of the United States[15] for damages caused by drivers of uninsured[16] and

---

[11] ***Exhibit 1***, See Form G11244 03 02 (G11244-7) , Personal Auto Composite Endorsement-Vermont, at page 1 of six which states the following endorsements contained in your policy booklet are not applicable if your "covered auto" is principally garaged in Vermont. (Note that Any doubt regarding this intent is resolved for the insured under contract of adhesion standards and remedial law interpretation.)

[12] ***Exhibit 1***, Policy Number YM-Z263796F, The Declaration Pages are denominated as form G20802 06 99 and the attachments are noted as follows within the Declaration.

| Form No. | Title |
|---|---|
| G13007 09 95 | Personal Auto Policy and Endorsements |
| G11244 03 02 | Vermont Personal Auto Composite Endorsement |
| G135770101 | Vermont Changes: Property/Casualty-Civil Union |

[13] *Widiss, Alan I; Thomas, Jeffrey*, Uninsured and Underinsured Motorist Coverage, Third Edition, (Copyright-2005, Volume I,§3.4, at page 63. Standardized forms and standardized provisions,). "In practice, most insurance companies have used the standard forms for the uninsured motorist coverage, either in their entirety or with minor variations or deletions."

[14] ***Exhibit* 1**, Page 1 of Declaration pages for Policy Year, 2002-2003, "Includes Copyrighted Material of Insurance Office, Inc with its permission. Copyright, Insurance Services Office, Inc. 1988-2003.

[15] ***Exhibit 1***,Policy Number YM-Z263796F, Form G13007 09 95, page 9 of 18,**Part F, Policy Period and Territory, B 1.**

underinsured motor vehicles. That policy provided coverage for damages, as defined by the laws of each State, which might caused harm to a domiciled person of any State in the United States,[17] or when the tortfeasor is uninsured. Those coverage forms are designed to provide coverage in all fifty states. Those forms distinguish between vehicles principally garaged in Vermont and alternatively garaged in other states [18],[19].

4. **The Defendant's Insurance Contract Was Written to Conform To R.I. Law; R.I. Law and Vermont Law Are Not In Conflict, But If They Are In Conflict R.I. Law Must Prevail.**

The Defendant's auto insurance contract envisioned that Laplante's vehicles would be garaged in another state. The policy has different provisions of coverage for vehicles not principally garaged in Vermont. Otherwise, the insurance policy between the Plaintiff and Defendant, *Exhibit 1,* provides indemnity for bodily injury and property damages caused by uninsured and underinsured drivers in any State of the United States; and the coverage is designed to meet the mandatory standards of any State in which a vehicle of the insured is *principally garaged.* The Laplante's 1978 Ford F378 was principally garaged in North Smithfield, Rhode Island in 2003, where the insured, James Laplante was domiciled, when he had an accident with a hit and run driver in Lincoln, R.I. (See Averments in Undisputed Facts, Affidavits of James and Joseph Laplante and Exhibits)To maintain its promise in its insurance policy to conform to State law in which its insured's truck was principally garaged, York Insurance must provide, as required by

---

[16] **Exhibit 1**, Policy Number YM-Z263796F, Form G13007 09 95, page 5 of 18, **Part C Uninsured Motorists Coverage; See also** G11244 03 02, page 3 of 6, Endorsement 13156 03 03,Part C **Uninsured Coverage** Replacement .
[17] **Exhibit 1**.Personal Auto Policy, **Out of State Coverage**. Form G13007 09 95, page 4 of 18.
[18] **Exhibit 1**,Policy Number YM-Z263796F Form G11244 03 02, page 1 of 6, Vermont Personal Auto Composite Endorsement, see top of page 1, applies to vehicles not garaged in Vermont..
[19] [19] **Exhibit 1**,Policy Number YM-Z263796F Page 15 of 18, PP 031 06 94 Definitions. Exclusion B.Only Vehicles garaged in the United States are eligible for limited coverage in Mexico.



many deletions
This page

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 7 of 30

Rhode Island's statutory supplement, provides indemnity amounts equal to the amounts covered by each of the premiums for uninsured coverage, equal to the premium amounts of the underinsured coverage, and to the minimum amount of property damages required by R.I. law. ] reworked

A resident whose vehicle is principally garaged in Rhode Island must maintain the appropriate insurance. R.I.'s coverage is not conditioned upon vehicles only being registered in R.I. A non registered vehicle is subject to the same requirement of maintaining coverage for liability and uninsured and underinsured accidents in R.I. To achieve that end, Laplante obtained insurance from the Defendant and purchased separate premiums for uninsured and under insured coverages. RI's particular section on stacking of premiums does not require that such insurance policy be issued or delivered in Rhode Island. York voluntarily provided the coverage in R.I. As such, the insurer must provide in R.I. the benefits required in R.I.

5. . **Laplante Conformed to Both RI and Vermont Law.**

Both the States of Rhode Island and Vermont encourage consumers to have sufficient insurance coverage to pay for injuries to themselves caused by other without coverage. When a consumer purchases uninsured and underinsured coverage, he is fulfilling state mandates to purchase insurance coverage for another person, who may not have such coverage and who might do him harm.

Both Vermont, *23 V.S.A.* § 941 (a)-(g), and Rhode Island, *R.I.G.L.*§ 27-7-2.1 (a)-(i) have statutes designed to "for the protection of persons *** who are *legally entitled to* recover damages, from owners or operators of *uninsured*, *underinsured* or *hit-and-run motor vehicles****" According to *R.I.G.L* § 27-7-3, "All policies described in this chapter

emphasis added

-emphasis added

shall be deemed to be made subject to the provisions hereof, and all provisions of policies inconsistent herewith shall be void." The provisions of 23 V.S.A. § 941(a) provide that "No policy insuring against liability *** may be delivered ***in this state with respect to any motor vehicle registered ***in this state unless coverage is provided *** for the protection of persons *** who are *legally entitled* to recover damages, from owners or operators of *uninsured, underinsured* or *hit-and-run motor vehicles****." The provisions of R.I.G.L.§ 27-7-2.1 (a) provide that " No policy *** shall be *** issued for delivery in this state with respect to any motor vehicle *** principally garaged in this state unless coverage is provided, *** for the protection of persons *** entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles ***. Laplante met the Vermont terms since his vehicle was registered in Vermont. Laplante also met the R.I. terms since his vehicles were "principally garaged" in Rhode Island and he had insurance coverage.

same

reworked & moved

The provisions of R.I.G.L.§ 27-7-2.1 (i) further provide that " (i) Whenever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary." The provisions of R.I.G.L.§ 27-7-2.1 (i) is a separate law unto itself, a reflection of the "public policy" of the State, and R.I.G.L.§ 27-7-2.1 (i) contains no limitations on the location of the insured or the location of the insurer or the number of persons insured. R.I.G.L.§ 27-7-2.1 (g) provides that ***"uninsured motorist" shall include an underinsured motorist. Thus, to the extent that Laplante purchased premiums for

uninsured coverage, he was purchasing premiums for underinsured coverages. Since his damages for uninsured coverage has been exhausted, he is entitled to the excess coverage provided by his underinsurance provisions.

The provisions of *R.I.G.L.* §27-7-2.1 **(i)** do not require that the insured policies providing stacking benefits to be issued and delivered in Rhode Island, as its does with with the minimum liability coverage mandates under the provisions of *R.I.G.L.*§ 27-7-2.1 (a), which related to a domicile of Rhode Island having a motor vehicle "principally garaged" in Rhode Island; Laplante however obtained a Vermont Policy from an insurer, which voluntarily submitted to all such mandates for coverages for its insured.

Vermont law itself like Rhode Island, requires, under the provisions of 23 V.S.A. § 941 (b), that auto insurance coverage be provided thorough the United States; and that, under 23 V.S.A. § 941(c), coverage for liability be in the same amount as uninsured coverage ,and, that, under 23 V.S.A. § 941 (a), such policy also include underinsured coverage.

moved around

The Plaintiff, James Laplante, the Insured, a domiciliary of Rhode Island, at the time of the accident, contends that, under the public policy and law of this state, *R.I.G.L.*§27-7-2.1 (i)[20],[21].[22],. the limits of liability provisions, as contained in the ISO form based contract, *Exhibit 1,* initially issued by the Defendant, York Insurance Company of Maine, were intended to conform to the law of Rhode Island; and, to the extent that those

---

[20] *R.I.G.L.§ 27-7-2.1 (i)* Whenever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary.

[21] *Allstate Insurance Co. v. Fusco,* 101 R.I. 350, 356, 223 A.2d 447,450 (1966)"It is well settled that where the lawmaking power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is what the [legislature] enacts.***Thus contracts of insurance carriers must conform to constitutionally valid conditions imposed by the legislature."

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 10 of 30

provisions do not comply with R.I. law, they are void. The sum of coverages accruing to the injured automobile consumer as a consequence of the payments of separate premiums for uninsured and under insured coverages are similar mandates in form to the liability amounts for liability insurance required to be purchased by the consumer to meet claims for bodily injury and property damages of third parties.

**6. Both Contract and Statute Includes Underinsured Coverage.**

Both Rhode Island and Vermont statutes require *underinsured* coverage. The Declaration Sheets indicate that underinsured coverage is included with uninsured coverage. A tortfeasor, the hit and run driver, is an underinsured only if the limits of the tortfeasor's liability coverage, uninsured coverage, are less than the injured insured's own damages *Bernard v. Rhode Island Insurer's Insolvency Fund*, 651 A.2d 1232 (R.I. 1994). Uninsured motorist coverage is defacto liability coverage which a motorist has purchased for another motorist who lacks liability coverage when that another motorist is a hit and run driver. Under *R.I.G.L.*§27-7-2.1 (g), underinsured coverage then becomes the excess coverage for the uninsured driver who has been covered by the financially responsible driver's purchases of those two coverages; to wit, the uninsured coverage as defacto liability coverage for the hit and run driver, and underinsured coverage as defacto excess coverage for the hit and run driver.

language also deleted

Underinsured coverage by definition must be an additional coverage otherwise it is an illusory benefit. Laplante, who was severely injured in the accident with a hit and run driver, is not seeking a double recovery; he is only seeking to be made whole. The limits of liability within the contract can not limit the amount of damages to the amount paid for liability coverage, or to the amount to be paid for uninsured coverage, or, for

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 11 of 30

underinsured coverage. To do so would be to provide no payment for a statutorily mandated insurance benefit under both Rhode Island and Vermont law. Underinsurance coverage is "excess" coverage, up to the limits of three hundred thousand dollars; for each premium paid; and thus the Defendant owes Laplante an additional $900,000 for underinsured coverage for the three premiums paid for underinsured coverages. In both R.I. and Vermont[23], limits of liability provisions may not eliminate mandated underinsured coverage when the uninsured coverage is less than amount of the damages. Note that subsection (g) of section (R.I.G.L.§27-7-2.1)is phrased in the disjunctive.[24] The underinsured motorist's liability coverage need only be less than either the insured's limits or the damages in order that he is entitled to recover. *Archambault v. Federal Ins. Co.*, 690 A.2d 1348 (R.I. 1997).

Language deleted

7. **The Automobile Insurance Contract is A Compilation of National Forms and Endorsements Designed To Conform in All States.**

There are several indicia that the Master Driver Automobile Policy was designed to insure risks throughout the United States. Every page of the policy declaration, Exhibit 1, has a the logo inscribed "*OneBeacon Insurance.*" One Beacon Insurance Group is a

footnote removed

[23] *Feeley v. Allstate Insurance Company*, 2005 VT 87 178 Vt. 642, 644, 645 882 A.2d 1230 (2005 Vt ) Citations Deleted The coverage is intended to provide "the prudent motorist with maximum insurance coverage," *Monteith v. Jefferson Ins. Co*,159 Vt. 378, 386, 618 A. 2d 488, 492 (1992), when involved in an accident with a marginally insured (or uninsured) motorist. *Colwell v. Allstate Ins. Co.*, 2003 Vt 5, 10, 175 Vt. 61, 819 A.2d 727.,Section 941 defines when a driver is "underinsured" by comparing the tortfeasor's liability limits with the limits of the insured's UIM coverage. 23 V.S.A. § 941(f). **If the insured purchased UIM coverage greater than the limits of liability in the tortfeasor's policy, the tortfeasor is "underinsured" within the meaning of § 941. *Id.*;** *Colwell*, 2003 Vt 5, 8. This type of "gap coverage" "place[s] the insured in the same position as if, at the time of the accident, the tortfeasor had liability coverage equal to the insured's UIM coverage." *Colwell*, 2003 Vt 5, 14; see *Webb v. U.S. Fid. & Guar. Co.*, 158 Vt. 137, 141, 605 A.2d 1344, 1347 (1992) (describing Vermont's UIM statute as filling the gap between the tortfeasor's liability coverage and the insured's UIM coverage).*** A policy clause limiting UIM coverage in a manner inconsistent with § 941's central purpose is unenforceable.

[24] *R.I.G.I.*§ 27-7-2.1 Uninsured motorist coverage. —(g) For the purposes of this section "uninsured motorist" shall include an underinsured motorist. An underinsured motorist is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the limits **or damages that persons insured pursuant to this section are legally entitled to recover because of bodily injury,** sickness, or disease, including death, resulting therefrom.

group of related insurance companies which issues automobile insurance policy in each State of the United States.(See Dennis Smith Depo Reference in Undisputed Facts) The policy has a notice on the declaration pages states that it is "*Copyrighted Material of the Insurance Services Office, Inc. 1988-2003*".Every page has a reference number to standardized forms and endorsements. The Declaration Pages reference form number G208020699. The Personal Auto policy references form number G133007 09 95, Exhibit 1, and is denominated Personal Auto Policy (PP 00 01 06 94). The *Out of State Coverage* provision, at page 4, of 18 pages in form number G133007 09 95 promises to comply with the financial responsibility and compulsory insurance law of every state. *The Policy Period and Territory* Provision, at page 9 of 18, *Exhibit 1*,names the United States of America as part of the policy territory.

**8. The Garaging Provisions Imply that R.I. Law Is To Be Followed.**

Language deleted

The contract, *Exhibit 1*, contains several references to "covered autos" either principally garaged in Vermont or those not principally garaged in Vermont, or those at alternative locations. For example, travel expenses are paid when a loss occurs more than 100 miles from the place of alternative garaging.[25]. Changes in premiums[26] can be made if the principal place of garaging for covered vehicles are changed.[27] The Master Driver

---

[25] Exhibit 1**Part F-General Provisions. 6. Travel Expense Coverage.** ***This coverage applies only if the loss occurs more than 100 miles from your address shown on the declarations page **or your place of alternative garaging**.(Page 18, Policy Number YMZ263796F, Form Number G13007 09 95, Process Date 7-09-2002).

[26] Exhibit 1, **Part F-General Provisions**-Changes-B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease, include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles;
4. Coverage, deductible or limits.

[27] *Exhibit 1* **Part F-General Provisions**

**Changes**

***

**B.*****Changes during the policy term that may result in a premium increase or decrease include *** **The place of principal garaging of insured vehicles**

Automobile Declaration, effective December 20, 2002, notes a change endorsement was made effective on December 20, 2002 by adding coverage of a 1978 Ford 378, File 18, for no additional premium, based on "information/coverage change-garage territory."[28] The Master Policy Declaration, under its Covered Auto Section, has a heading entitled "Alternative Garage Location" for different vehicles.Coverage is provided for persons involved in accidents in all fifty states[29]. Coverage is designed to conform to mandatory insurance[30] coverage in all fifty states. However, some contract provisions are not applicable to vehicles garaged in Vermont.[31]

Language deleted

**9. OneBeacon Insurance Company, As A Foreign Insurer, Licensed In R.I., And, As The Ceded Insurance Company Of The Defendant, Stands in the Shoes of the Defendant With The Duty To Pay The Claim Is Subject To Rhode Island Law.**

---

[28] Exhibit 1. **Master Driver Automobile Policy Declarations**
***** Change Endorsement**
Policy has been amended as follows:
Premium Adjustments: Additional Premiums None
**Information/Coverage Change –Garage Territory**
Substitution of Vehicle 18 for 16.
(Page 1, Master Driver Automobile Policy Declarations Number YMZ263796F, Process Date 01-02-2003)

[29] Exhibit 1-Contract, **Part F-General Provisions**
**Policy Period and Territory**
***B. The Policy territory is: 1. The United States of America, its territories ***.
[30] *Exhibit 1*-Personal Auto Policy and Endorsements, Form G130070995 at page 4 of 18 pages
Part A –Liability Coverage provides -
***
**Out of State Coverage**
If an **auto accident** to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:
A, If the state or province has:
1. A financial responsibility or similar law specifying limits of liability for :bodily injury " or "property damage" higher than the limit in the Declarations, your policy will provide the higher specified limit.
[31] Exhibit 1, Contract, Personal Auto Composite Endorsement- Vermont
(GI1244 03 02 (GI1244-77)
*** The following endorsements contained in your policy booklet are not applicable if your "covered auto" is principally garaged in Vermont.
PP 03 11 06 94 Underinsured Motorists Coverage
PP 04 01 04 86 Split Uninsured Motorist Coverage
PP 04-02 04 86 Split Underinsured Motorists Limits

Language deleted

The Defendant, York Insurance Company of Maine, ceded its policy, premiums, payment responsibilities, and adjustment duties prior to the accident, to a licensed foreign insurance company in the State of Rhode Island, which was subject to the insurance laws of Rhode Island, One Beacon Insurance Company. (See *Statement of Undisputed Facts*) The Defendant, York Insurance Company of Maine "reinsures 100 percent of its business with OneBeacon Insurance Company" according to the deposition of Dennis Smith, Secretary of York, page 17 lines 18-19, February 21, 2006, C.A. 05-496ML. *See Statement of Undisputed Facts.*

¶ changed

According to the Secretary of York Insurance, Dennis Smith, "It's 100 percent reinsurance agreement by which York Insurance Company of Maine cedes 100 percent of its insurance business to OneBeacon Insurance Company, which in turns assumes all of that business in exchange for receipt of premiums and its handles the claims on policies written by York Insurance Company of Maine." (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006, C.A. 05-496ML). "Cede is when an insurance company transfers some amount of some portion of its business to another, to a reinsuring company, which assumes that particular amount of the business." (Deposition of Dennis Smith, page 33, lines 11-14, February 21, 2006, C.A. 05-496ML). OneBeacon Insurance Company, a Pennsylvania Corporation, which is a wholly owned subsidiary of OneBeacon Insurance Group, LLC, collected the premiums and handled the adjustment of claims for York Insurance Company of Maine under a ceding agreement of premiums and claims with York Insurance of Maine .(Answer of York Insurance Company of Maine to paragraph 9 of Plaintiff's Complaint, Paragraph 6, February 14, 2007), (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006, C.A. 05-

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 15 of 30

496ML).Under the ceding agreement, except for the issuance of contract, OneBeacon Insurance Company, a foreign corporation subject to the insurance laws of Rhode Island stood in the shoes of the Defendant, York Insurance Company of Maine. By ceding its contract with a R.I. domiciliary to an insurer subject to R.I. insurance law, York Insurance Company of Maine chose to be subject to R.I. insurance laws[32] which mandates stacking.[33] *R.I.G.L.*§27-7-2.1(i). Thus, by its ceding agreement the insured in effect agreed to accept the stacking law of Rhode Island.

Language deleted

10. **The Insurer Had Indicated that It Has Following R.I. Law.**

On June 15, 2004, Kathleen Ahearn, on letterhead of OneBeacon Insurance, wrote a letter to James Laplante, Exhibit 2, with an enclosed payment of $5000 for medical payments under claim number OB600908Z-02-05, for a date of loss of February 23,2003 on Policy Number, YMZ263796 which indicated that notice of such payment was done pursuant to Rhode Island law. Kathleen Ahearn of OneBeacon Insurance wrote as follows: "Rhode Island general law section 27, chapter 3, subsection 5.1 requires that we inform you that a check has been issued for the limits of your medical payments coverage of $5000.00 in this matter." See *Exhibits 33 and 38.*

11. **A Comparison of Vermont and Rhode Island Statutes Indicate No Repugnant Statutes.**

The compulsory statutory overrides of automobile insurance policies in Rhode Island and Vermont are very much similar.See *R.I.G.L.31-47-8; R.I.G.L.§* 27-7-2.1;

Language deleted

[32] *R.I.G.L.*§ 27-2-2 Applicability. The general provisions of law *** which appertain to insurance companies not incorporated under the authority of this state, and defining the powers and duties of the insurance commissioner in reference to those companies, shall be and are applicable to all corporations, *** doing, *** in this state, any insurance business of any name, kind, or description.

[33] See *Rupert v. Liberty Mut. Ins. Co.*, 291 F.3d 243, 246 (3rd Cir. 2002.)

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 16 of 30

*R.I.G.L.27-7-2.2 R.I.G.L.27-7-2.5,23 V.S.A. § 941; 23V.S.A. §942; 23 V.S.A.§800;* 23 V.S.A. § 802., 23 V.S.A. § 803.8, V.S.A. § 4203.

Both States provide civil penalties for violations of mandatory liability insurance laws by motorists, and both are party to an interstate compact requiring mutual recognition of the other State's sovereignty *23 V.S.A. § 3552* [34]; *23 V.S.A. § 3553;* 23 V.S.A. § 3561. [35] Both Rhode Island [36], [37], [38] and Vermont[39] require motorists to have automobile insurance liability coverage.

---

[34] ***23 V.S.A. § 3552*** *****

(b) The purpose of this compact is to:

(1) Provide a means through which the party jurisdictions may participate in a reciprocal program to effectuate the policies enumerated in paragraph (a) above in a uniform and orderly manner.

(2) Provide for the fair and impartial treatment of traffic violators operating within party jurisdictions in recognition of the motorist's right of due process and the sovereign status of a party jurisdiction.

[35] ***23 V.S.A. § 3902***. Findings and declaration of policy — Article I

(a) The party states find ***.

(b) It is the policy of each of the party states to:

(2) make the reciprocal recognition of licenses to drive and eligibility for licensure more just and equitable by considering the overall compliance with motor vehicle laws, ordinances, and administrative rules as a condition precedent to the continuance or issuance of any license by reason of which the licensee is authorized or permitted to operate a motor vehicle in any of the party states.

[36] *R.I.G.L.§ 31-47-2 Definitions.* **(Motor Vehicle Reparations Act)—**

(13) "Owner's policy of liability insurance" means a policy:

(A) *** Nothing *** shall prohibit any insurer from affording coverage under an owner's policy of liability insurance more liberal than that required by the minimum provisions. Every owner's policy of liability insurance shall provide insurance***against loss from the liability*** for damages within the state of Rhode Island or elsewhere in the United States in North America or the Dominion of Canada, subject to a limit, exclusive of interest and costs, with respect to each motor vehicle of twenty-five thousand dollars **($25,000)** because of bodily injury to or death of one person in any one accident, and subject to the limit for one person, ***, and a limit of twenty-five thousand dollars **($25,000)** because of *** destruction of property of others in any one accident, or seventy-five thousand dollars ($75,000) combined single limit.

(B) ***

(C) In the case of a vehicle registered in another state in the name of a nonresident, either a policy issued by an authorized insurer, or a policy issued by an unauthorized insurer authorized to transact business in the state of the nonresident's residence ***if the unauthorized insurer files with the commissioner in a form to be approved by him or her statement r.

[37] *R.I.G.L.§ 31-47-8* Revocation of registrations — Drivers' licenses and nonresident privileges. —

(e) (3) This subsection shall not apply to any person who at the time of operation of the motor vehicle had in effect an operator's policy of liability insurance with respect to his or her operation of the motor vehicle.

[38] R.I.G.L.§ 31-47-8 Revocation of registrations — Drivers' licenses and nonresident privileges. —

(h) *** With respect to a nonresident the policy may also be issued by a non-admitted insurance carrier provided the requirements of this chapter, with respect to issuance of an owner's policy of liability insurance by the carrier, have been met.

[39] *23 V.S.A. § 800*. Maintenance of financial responsibility

(a) No owner or operator of a motor vehicle required to be licensed shall operate or permit the operation of the vehicle upon the highways of the state **without having in effect an automobile liability policy** or bond in the

Both Rhode Island at R.I.G.L. §27-7-2.1 (a)-(i)[40] and Vermont at 23 V.S.A.§941 require that insurance contracts of coverage of liability for motor vehicles accidents also provide uninsured motorist coverage, which includes coverage of damages caused by motorists who leave the scene of the accident.

Both Rhode Island and Vermont [41], provide that their statutory mandates override and otherwise supplement any contrary provisions in an automobile insurance contracts for motor vehicles accidents and that statutory provisions must be considered as part of the automobile insurance contract. Both Rhode Island[42],[43] and Vermont require that coverage for uninsured motorists who suffer damages from phantom vehicles cover at the least the same amount of damages as is covered by liability coverage of the insured motorists who suffered the damages. According to its declaration sheet, York's coverage

---

amounts of at least $25,000.00 for one person and $50,000.00 for two or more persons killed or injured and $10,000.00 for damages to property in any one accident. ***

[40] **R.I.G.L.§ 27-7-2.1** (a) **No policy insuring against loss** resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this **state unless coverage is provided therein** or supplemental thereto, **for bodily injury** or death in limits set forth in each policy, but in no instance less than the limits set forth in §31-31-7 or §31-32-24 under provisions approved by the insurance commissioner, **for the protection of persons insured thereunder who are legally entitled to recover damages from** owners or operators of uninsured motor vehicles and **hit-and-run motor vehicles** because of property damage, bodily injury, sickness, or disease, including death, resulting therefrom. **The insurer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits.***** However, the named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31-31-7 or § 31-32-24, unless the named insured is purchasing only the minimum coverage required by compulsory insurance provisions of the general laws, in which case the limit can be reduced to zero, but only after signing an advisory notice approved by the director of business regulation concerning the hazard of **uninsured and underinsured motorists**. ***(Emphasis Added)

[41] **23 V.S.A. § 943.** Provisions in insurance policies.***

[42] R.I.G.L.§ 27-7-2.1 (a)***The insurer shall provide uninsured motorist coverage in **an amount equal to the insured's bodily injury liability limits**.***

[43] *Cardoso v. Nationwide Mut. Ins. Co.*, 659 A.2d 1097 (R.I. 1995). The statute at issue is now found at G.L. 1956 (1994 Reenactment) § 27-7-2.1(i).*** The redesignation of subsection (c) as subsection (i) in the 1994 Reenactment does not change the statutory language.*** This amendment was added in 1987 after this court ruled in *Constant v. Amica Mutual Insurance Co.*, 497 A.2d.343 (R.I. 1985), that the insureds were not entitled to stack the uninsured-motorist benefits of their two separate policies when the policies had specific language prohibiting stacking. Despite the fact that the insureds in *Constant* had paid two separate premiums, this court ruled that the policy's unambiguous limit-of-liability clause "conveys most clearly * * * the maximum limit [that the insurer will pay] regardless of the number of * * * vehicles or premiums shown'" on the declarations page. *Id.* at 345.

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 18 of 30

for damages caused by uninsured drivers is the sum of Three Hundred thousand dollars. ($300,000).

12. **A Comparison of Vermont and Rhode Island Court Decisions Indicate No Actual Conflict.**

Both the Courts of Rhode Island and Vermont require that insurers allow its insured motorists to stack coverage provided in separate policies of automobile insurance, i.e. interpolicy stacking. *Monteith v. Jefferson Ins. Co. of New York*, 159 Vt. 378, 618 A.2d 488 (Vt. Oct 23, 1992) (NO. 91-244)allowed *inter policy stacking*; and criticized earlier holding permitting contract limitations on intra policy stacking in *Sanders v. St. Paul Mercury Ins. Co.*148 Vt. 496, 536 A.2d 914 (Vt.,1987). Rhode Island's use of the interest weighing approach is reflected in *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917 (1968); ,*Mendez v. Brites*, *849 A.2d 329, 337* (R.I. 2004) and *Amick v. Liberty Mutual Insurance Co.*,455 A.2d 793,(R.I. 1983); and its choice of law is made by statute in R.I.G.L.§27-7-2.1(i).

Although the Vermont Supreme Court in *Sanders v. St. Paul Mercury Ins. Co.*148 Vt. 496, 536 A.2d 914 (Vt.,1987) upheld a contract provision prohibiting intra policy stacking claims for a Vermont resident with a vehicle principally garaged in Vermont, it is not apposite to the Laplante matter; and would be otherwise overridden by analysis suggested in the various Vermont cases since then rooted in the *Restatement*.[44]

The Vermont Court in the matter of *Monteith v. Jefferson Ins. Co. of New York*, 159 Vt. 378, 618 A.2d 488 (Vt. Oct 23, 1992) (NO. 91-244), did allowed *inter policy stacking*. The Vermont Court said that the insured could stack the underinsured motorist (UIM) coverages of his motorcycle and automobile policies, even though the UIM limits

[44];*Amiot v. Ames*, 166 Vt. 288,292,293 (1997); *Miller* v. *White*, 702 A.2d 392 167 Vt. 45 (1997).

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 19 of 30

of the motorcycle policy equaled the liability limits. 23 V.S.A. 941(f).*** "In *Sanders* we held that the insurer could write and enforce an *intra*policy stacking provision, but we did not extend our rationale to *inter*policy stacking provisions. 148 Vt.at 503, 536 A.2d at 918.id. 618 A.2d 491." "Although **we implied some disapproval of interpolicy anti-stacking provisions** in *Sanders*, 148 Vt at 503, 536 A.2d at 918, we now explicitly hold that interpolicy, anti-stacking provisions violate the terms of §941 and will not be enforced." (*Emphasis Added*)

emphasis's added

It is clear that the same Vermont Court, today, using its own conflict of laws analysis, *Amiot v. Ames*, supra, would allow the intra policy stacking disallowed in *Sanders*, id. on the grounds that Rhode Island has the most important interests to be weighted and has the most significant relationship. Both the Vermont and RI hit and run protections are designed to insure indemnity of damages to which the insured driver is entitled when hit by an uninsured driver.

The cases cited by Defendant in its communications with the Plaintiff and his father and counsel in 2003, 2004, and 2005, *Exhibits 32- 39*, are cases which are not apposite to facts presented here. In *Mancini v. Utica Mut. Ins. Co.*, 653 A.2d 727 (R.I. 1995), a driver under a policy purchased by fleet owner was not allowed to stack because he had not purchased the coverage, but in *Colwell v. Allstate Ins. Co.* 175 Vt. 61, 819 A.2d 727, (Vt.-2003), a driver was allowed to recover under both the company's statutorily mandated underinsured coverage as well as through worker's compensation on the basis that separate insurance policies were being provided under separate statutory obligations. Neither case addressed the contract the prohibition condition of dual recovery without set off sets. Laplante only seeks to be made whole once.

Language deleted

13. **The Choice Of Law Is Rhode Island, Whether Or Not There is a Conflict.**

This is a diversity case where the choice of law-frame work of the forum state, Rhode Island, must be followed. *Crellin Technologies* v. *Equipmentlease Corp.*,18 F.3d 1,5 (1st Cir. 1994[45]),*Toledo v. Van Waters & Rogers, Inc.*, 92 F. Supp.2d 44 (D.R.I. 2000); *URI Cogeneration v. Bd. Of Governors*, 915 F. Supp. 1267, 1279, (R.I. 1996); *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997). *Amick v. Liberty Mutual Insurance Co.*,455 A.2d 793,(R.I. 1983). To be a choice of law question, there has to be a conflict of laws between two states. Compare *Levin v Dalva Brothers, Inc.*, 459 F.3d 68,73 (1st Cir. 2006). An initial task of a choice-of-law analysis is to determine whether there is an actual conflict between the substantive law of the interested jurisdictions[46]. *See Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29 (1st Cir. 1997). If there is a conflict of the application of law in the forum state of Rhode Island applies.[47]

Language deleted

R.I.statute is clear. Subsection (i) of Chapter 7 of Title 27 covers Rhode Island domiciliary, and Laplante was a domiciliary and entitled to the coverage once he bought an appropriate policy. He was required only to have coverage, not necessarily coverage from a Rhode Island insurer.. The purpose of that uninsurance coverage is to protect persons entitled to coverage from harm caused by uninsured and underinsured tortfeasors. The benefit is not limited to the state of registration of the damaged vehicle. Subsection (i) is not modified or limited by any other provisions of R.I. law. It makes no exception in

[45] *Crellin Technologies v. Equipmentlease Corp.*, 18 F.3d 1, 5 (1st Cir. 1994). *** **A. Choice of Law.** It is, of course, **a black-letter rule that state substantive law** must be applied by a federal court sitting in diversity jurisdiction. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In determining what state law pertains, the court must employ the choice-of-law framework of the forum state, **here, Rhode Island**. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Putnam Resources v. Pateman*, 958 F.2d 448,464 (1st Cir. 1992). ***.

[46] *Goodrich v. Lumbermens Mut. Cas. Co.*, 423 F. Supp. 838,841, *(D. Vt. 1976*

[47] *Freeman v.Package Machinery Co.*,865 F.2d 1331 at 1349 (1st Cir. 1988) "A defendant who chooses to remove a case from a state forum to a federal one is hard put to complain if the federal court follows state practice in regard to state-law claims contained in the complaint

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 21 of 30

its mandate for coverage of former Vermont residents who have moved to Rhode Island. (Undisputed Facts, Par.) (Laplante Affidavit, ). It is a R.I. regulatory legislative benefit, provided to any Rhode Islander who has chosen to pay additional premiums for uninsured and underinsured indemnity coverage in any automobile policy, which is protected by Due Process[48] and Reciprocity considerations under the Constitutions of the United States and Rhode Island. Article 4,§1, of the United States Constitution mandates that Full Faith and Credit be "given in each state to the public acts, records, and judicial proceedings of every other state". Having sold its policy to a person who happened to live in Rhode Island in December 2002, York must provide the coverage required by state law.

Laplante, like *Amick*, in the matter of *Amick v. Liberty Mutual Insurance Co.*,455 A.2d 793,(R.I. 1983) [49] chose to have extra territorial coverage in R.I., had a Rhode Island accident, and, thus using *interest weighing* analysis, *Restatement* (Second) *on Conflict of Laws*.§6, §145, § 171, is entitled to *intra-policy* stacking. Stacking is a measure of damages in Rhode Island, and, clearly statutorily directed. Vermont must recognizes that the public policy of the State of Rhode Island, as reflected in the

[48] *Mitchell v. State Farm Ins. Co.*, 315 Mont. 281, 68 P.3d 703 (2003) 102, 2003 MT); U.S.C.A. Const Amend XIV. Anti-stacking provision in automobile insurance policies violated substantive due process, where provision permitted insurer to charge premiums for five separate uninsured motorist (UM) coverages, in spite of fact that the anti-stacking provision only permitted insured to recover for one coverage.

[49] Comparing *Amick v. Liberty Mutual Insurance Co.*,455 A.2d 793, 794(R.I. 1983) and *Mendez v. Brites, 849 A.2d 329, 337* (R.I. 2004) ***. This Court applied Rhode Island law to that policy's coverage and reformed the minimum coverage limits to conform to applicable Rhode Island law. Id. at 796. In doing so, the Court reasoned that raising the limit on the policy to meet Rhode Island's minimum coverage requirement implemented the state's public policy that those who undertake to insure a vehicle against accidents occurring in this state must do so for at least the statutory minimum amount of coverage. See id. And the Court also ruled that such a reformation of the contract was consistent with the parties' intent when they entered into the contract. See id. Because the **insured had selected this optional out-of-state coverage, Rhode Island law would have to deem him an underinsured motorist** — unless the Court reformed the policy to raise the limit on the policy's coverage to conform to Rhode Island laws. Id. at 795.In these circumstances, the Court said, "[w]e do not believe that the insured bargained for the status of an uninsured motorist when he purchased the optional coverage from Liberty Mutual." Id. at 796. Thus, the Court reformed the policy and raised the policy limit from the Massachusetts minimum to the minimum that Rhode Island law required. Id.

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 22 of 30

provisions of *R.I.G.L.*§27-7-2.1(i), mandates that an insured is entitled to receive the sum of the coverage provided by the separate premiums paid within a single policy.

14. **Restatement 2d Conflicts on Law Rules Predominates Defendant's Old Citaations.**

The Defendant, in his post accident communications, (See Exhibits 32 through-40) relied on old law on the location of the Contract, which has been replaced by the multiple factors cited in the *Restatement* (Second) on Conflict of Laws. Single variable analysis based on location of the tort and of the contract is no longer utilized.

Automobile insurance policies intertwine principles of contract law and tort law. Rhode Island's "interest weighing" model for choices of law intertwines factors relating to both traditional tort law and traditional contract law. Vermont and Rhode Island have joined twenty nine other States in utilizing the *interest balancing approaches* contained in the Restatement (Second)of Conflict of Laws (1971). In torts Rhode Island clearly follows the Restatement (Second) on Conflicts of Law,*Woodward v. Stewart,* 104 R.I. 290, 243 A.2d 917,301(1968). In contracts, Rhode Island has been slow in moving to the Second Restatement's positions. *Gordon v. Clifford Metal*, 602 A.2d 535, 539, 557(R.I. 1992). Circuit Justice Bruce Selya discussing in 1992 *Gordon v. Clifford*, supra, noted that the R.I. Supreme Court. has "indicated a preference for an interest-weighing analysis in contract related matters. *Crellin Technologies v. Equipmentlease Corp*., 18 F.3d 1, 5 (1st Cir. 1994

In torts and contracts, Vermont utilizes a significant relationship formula under the *Restatement Second. Pioneer Credit Corp. v. Carden,* 127 Vt. 229, 233,245 A.2d 891, 894 (1968);*Amiot v. Ames*, 166 Vt. 288,292,293 (1997); *Miller* v. *White*, 702 A.2d 392

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 23 of 30

167 Vt. 45 (1997).Maine has a adopt the most significant contacts test[50].[51],. Massachusetts applies a "functional approach".[52] .

**15. There Is Little Difference Between Choice Of Law Formats In R.I And Vermont.**

There appears to be little significant difference between the interest weighing approaches of Vermont, *Amiot v. Ames*, 166 Vt. 288, 693 A.2d 675, 1997*); Miller* v. *White*, 167 Vt. 45, 702 A.2d 392 ((1997) and of those of Rhode Island,[53] *Najarian v. Nat'l Amusements Inc.*, 768 A.2d 1253, 1255 (R.I. 2001); *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997);*Blais v. Aetna Casualty*, 526 A.2d 854 (R.I. 1987.)

16. **R.I. As The Forum State Chooses The Substantive Law.**

The forum state not only chooses the method of selection of the law to be chosen for the choice of law; it also selects the characterization of the law to be chosen if there is a conflict. [54] The measure of damages in an automobile accident involving a Rhode Islander is to be characterized by R.I. law.[55] Stacking is a measure of damages. The choice of law frame-work followed by both Rhode Island[56],[57] and Vermont[58] looks to factors which bear the "most significant relationship" to the event and to the parties.

---

[50] *Harlow v. Children's Hosp.*, 432 F.3d 50,67 (1st Cir. 2005). (Maine has adopted the "most significant contacts and relationships" test for choice of law ***

[51] *Uncle Henry's Inc. v. Plaut* ***Consulting*** **Co**, 399 F.3d 33 (1st Cir. 2005). ***Maine looks to the Restatement(Second)of Conflict of Laws, and that conclusion is consistent with our precedent. *See Ricci v.Alternative Energy, Inc.*, 211 F.3rd 157,165 (1st Cir. 2000).

[52] *Levin v. Dalva Brothers*, Inc., 459 F.3d 68 (1st Cir. 2006). Massachusetts applies a "functional approach to choice of law."***).

[53] *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,293 (1968) ***

[54] *Gordon v. Clifford Metal*, 602 A.2d 535,557(R.I. 1992). ***The forum state is also free to characterize the nature of the dispute. See Restatement (Second) Conflict of Laws § 124, comment at 354 (1971).

[55] *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,301(1968). Accordingly the defendants' alleged wrongful conduct is to be judged by the law of Massachusetts, but the host's duty of care to his passengers and **the measure of damages to be applied are to be governed by the law of Rhode Island**

[56] *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997). We follow instead the **interest-weighing** approach. In so doing, we look at the particular case facts and determine therefrom the rights and liabilities of the parties "in accordance **with the law of the state** that bears the **most significant relationship** to the event and the parties." Pardey v. Boulevard Billiard Club, 518 A.2d 1349, 1351 (R.I. 1986), see also *Putnam Resources* v.*Pateman*, 958 F.2d 448, 464 (1st Cir. 1992); *Blais v. Aetna Casualty & Surety Co.*, 526 A.2d 854, 856-57 (R.I. 1987); *Brown v.*

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 24 of 30

Moreover, when the public policy of the forum state conflicts with a non forum state, the forum state does not have to follow the dictates of non forum state. In the matter of *Allstate Ins. Co. v. Sullam, 76 Misc.2d 87, 349 N.Y.S.2d 550,* (1973), it was held that when a Massachusetts automobile-insurance law conflicts with the public policy of a state in which an accident has occurred, the Court of the forum state need not follow Massachusetts law.

**17. Applying The *Pardey-Cribb's Interest Weighing Approach*, As Set Forth In Restatement (Second)Of Conflict Of Laws (1971, *Ch.1, § 6*[59], On Choice Of Law Principles, To The Facts Of This Case, Rhode Island Law Would Prevail.**

Pursuant to the Restatement (2d),§6 (1)on Choice of Law, Rhode Island as the forum state , is directed **"to follow"** the provisions of its State Constitution, Article I §2 on due process and equal protection, Article I §5 on remedies, and, pursuant to Article VI§2, and to implement the **"statutory directives"** contained in provisions of (i) *R.I.G.L.*§27-7-

---

*Church of the Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176 (1969). That approach has sometimes been referred to as a rule of "**choice-influencing considerations**." See *Robert A. Leflar*, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U. L. Rev. 267, 282 (1966).

[57] *Najarian v. Nat'l Amusements Inc.*, 768 A.2d 1253, 1255(R.I. 2001).

58 *Matson v. Anctil*, 979 F. Supp. 1031, 1034,1035 (Vt. 1997). A. Choice of law. In diversity cases, a federal court must follow the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994). Recently the Vermont Supreme Court adopted the "significant contacts" approach of the Restatement (Second) for choice of law decisions in tort cases, in *Amiot v. Ames*, 693 A.2d 675 (Vt. 1997). See also *Miller v.White*, ___ Vt. ___, 702 A.2d 392 (1997).*** The Defendants argue that, under ***Amiot***, this Court should apply **Rhode Island law** to the issues of whether the Defendants may sue Emily's parents for contribution, and whether the Defendants' liability, if any, may be weighed against the parents' liability, if any. The Plaintiff asserts that Vermont law should apply. According to the Restatement's section 145(1), "[t]he rights and liabilities of the parties with respect to an issue in tort will be determined by the local law of the state which, with respect to that issue, **has the most significant relationship** to the occurrence and the parties under the principles stated in § 6." *Restatement (Second) of Conflict of Laws* § 145(1) (1971). In a personal injury action, the state or country with the **most significant relationship** will usually be that where the injury occurred. *Amiot*, 693 A.2d at 678.

[59] *Restatement (Second) Conflict of Laws (1971) Choice of Law Principles.* (1) A court, subject to constitutional restrictions, will follow **a statutory directive** of its own state on choice of law. (2)When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of interstate and international systems, (b) the relevant policies of the forum, (c)the relevant polices of other interested states and the relative interest of those states in the determination of the particular issue,(d) the protection expectations, (e)the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application to be applied.

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 25 of 30

2.1(i) and of *R.I.G.L*§27-7-2.1(g). Those directives require insurers of R.I. residents to provide economic protection from bodily injury from uninsured and underinsured drivers in an amount equal to the sum of the separate premiums sold to Rhode Islanders regardless of a single limit of liability provision, and to (ii) to follow the provisions of *R.I.G.L.*§27-7-2.1(a), *R.I.G.L.*§31-31-7, *R.I.G.L.*§31-32-24, and *R.I.G.L.§31-47-2 (13) (A)* and (B), and *R.I.G.L.*§31-47-8 (h), to provide economic protection from property damage up to the sum of Twenty Five thousand dollars ($25,000) dollars. York voluntarily decided to cover accidents in Rhode Island of its insureds and to cover vehicles insured which were garaged in Rhode Island, and to comply with R.I. law.

If no choice of law directive is assumed, and if here is a question of conflict,[60] between R.I. statute and a Vermont case, the relevant factors of the Restatement (2d),§6 still point to Rhode Island under the guidelines suggested in *Pardey* v. *Boulevard Billiard Club*, 518 A.2d 1349, 1351 (R.I. 1986), *Cribb* v. *Augustyn*, 696 A.2d 285,288 (R.I. 1997. and *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,293 (1968), and *La Plante* v. *American Honda Motor Co., Inc.*, 27 F.3d 731,743 (1st Cir. 1994).

§ deleted

Vermont simply has no "significant relationship" in any set of factual variables related to tort under the *Restatement*, **§ 145, § 171** as to damages, or contract, **§188, §189,** and **§ 193.** Laplante lived in Rhode Island and was harmed in Rhode Island and suffered damages and was treated in Rhode Island. The Policy was a form contract of adhesion, which was not negotiated in Vermont, and was designed to conform in all States. The geographic home of York Insurance Company is Maine, but its operational heart and soul

---

[60] Compare *OneBeacon v. Georgia-Pacific*, 474 F.3d 6,9 (1st Cir. 2007); *Roy* v. *Star Chopper Co., Inc.*, 584 F.2d 1124, 1129-1130 (1st Cir. 1978)

has been ceded to a nationally licensed company, OneBeacon Insurance Company, located in Massachusetts, and licensed in Rhode Island.

(1) "**Predictability of result**": The application of Rhode Island law is easily predictable if the statute of the state where the accident occurred and the insured was domiciled is followed. The provisions of insurance contract issued in Vermont envisioned enforcement under R.I. law. All states expect their citizens will receive the same privileges and benefits of citizens of the State in which they are driving.

(2) "**Maintenance of interstate and international order**": Each State of the United States is expected to respect the laws of other states and provide reciprocity, consistent with the Full Faith and Credit Clauses, and the Privileges and Immunities Clause of the United States Constitution. R.I. and Vermont have reciprocal motor vehicle violations laws and somewhat similar consumer protection laws for motor vehicle drivers The Vermont insurance statutes are not repugnant to Rhode Island statutes, and in fact some are similar or, at times, neutral on stacking. The Vermont issued policy envisioned enforcement in R.I. Although R.I.'s law for the most part is more generous, requiring the provision of greater coverage for persons with Vermont registrations living in Rhode Island, R.I. Law is not inconsistent with Vermont statutes and Vermont Courts, which seek to ensure its citizens harmed by uninsured drivers receive the damages to which they are entitled.

Language deleted

(3) "**Simplification of the judicial task**." Section 6 of the *Restatement Second* is a simple formula to follow. Recognizing the law of the jurisdiction where the accident occurred, and where the insured was a domiciliary, covered by a contract, based upon uniform forms of the insurance industry, such an extra territorial clause enforcement

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 27 of 30

provision of other state motor vehicle insurance coverage laws, as the most significant relationship is not a complicated formula for any jurisdiction to apply.

(4) "**Advancement of the forum's governmental interests**." Intra-policy stacking of premiums is the policy of the forum state, as required by R.I. statute, *R.I.G.L*§27-7-2.1(i). It advances the interests of the forum state to ensure full compensation for its accident victim and R.I. creditors created by a R.I. accident.Intra-policy stacking advances the remedial policy of Rhode Island statutes, which seek to fully compensate injured drivers for all premiums they may have paid in order that they receive full benefit of the incentive R.I. law has provided.. R.I. law protects persons in R.I., not insurers.

Language deleted

(5) "**Application of the better rule of law**." The Rhode Island intra-policy stacking statute[61] is the better rule of law for both Rhode Island and Vermont. It encourages motorists to buy expanded coverage for other motorists who could do them harm. Single limits of liability do by their "back door" complexity something which statutes prohibit at the "front door". Single limits are contrary to the remedial purposes of consumer protection laws, such as stacking. Those extra premiums payments should not provide illusory benefits. The auto insurance form contract, by its owns terms, was designed to be applicable in Rhode Island and to cover persons with vehicles garaged in Rhode Island. As a contract of adhesion, ambiguities in coverage under statutory supplements must be interpreted in favor of the remedial purpose of the law. Rhode Island provides greater mandated economic protection under the laws to which the Defendant, in

[61] See *Wildiss,* Alan, *Thomas,* Jeffrey, Uninsured and Underinsured Motorist Coverage (Third Edition)(Nov. 2005), Chapter 2 Mandated Coverage Generally, Chapters 12 and 13 on Limits of Liability.

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 28 of 30

its automobile insurance policy, promised fidelity, to the highest standards, for its insured no matter where they garaged their vehicles. Neither State has an interest in prohibiting the other from providing more extensive consumer protection to anyone regardless of their residency or place of injury.

**18. If the Restatement (Second) *Conflict of Laws* (1971) Tort Related Factors Contained in§ 145and § 171 Are Applied, then Rhode Island Interests Would Prevail, and Tort Factors Not Contract Factors, Would Determine the Measure of Damages To Which Uninsured Beneficiaries Are Entitled.**

Nearly all factors were centered in Rhode Island under the test provided *§ 145(2)* [62]. The interests of the place of the tort under *§171*[63] determine the measure of damages caused by an uninsured driver.[64];[65] Note that "(a*) the place where the injury occurred*" was Lincoln Rhode Island; that (b) "*the place where the conduct causing the injury occurred,*" *was* Lincoln, Rhode Island, and"(c) "*the domicile, residence, nationality, place of incorporation and place of business* of the Plaintiff was Rhode Island. York Insurance Company of Maine was incorporated in Maine, doing business in Vermont, and had ceded all of its

---

[62] Restatement (Second) Conflict of Laws §145 (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and parties under the principles stated in §6. (2)Contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred;(c)the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties, are centered.

[63] Restatement (Second) Conflict of Laws §171. Damages. The law selected by application of the rule of §145 determines the measure of damages.

[64] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 39.40, 43, (Del. 1991). ***We overrule *Friday v. Smoot* and adopt the prevailing "most significant relationship" test of the RESTATEMENT (SECOND) OF CONFLICTS § 145(1). ***The court should have addressed the novel legal question of whether the tort-based *lex loci delicti* theory governed **the limits of Travelers' liability** instead of automatically applying the contract-based "most significant relationship" test.***Thus, under *Spinelli*, contract law principles do not entirely control suits to recover uninsured motorist awards. Instead, *Spinelli* suggests that **a court should use tort law to assess the plaintiff's underlying damages.** ***Given the state of the law at the time, the trial court should have applied the tort conflict of laws rules to determine the amount of damages Lake was "legally entitled to recover" under his uninsured motorist policy. **(Emphasis Added)**

[65] *Woodward v. Stewart,*104 R.I. 290, 243 A.2d 917,301(1968);*Miller v. White,* 167 Vt.45,48 702 A.2d 392 (1997) *Amiot v. Ames,*166 Vt. 288, 292, 693 A.2d 675, 677 (1997)

All new

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 29 of 30

revenues and duties to One Beacon Insurance Company, a Pennsylvania Corporation, doing business in Massachusetts. OneBeacon Insurance was licensed as a foreign insurance corporation to in Rhode Island, subject to mandates of the insurance laws of Rhode Island, and in forty nine other states. (*Exhibit 43*, NAIC List). OneBeacon Insurance, on behalf of the Defendant, wrote that it was subject to the laws in Rhode Island. (Exhibit 33 June 15, 2004). It is clear that"(d) ***The place where the relationship, if any, between the parties is centered"*** *was* Rhode Island. Only one event occurred in Vermont; i.e. the issuance of a Maine Policy and the mailing of insurance cards. The sum of the premiums for uninsured and underinsured and for property damage are measures of damages utilized by Rhode Island law.

19. **The Contract Related Factors Of Restatement (Second) *Conflict Of Laws,* (1971) § 188 and § 193 Would Still Result In The Application of R.I. law.**

There may not be a conflict. Section (1) of §188[66] may not otherwise be applicable since R.I. has a statute on intra policy stacking and Vermont allows interpolicy stacking, and the policy of R.I is not repugnant to the legislative policy. However, even assuming that choice of law was not effective, R.I. law is still effective under the Restatement Second on Contract related matters. There was no unique negotiations in Vermont. An order was place and filed

[66] Restatement (Second) Conflict of Laws §188. Law Governing in Absence of Effective Choice by the Parties. (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles in §6. (2) In the absence of an effective choice of law by the parties (see §187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue. (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of the state will usually be applied, except as otherwise provided in §§189-199 and 203.

Case 1:07-cv-00062-ML-DLM Document 26-2 Filed 10/03/2007 Page 30 of 30

much like what is done at ticket agency selling season Red Sox tickets in Vermont. The risk assumed was nationwide, the buyer was in R.I., and the operation was in Massachusetts. As noted in the June 5, 2003 termination letter from the Ford Agency, *Exhibit. 35,* excess accidents in Rhode Island was the basis for non renewal. Defendant knew the risks were in Rhode Island and that R.I. law applied. See *Exhibit* 33 June 15,2004, Kathleen Ahern Letter acknowledging applicability of R.I. law; and see *Exhibit 38*, acknowledgement by York of Complaint to R.I. DBR as R.I. having jurisdiction.

**Summary:**

The Defendant, York Insurance Company of Maine, through its ceded agent, OneBeacon Insurance, has a duty to pay to the Plaintiff the sums demanded by the Plaintiff under R.I. law.

Plaintiff
James P. Laplante
By His Attorney
/s/Keven A. McKenna
Keven A. McKenna, Esq.
Keven A. McKenna, PC
23 Acorn Street
Providence, RI 02903
(401) 273-8200
(401) 521-5820 Facsimile

**Certification of Notice**

I, the undersigned, hereby certify that on the 2nd day of October 2007, a true copy of the within document was filed electronically, and is available for viewing and downloading from the ECF system; and that C.Russell Bengston, the Attorney for York Insurance Company of Maine, C. Russell Bengsten, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903 will receive notice through the ECF system and by direct email, rbengstson@CKMlaw.com.

/s/Keven A.McKenna