Affidavit Laplante 9/28/2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**James P. Laplante**, :
Plaintiff :
v. : 07-0062ML
**York Insurance Company of Maine** :
Defendant :

## Affidavit Of Plaintiff, James P. Laplante

Now comes James P. Laplante, being duly sworn, and hereby sayeth, and deposes as follows:

1. My name is James P. Laplante.
2. I was born in Woonsocket Rhode Island; I lived most of my childhood in abutting Bellingham, Massachusetts; my schooling was at Bellingham High School, and East Coast Aerotech for Co-Generator Plants and Aircraft; and I have worked in the States of Massachusetts, Rhode Island, Vermont, Connecticut, Maine and New Hampshire, Maryland, Kansas, Colorado, and Georgia doing primarily mechanical and hydraulic jobs. My technical knowledge of uses of material known as "gunite", which is a substitute for some uses of cement, was helpful in obtaining employment
3. I am the Plaintiff in the above entitled complaint.
4. I am presently living with Corinna Brown, and our child, at [redacted] Hartland, Vermont 05048,and attempting to rehabilitate from injuries of February 23,2003.

*A. Life In Rhode Island.*

5. From the summer of 2001 through the spring of 2003 following my accident I maintained my domicile a[redacted] North Smithfield, Rhode Island. (See the Photo, **Exhibit 4,** taken on October 3, 2001 of the house where my Dad, My

Mother, and my Companion, Corrina Brown, and I lived.) **In Exhibit 3** is a photograph of my companion and fiancée, Corrina Brown and my dog, sleeping on the couch a[redacted]North Smithfield.)I kept my cars and trucks at that location., and Corrina Brown had insured those vehicles for me in Vermont before she had bought that house.(See **Exhibits 5,6, 9, 10,** and **11**, which contain various photographs of my insured vehicles located in the yard of[redacted]North Smithfield. R.I...)

**6.** On August 6, 2001 my fiancée', Corinna Brown, had purchased and took title to house and premises at [redacted]North Smithfield, Rhode Island, where we both had planned to live full time after we both had obtained full time jobs in Rhode Island.

**7.** Corrina Brown purchased our house with a down payment of $5000 and a mortgage loan of $76,500. I contributed to the down payment amount, and thereafter, I deposited my paycheck proceeds into a joint checking account we had in order to assist in the payment of monthly payments and utilities. The payment to the mortgage company included property taxes and house insurance, and was $861.23 a month. Due to my credit rating, I was not able to join her on title and on the mortgage. I have provided this information to the Defendant.

**8.** Corinna Brown obtained auto insurance coverage for my truck in Vermont for the first time in 2001 through Ford Insurance Company, a Vermont Insurance Agent, who were acquainted with Corrina Brown.

**9.** I had not thought much about my auto insurance coverage. The Defendant had provided coverage for an accident in Woonsocket, Rhode Island, and I had the

impression that the Defendant provided coverage for me all over the United States and no matter whether the person causing my injury had his own coverage or not, and no matter where I lived.

**10.** Before Corrina Brown had purchased the house in R.I in which I lived in Rhode Island, I had purchased a used 1978 Ford F378 Truck on June 5, 2000, while I was staying with her in Vermont. That truck was then registered in Vermont on August 31, 2000 before I moved to Rhode Island, and rebuilt my Ford Truck F378 in the back yard of [redacted] North Smithfield.

**11.** I obtained most of the parts in Rhode Island at Lowe's and at Autozone in Woonsocket and in Warwick where I often received warranty receipts which described my name, my R.I. address, and my Ford F378 Truck as set forth in ***Exhibit 13*** attached hereto.. I have produced many of those receipts for the Defendants.

**12.** In 2002 I removed the 1978 Ford F378 truck from my insurance policy when I took it off the road, dismantled it, and then rebuilt the truck in my backyard at [redacted] North Smithfield, Rhode Island. (See Scanned Photographs **Exhibits 10 and 11** which display the 1978 Ford F378 which I rebuilt in Rhode Island.)

**13.** After the truck was rebuilt in Rhode Island I added coverage for the second time effective December 20, 2002. (See **Exhibit 1** of the Additional Declaration Provided to Me effectually in January of 2003 in Rhode Island.)

**14.** During the course of my stay at [redacted] I shared the expenses of living at [redacted] North Smithfield, with my fiancée', Corinna Brown, and my mother and father, Joseph and Susan Laplante.

**15.** I was directly responsible for payment of the utility bills a[redacted] North Smithfield.

**16.** My father, Joseph Laplante, helped paint and improve the home a[redacted] North Smithfield.

**17.** Corrina Brown and I lived together a[redacted]eriodically; I lived there with my mother, Susan Laplante, and father, Joseph Laplante, when I was not working out of state at locations which were usually not more than an overnight ride from home..

**18.** During the course of my relationship with Corrina Brown, since 1997 and prior to our relationship, Corrina Brown had a steady job as a manager with Pizza Chef in Vermont.

**19.** Her office was near the original office of the Ford Insurance Company, where she had been obtaining automobile insurance prior to, and, during my relationship with her.

**20.** The utilities at[redacted]North Smithfield had been in my name. Corrina Brown handled the management of the finances at[redacted]and my father and I contributed from our employment income to help pay those bills.

**21.** Corinna and I would spend time together in our home in Rhode Island, and, when I had time off, and when Corinna Brown was working, I would, on occasions, travel to Vermont to stay with her.

**22.** Corrina Brown would also do the same. When she had time off, and when I was working, she would then travel to North Smithfield to be with me in our residence at [redacted]North Smithfield.

**23.** I was working out of state during that time; and Corrina Brown maintained her job as a manager of Pizza Chef in Vermont until we were financially able to be both in Rhode Island and pay the mortgage and bills.

**24.** Prior to the accident on February 23, 2003, I had hoped to obtain closer employment in the Rhode Island Massachusetts area; and Corinna Brown and I had planned to be married and both live full time in Rhode Island.

**25.** From the summer of 2001 until I was eventually forced to move to Vermont in the summer of 2003 so that Corrina Brown could care for me my injuries, I lived in North Smithfield, Rhode Island, kept my insured vehicles garaged there, shopped there , went to the doctor's in that area, and did my banking there, as set forth in many of the attacked scanned receipts, ***Exhibits 12, 13,and 14***, and in the many items I produced to the Defendant, and which I have outlined here.

**26.** From October 4,2001 to November 16, 2003, I maintained a Bank Account at Sovereign Bank in Lincoln, Rhode Island;, and those bank statements were addressed and mailed to me a [redacted] North Smithfield, RI. Those banks statements confirm withdrawals by me in Rhode Island and in the various states where I worked. I provided copies of those statements to the Defendant.

**27.** I received mail addressed to me a [redacted] in North Smithfield, Rhode Island, including, but not limited to the following mailed items;

**(i)** From October 4,2001 to November 16, 2003 Bank Accounts at Sovereign Bank in Lincoln, Rhode Island;

**(ii)** On or about January 1, 2003, in connection with accounts at Sovereign Bank in Lincoln, Rhode Island. two master accident insurance protection policies issued Sovereign Bank for the benefit of James Laplante at [redacted] North Smithfield, R.I.

028696 from which there was a deduction of $5.95 a month for the Blanket Accident Insurance For Sovereign Bank Policy No: [redacted]ssued by National Union Fire Insurance Company of Pittsburg , Pennsylvania of the American International Companies, and a deduction of $9.95 for the Blanket Accident Insurance For Sovereign Bank Policy [redacted]ssued by National Union Fire Insurance Company of Pittsburg, Pennsylvania of the American International Companies;

**(iii)** Report Certificate of Analysis of Well Water from Thorstensen laboratory Inc. in connection with permits for use of house mailed to James Laplante, fo[redacted]North Smithfield, RI, and dated 1/21/01.

**(iv)** Verizon Telephone Bills from August 29, 2001 to September 16, 2003;

**(v)** MCI long distance phone bills from August 28, 2001 through October 28,2003;

**(vi)** The Narragansett Electric (National Grid) from August 9, 2001through October 2, 2003;

**(vii)** The W2 Forms, Income Tax forms, records of Wage Statements from employer of the Plaintiff for 2001;

**(viii)** A Letter from National Grid on May 28, 2002;

**(ix)** The Correspondence from the R.I. Fraternal Order of Police to James Laplante, dated 2003'

**(x)** A notification from the R.I. Department of Environmental Management, on January 19, 2001,for the well water testing;

**(xi)** An Inspection Certificate from the North Smithfield, R.I. Fire Department delivered to "Buyer, James Laplante and Corrina Brown" ;).

**(xii)** A letter from Michael Hagopian, Attorney, containing the original recorded deed and title insurance policy regarding [redacted]North Smithfield on November 20, 2001

**(xiii)** Each of the medical bills for services incurred in Rhode Island as the result of the accident on February 23, 2003;

**28.** .On December 20, 2002, having rebuilt and garaged the Ford Truck in Rhode Island, I had the 1978 Ford Truck re-insured with the Defendant for the second time through its agent, Ford Insurance Company. **(See Exhibit 1, Declarations,)** I did not bother to change my Vermont registration and license which I had previously received before I moved to Rhode Island because I assumed that I was covered in all 50 states.

**B. Accident in Lincoln, Rhode Island on February 23, 2003.**

**29.** On February 23, 2003, I was operating my rebuilt Ford F378 truck in Lincoln Rhode Island in which my father, Joseph Laplante was a passenger, at a traffic light at the intersection of Washington Highway, Route 116, and Albion Road, Route 123, Lincoln, Rhode Island, when there was an accident in which I was severely injured.

**30.** On that day, my father and I were on our way to the Dunkin Donuts for coffee across from the Lincoln Mall and then to work for the Blaine Hair Schools in Malden, Massachusetts.

**31.** At that time I had a contract of auto insurance policy with the Defendant. See ***Exhibit 1***. I had received insurance cards from Ford Insurance Agency in Quechee Vermont and I kept them in my wallet when I drove. I received a copy of the Declaration and the Policy after the accident in Rhode Island on February 23, 2003.

**32.** I had lived at [redacted] North Smithfield, RI prior to the accident on February 23, 2003 until I later moved to Vermont, at the end of my hospitalization in Rhode Island, to live with my finance', Corrina Brown, who helped care for me in my disabled condition.

**33.** Three separate (3) premiums of $60 were paid to the Defendant for uninsured coverage and for underinsured coverage for me and three (3) premiums for $12 each were paid to the Defendant for medical payment coverage for me. My policy provided for property damage to my truck.

**34.** The disabilities and impairments which I incurred in the accident on February 23, 2003 made our hopes of living in Rhode Island impossible. Except for a recent part time job sorting and re-cycling, I have not been able to do construction work in the gunite field and related work due to my handicaps incurred from the accident.

**35.** Without my employment income after the accident in February of 2003, Corrina Brown was then forced to sell at a loss the house a[redacted]North Smithfield in the fall of 2003. I was without funds.(Deposition of Corrina Brown, August, 2007.)

**36.** I have evidence of Rhode Island receipts of money I spent when I was living at [redacted] North Smithfield; and I have provided many of those receipts to the Attorney for the Defendant. I also have photographs of my family a[redacted] North Smithfield, which Corrina Brown just located in an old stored camera, which I have provided to the Defendant. (See Affidavit of James Laplante, and **Exhibits 3-11.)**

**37.** In the two and half years prior to the accident, I lived primarily at [redacted] North Smithfield, and I visited Corrina Brown at her work in Vermont periodically when I had no work assignments.

**38.** Corrina Brown handled our automobile insurance coverage with the Ford Insurance Company which was adjacent to her original place of employment, Pizza Chef.

**39.** On February 23, 2003, at the time of the accident, I was driving the 1978 Ford Truck, which was insured by York Insurance Company of Maine, which had been reinsured after I had rebuilt that truck in our yard in North Smithfield.

**40.** I never received a copy of any auto insurance policy, but I did receive in Rhode Island my proof of auto insurance policy coverage and I always kept those cards in my wallet on my person.

**41.** The1978 Ford Truck, which I had garaged at [redacted] North Smithfield prior to the accident and at the time of the accident, was a truck which I had completely rehabilated at my home in North Smithfield. I have spent more than five thousand dollars ($5,000) on truck rebuilts including the receipts from Lowe's on Diamond Hill Road and Autozone, in Woonsocket, Rhode Island, and other local stores where I bought parts and paint for my 1978 F378 Ford Truck.(**See Exhibits 7,13, and 14**) In my opinion it would have cost me more than the sum of ten thousand dollars ($10,000) to replace my rebuilt 1978 Ford F378.

**42.** While driving that 1978 Ford F378 on the morning of February 23, 2003, I was forced to turn quickly to my right and collided with a metal upright non break away traffic pole at the corner of Route 116 and Great Road, near the Lincoln Mall, where cars exit from the airport. the location, near AT Cross and a local car dealer. My truck was completely shattered and demolished and towed to our house at 217 Douglas Pike while I was at Rhode Island Hospital. Attached are some scanned photographs of the accident site in December of 2003 at Exhibits **30 and 31** and photographs of my demolished truck at Exhibits **17 and 18.**

**43.** My father, Joseph Laplante, who was sitting on the passenger side, saw the hit and run vehicle, and himself was severely injured.

**C. <u>Damages From Accident</u>.**

**44.** In that accident, my rebuilt truck was completely demolished, It was shattered into several pieces, and removed to my home a[redacted]North Smithfield. See scanned photographs of Demolished Truck in ***Exhibits 16, 17 and 18*** .). I had spent more that five thousand dollars in new parts and tires rebuilding and customizing the truck, See some of my scanned receipts for my truck in ***Exhibits 7, 13, and 14***.

**45.** In that accident I suffered severe personal injuries. I was unconscious for eight (8) days and I was hospitalized for eighteen (18) days at Rhode Island Hospital during which time I endured several operations My injuries to my lower extremities were multiple and severe in nature. Those injuries included a femoral fracture, fractures of my right proximal tibia, and a left ankle fracture. I also suffered severe injuries for lacerations to the back of my head, two fractured vertebrae, three (3) fractured teeth, and a large laceration of my left calf, a left ankle fracture, a left femur fracture, a right tibial plateau fracture, a right tibial plateau fracture, and a left foot fracture. I had an operation in RI Hospital on February 23, 2003 for the "retrograde nailing" of my left femur, and left calf, and I was placed in full body traction. On February 26, 2003 I had another operation in which I received a 'split thickness skin graft to my left calf" and an "external fixation to my right tibia". On March 5, 2003 I had another operation in RI Hospital which involved my right tibial and left leg fracture dislocation. There were screws and plates placed in my left foot: two 3.5 screw in place my knee and

there was severage addressed by 4.5 lag screws placed in my legs with a 4.5 inch LCDCP plate placed in my knee.

**46.** Since that time in R.I. Hospital, I have received various leg castings, knee brace mobilizers, multiple pain medications, several course of physical therapy, and I have under taken a home exercise program. Since leaving Rhode Island after my hospitalization, I had received some treatment in Vermont from Dr John P. Houde and at Mt. Ascutney Hospital.

**47.** As a consequence of my accident on February 23, 2003 with the uninsured and underinsured driver, I have incurred liabilities for unpaid bills, to date, of $136, 179.64 , nearly all of which were in incurred in Rhode Island in 2003.

| **Medical Provider** | **Date** | **Service** | **Amount Owed** |
|---|---|---|---|
| R.I. Hospital | 2.23.03-3.4.03 | Emergency Treatment | $82,000.00 |
| R.I.Medical Imaging | 2.23.03-3.8.03 | Diagnostics machines | $1,692.00 |
| Providence Anesthesiologists | 2.23.03-3.08.03 | Pain Medications | $5,920.00 |
| University Orthopedics, Providence | 2.23.03-5.19.03 | Fracture Rehabilitation | $20,004.00 |
| University Emergency, Providence | 2.23.03 | Emergency Medical | $519.00 |
| Mt. Ascutney Hospital, Vermont | 3.17.03-9.12.03 | Surgical rehab | $6,938.00 |
| Dartmouth-Hitchcock Medical Center | 9.12.03 | Examination | $117.00 |
| Valley Regional Hospital | 10.28.03 | Examination | $234.00 |
| Valley Regional Radiologists | 10.28.03 | X-rays | $40.00 |
| Brigham and Women's Orthopedic Surgery | 5.12.04, 8.16.04 | Surgical rehab | $5,447.00 |
| John P. Houde, Vermont MD. | 7.03.03-9-25-04 | Orthopedic Diagnosis | $10,710.00 |
| Willow Brook Prosthetics & Orthopedics | 7.17.03 | Purchase | $390.00 |
| Vt & NH Visiting Nurses | 3.7.03-5-23.03 | Nursing | $1,625.00 |
| **Sub Total of Medical Bills:** | | | **$135,636.00** |
| | | | |
| Other Related Bills: | | | |
| Town of Lincoln Fire Department Rescue | 2.23.03 | Jaws of Life | $320.00 |
| R.I. Dept of Envir. Man. Clean Up | 2.23.03 | Road Clean up | $ 223.64 |
| Blackstone Auto Tow | 2.23.03 | | $ 144.00 |

| | |
|---|---|
| Subtotal of related bills | $543.64 |
| **Total Direct Bills** | **$136,179.64** |

**48.** According to my general physician, Dr John P. Houde, and his referral, Orthopedic Surgeon, Dr. Thomas Minas, I will require further surgery to my joints, cartilage, and ligaments in my legs, and attention to the rods and screws in my legs. Thus, at trial I will be asking of **$200,000.00** in compensatory damages for future medical bills.

**49.** In my prior years to the accident, I had earned an average of approximately $1200 a week. For 4.7 years following the accident, I was completely unable to work, and incurred an income lost of **$293,280.**

**50.** For the four years immediately following the accident, I have had to walk with a limp in both legs; I have had difficult to doing the most simple functions, such as dressing and taking a shower. For that period of complete disability, I will be asking the jury to award me an amount equal to thirty thousand dollars a year, to wit, **$120,000.**

**51.** Excepting for a recent part time job, I have been unable to work at the same construction work I was doing before the accident, and I am losing income that I would have otherwise earned. With a life expectancy table of 27.6 years, at a rate of $32,500 a year, I would claim at trial at least $893,750 for future lost wages.

**52.** I have several scars on my body, including scars on my head, my calf, and my knees. See attached scanned photographs, taken April 16, 2003, of some of those scars are noted in ***Exhibits 19 through Exhibits*** 29.. At trial I will be asking for compensation for those scars, as some are set forth in photo ***Exhibits 19 through Exhibits*** **29**, in the sum of $132.845.36.

**53.** I have been in continued pain since my accident. My pain following the accident was so severe that I was unable to maintain consciousness for eight days. During my hospital stay I was not able endure the fractures and the operations without heavy pain medication. When I left the hospital, I had difficulty sleeping and focusing because of the pain of my fractured bones and scars. I still suffer loss memory, bad speech, loss of stability, and pain. When I move , I ache continuously. The pain has so severe. I am without words to describe its discomfort. While no amount of compensatory damages would compensate me for the pain and suffering I incurred, at trial, I will be asking **$725,000** for such pain and suffering.

**54.** When I had purchased automobile insurance, with the assistance of Corrina Brown and the Ford Insurance Agency, I expected that those provisions for uninsured and underinsured coverage, property coverage, and medical payment, would provide sufficient coverage to me for the damages caused by the hit and run driver.

**55.** At Trial, I will be demanding that the Defendant, through my uninsured and underinsured coverage provisions, indemnify me for the following damages that I have incurred to my person and property, which I have updated since originally filing my complaint:

**Injury to the Person:**

| | | |
|---|---|---|
| i. | Special Damages Incurred: | $136,179.64 |
| ii. | Future Medical Expenses | $200,000.00 |
| iii. | Total Disability (4 years) | $120,000.00 |
| iv. | Past Lost Wages (4.7 years): | $293,280.00 |
| v. | Permanent Disability, Three Years: | $225,000.00 |
| vi. | Future Lost Wages 27.6 years | $893,750.00 |
| vii. | Partial Permanent Disability 27 years | $748,000.00 |
| viii. | Scarring | $132.845.36 |
| ix. | Pain and Suffering | $725,000.00 |
| | | **$3,474,054.90** |

**Damages to Property**: Totaled truck **$10,000.00**

D. **Post Accident Communications And Disputes of Coverage with Defendant York Insurance Company of Maine**

**56.** Since my hospitalization in February and March of 2003 at Rhode Island Hospital, the Defendant, speaking through employees of OneBeacon Insurance Company, sent a number of letters to me, my father, and my attorneys, ***See Exhibits 32 -40***,telling me that the Defendant would not cover me for all of various premiums I paid for various coverages which I had understood to have been provided by my insurance policy. Initially, the Defendant and its agents claimed that I had to split my proceeds for uninsured coverage with my father, Joseph Laplante, then the Defendant paid my father under the liability provisions of my father, then the Defendant offered me three hundred thousand dollars ($300,000) and, then they withdrew the offer, apparently on the basis of the contributory negligence of the flooding from nearby properties.

**57.** On March 31, 2003 ,See **Exhibit 32**,Carl Kallenberg indicated that the Defendant may owe me damages for uninsured and underinsured coverage and property damage for my accident on February 23, 2003. He indicated that the applicable provisions on uninsured and excess coverage are contained in the following provisions:

> Policy [redacted]ncludes an Underinsured Motorists Coverage Endorsement (G13156 03 02),which provides, in relevant part, that p. 5.16
>
> **Uninsured Motorists Coverage – Vermont**
> G13156 03 02

**58.** Except for the receipt of five thousand dollars ($5,000.00) toward unpaid medical bills on June 15, 2004, by OneBeacon Insurance Company on behalf of York

Insurance Company of Maine, I have received **no** payment from the Defendant or its agent, OneBeacon Insurance Company. Both have refused to pay any other money to me under my automobile policy.

**59.** On June 15, 2004, Kathleen Ahearn, on letter head of OneBeacon Insurance, wrote me the attached letter, ***Exhibit 33***, attached hereto, under claim number OB600908Z-02-05, for a date of loss of February 23, 2003 on Policy Number, [redacted] which indicated that such notice of such payment was done pursuant to Rhode Island law. Kathleen Ahearn of OneBeacon Insurance said as follows: "Rhode Island general law section 27, chapter 3, subsection 5.1 requires that we inform that a check has been issued for the limits of your medical payments coverage of $5000.00 in this matter."

**60.** On June 15, 2004, ***Exhibit 34***, Kathleen Ahearn then provided to my then attorney, for the first time known to me, a copy of my actual policy of auto insurance; and she suggested that I had to share a single limit of damages with my father who was also injured as a passenger.

**61.** On or about July 13, 2004 my father gave me a copy of the letter he had received from the R.I. Department of Business Regulation from Edward P.Faschetti of OneBeacon Insurance Company, **See Exhibit 38**, which claimed that OneBeacon Insurance Company, as the Adjuster for York Insurance of Maine, had established only one amount of money to pay both my father and I in the sum of $300,000. He said that was because an uninsured driver has caused the damages to both of us. My father told me that what Faschetti has claimed only making a demand under the uninsured coverage portion of my policy. Faschetti notions would effectively eliminate any coverage for me.

**62.** On September 13, 2004, Attorney Keith Athen then told my father, Joseph Laplante in ***Exhibit 35*** that his claim would be adjusted as a bodily injury liability claim.

**63.** Eventually, my father, Joseph Laplante, accepted payment of the sum of $300,000 from OneBeacon Insurance Company, then located in Foxboro, Massachusetts for his claim, allegedly, under the provisions of my liability coverage in my automobile policy.

**64.** Subsequently, the attorney told the R.I. Department of Business Regulations on December 2, 2005, ***Exhibit 37*** that at time the maximum they could pay to me was the sum of three hundred thousand ($300,000) under the provisions of uninsured coverage since the attorney for my insurance company that was all the money that his insurance company had to pay me under Vermont law.

**65.** I am very disappointed in the failure of my insurance policy to provide coverage for injuries from my accident.

**By the Plaintiff**

James P. Laplante

State of Vermont
County of Windsor

On the 28thday of September, 2007 in White River Jct Vermont before me did personally appear James P. Laplante, known to me to be the party executing the above deposition and affidavit, being duly sworn, did swear that each of the above averments were true to the best of his personal knowledge and observations, and he acknowledged that such deposition was his free act and deed.

Notary Public

2-10-2011
My Term expires on

HEATHER A LEBLANC
Notary Public, State of Vermont
My Commission Expires Feb. 10, 2011

**Certification of Notice**

I, the undersigned, hereby certify that on the ~~28th~~ 5th day of ~~September~~ October 2007, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system; and that C.Russell Bengston, the Attorney for York Insurance Company of Maine, C. Russell Bengston, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903 will receive notice through the ECF system and by direct email, rbengstson@CKMlaw.com.

/s/Keven A.McKenna