**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **James P. Laplante**, | : | |
| Plaintiff | : | |
| v. | : | C.A. 07-0062ML |
| **York Insurance Company of Maine** | : | |
| Defendant | : | |

**Plaintiff's Memorandum in Opposition to Defendant's Partial Summary Motion on Limits of Liability.**

**I. Preliminary Statement.** Plaintiff disagrees with Defendant's characterization of the Facts and Defendant's interpretations of the applicable law; and incorporates by references, in opposition, his memorandum of law in support of his motion for a summary judgment, his list of undisputed facts, his affidavit and exhibits, and the affidavits of his father, Joseph Laplante.

**II. Facts.**

On pages 1 through seven of its memorandum, the Defendant summarizes its version of the important undisputed facts. Plaintiff has filed in a separate document objections to the Defendant's factual averments contained in its statement of undisputed facts, numbered **3, 4, 5, 6, 7, 9, 11, 12, 15, 16, 18,20, 21, 23, 24, 26** and **27.** Plaintiff then has filed in that same document proposed changes in those averments which would be acceptable to the Plaintiff as undisputed facts, which allow the Court to decide the stacking issue as a question of law. Plaintiff incorporates those corrected averments herein without repetition. Essentially, the evidence demonstrates the following situation. The Plaintiff lived in a duplex on one side with his fiancée, Corrina Brown, in North Smithfield, R.I. and on the other side, with his parents Joseph and Susan Laplante from the fall of 2001 through the spring of 2003.

During that time period, he kept his trucks and cars which were insured by the Defendant garaged on that premises in North Smithfield, Rhode Island. The cars and trucks were originally registered and insured in Vermont before he moved to North Smithfield, R.I. in the fall of 2001 with his fiancée' Corrina Brown.

Due to economic pressures, Brown kept her apartment in Hartland, Vermont, and, Laplante obtained work in various East Coast states during his stay in North Smithfield.

The Plaintiff expected that the national coverage provisions of the Defendant's auto insurance policy and the state laws of Rhode Island protected him no matter where he garaged his vehicles and no matter where he registered his vehicles.

III. **Defendant's Argument of the Law**:

**1. Summary of Plaintiff's Opposition to Defendant's Motion.**

Defendant misunderstands the principles of law applying to persons living in Rhode Island, injured in Rhode Island, and who are covered by needed auto insurance coverage from an out of state insurer, who also provide coverage in other states.

Whether the Plaintiff is in State Court or in the Federal Court, the same Rhode Island laws apply.[1] Rhode Island laws protect James Laplante [2]no matter from whom he buys his automobile insurance. Rhode Island law is designed to ensure adequate compensation for Rhode Island citizens who suffer bodily injury by hit and run drivers in Rhode Island. Rhode Island law provides protection for persons living in Rhode Island

---

[1] ***Gordon v. Clifford Metal***, 602 A.2d 535,557(R.I. 1992). It is well settled that the forum state is required to apply its own conflict-of-law rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The forum state is also free to characterize the nature of the dispute. See Restatement (Second) Conflict of Laws § 124, comment a at 354 (1971)

[2] *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917,301(1968). Accordingly the defendants' alleged wrongful conduct is to be judged by the law of Massachusetts, but the host's duty of care to his passengers and **the measure of damages to be applied are to be governed by the law of Rhode Island**

through mandated liability coverage which bootstraps required coverage for personal injury damages from uninsured and underinsured drivers in Rhode Island.

To pay for actual damages occurred in Rhode Island to insured drivers, the insured must pay for each premium paid by the insured for hit and run coverage for uninsured drivers and underinsured drivers, the amount each premium promises.[3] The Plaintiff, James Laplante, paid three premiums for uninsured coverage and three premiums for underinsured coverage. Thus, to the extend Laplante has suffered actual personal injury damages, the Defendant insurer must pay the Plaintiff an amount for uninsured coverage equal to three premium payment paid by Laplante times three hundred thousand dollars ($300, 000), to wit, the sum of nine hundred thousand dollars.

To the extent that such sums for hit and run bodily injury do not cover his actual insured damages, then Laplante is entitled to underinsured coverage times the three premiums he paid for underinsured coverage. Thus to the extent, that his actual damages require such coverage, Laplante would be entitled to additional sum of nine hundred thousand dollars ($900,000) for underinsured coverage. Under R.I. law, a single limit of liability included the policy of the insurer could not void the supplement requirement of the R.I. Statute.

Rhode Island law now follows the mandates of the Restatement (Second)of Conflict of Laws (1971)[4], [5]and no longer follows the ancient maxim that the place of the

---

[3] *Mitchell v. State Farm Ins. Co.,* 315 Mont. 281, 68 P.3d 703 (2003) 102, 2003 MT); U.S.C.A. Const Amend XIV.. Anti-stacking provision in automobile insurance policies violated substantive due process, where provision permitted insurer to charge premiums for five separate uninsured motorist (UM) coverages, in spite of fact that the anti-stacking provision only permitted insured to recover for one coverage.

[4] *Restatement (Second) Conflict of Laws §146. Personal Injuries*. In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the occurrence and the parties, in which event the local law of the other state will be applied.

origination of the contract determines its applicability, as suggested by the Defendant in its brief.

Vermont law does not mandate such coverage for residents of Vermont; however it does not prohibit such coverage for Rhode Islander who buy insurance coverage from insurers who do business in Vermont.

Nothing unique happened in Vermont. There was no negotiation of the policy in Vermont. A national set of forms were utilized which promised to provide coverage conforming to every state law in the United States by a Defendant who had ceded its premiums and its business to another corporation, OneBeacon Insurance Company, which was licensed to do business in all fifty states.

2. **R.I. Law And Vermont Law Are Not In Conflict, and therefore the Law Most Benefiting the Injured Driver Must Be Applied**.

There is no conflict with Vermont law.[6] Vermont law does not prohibit stacking. R.I. law requires stacking and those must be applied as the better policy. Defendant mistake the lack of prohibition as mandatory permission.

The Courts of Rhode Island and Vermont require that insurers allow its insured motorists to stack coverage provided in separate policies of automobile insurance, i.e. interpolicy stacking. *Monteith v. Jefferson Ins. Co. of New York*, 159 Vt. 378, 618 A.2d 488 (Vt. Oct 23, 1992) (NO. 91-244)allowed *inter policy stacking*; and criticized earlier holding permitting contract limitations on intra policy stacking in *Sanders v. St. Paul Mercury Ins. Co*.148 Vt. 496, 536 A.2d 914 (Vt.,1987).

---

[5] Restatement (Second) Conflict of Laws §171. Damages. The law selected by application of the rule of §145 determines the measure of damages.

[6] *See Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29 (1st Cir. 1997).

Rhode Island at R.I.G.L. §27-7-2.1 (a)-(i) and Vermont at 23 V.S.A.§941 require that insurance contracts of coverage of liability for motor vehicles accidents also provide uninsured motorist coverage, which includes coverage of damages caused by motorists who leave the scene of the accident. York's policy provides coverage for " hit and run drivers."

Both Rhode Island[7] and Vermont[8] [9], both provide that their statutory mandates override and otherwise supplement any contrary provisions in an automobile insurance contract for motor vehicles accidents, such as single limit provisions. Both Rhode Island, and Vermont require that the coverage for uninsured motorists who suffered damages from phantom vehicles cover at the least the same amount damages as is covered by liability coverage of the insured motorists who suffered the damages. Rhode Island and Vermont[10] require that contracts of insurance for motorists provide coverage for motorists who suffered damages or cause damages in any state in the United States.

---

[7] **R.I.G.L.§ 27-7-2.1** (a) **No policy insuring against loss** resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this **state unless coverage is provided therein** or supplemental thereto, **for bodily injury** or death in limits set forth in each policy, but in no instance less than the limits set forth in §31-31-7 or §31-32-24 under provisions approved by the insurance commissioner**, for the protection of persons insured thereunder who are legally entitled to recover damages from** owners or operators of uninsured motor vehicles and **hit-and-run motor vehicles** because of property damage, bodily injury, sickness, or disease, including death, resulting therefrom.

[8] 23 V.S.A. § 941 (a) **No policy** insuring against liability arising out of the ownership,maintenance or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this **state unless coverage is provided** therein, or supplemental thereto, for the protection of persons insured thereunder **who are legally entitled to recover damages**, from owners or operators of **uninsured, underinsured or hit-and-run motor vehicles**, for bodily injury, sickness or disease, including death, and for property damages resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.***

[9] **23 V.S.A. § 943.** Provisions in insurance policies

All policies of motor vehicle liability insurance delivered or issued for delivery in this state shall be deemed to include provisions in accordance with this subchapter, and in accordance with regulations of the commissioner in furtherance thereof.

10 23 V.S.A. § 941 (b) Every policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall provide insurance against loss resulting from the liability imposed by law for damages because of bodily injury or death of any person within this state or elsewhere in the United States and Canada.

Rhode Island[11] and Vermont require contracts of insurance for motorist to provide coverage for motorists which meet the statutory standards of any state in United States which the motorist is driving. Compare *Amick v. Liberty Mutual* 455 A.2d 793 (1983).

### 3. Laplante had Sufficient Minimum Contacts in Rhode Island.

Although it did not file a motion to dismiss this law suit for lack of contacts, and, it did explicitly contended in its Removal actions that this U.S. Court had diversity jurisdiction, the Defendant did discuss the question of lack of minimum contacts in its memorandum**.** Rhode Island has more than sufficient contacts with York Insurance Company of Maine and its ceded agent, OneBeacon Insurance, to have jurisdiction in R.I.[12],[13] for all the reasons set forth in James Laplante's affidavit and its exhibits and those of his father.

### 4. **Laplante Was A Resident of Rhode Island**.

[11] **R.I.G.L.§ *31-47-2* Definitions**. — **(**13) "Owner's policy of liability insurance" means a policy:
(A) Affording coverage as defined in the minimum provisions prescribed in
a regulation which shall be promulgated by the commissioner. *** Every owner's policy of liability insurance shall provide insurance subject to the regulation against loss from the liability imposed by law for damages, including damages for care and loss of services, because of bodily injury to or death of any person and injury to or destruction of property arising out of the ownership, maintenance, use, or operation of a specific motor vehicle or motor vehicles **within the state of Rhode Island or elsewhere in the United States in North America or the Dominion of Canada, *****
(B) In the case of a vehicle registered in this state, a policy issued by an insurer duly authorized to transact business in this state; or
(C) In the case of a vehicle registered in another state in the name of a nonresident, either a policy issued by an authorized insurer, or a policy issued by an unauthorized insurer authorized to transact business in the state of the nonresident's residence if the unauthorized insurer files with the commissioner in a form to be approved by him or her a statement consenting to service of process and declaring its policies shall be deemed to be varied to comply with the requirements of this chapter; and ***

[12] R.I.G.L.§9-5-33. Jurisdiction over foreign corporations and over nonresident individuals, partnerships, or associations.;

[13] *Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d 1113, 2003; R.I. LEXIS 229 (R.I. 2003).Rhode Island's long arm statute, under R.I. Gen Laws § 9-5-33(a), permits the exercise of jurisdiction over nonresident defendants to the fullest extent allowed by the United States Constitution.

Defendant misunderstands the law of residency. Plaintiff, James Laplante fulfilled the criteria of a residency[14] in Rhode Island; and is entitled to constitutional protection of the regulatory insurance benefits provided for persons living and injured in Rhode Island. For the purpose of the R.I. Motor vehicle laws R.I.G.L§ 31-1-18 (b), James Laplante was a resident of Rhode Island, [15]. who worked from his residence in North Smithfield, R.I. and he garaged his Ford 378 Truck in North Smithfield. Laplante had registered and insured his truck in Vermont in 2001 and 2002 before he moved to Rhode Island. Although she owned their house in North Smithfield, she worked and rented an apartment in Vermont, thus she was a *non resident* of Rhode Island under the provisions of *R.I.G.L.§*31-1-18(b) and was allowed to have insurance which provided coverage in both Rhode Island and Vermont[16]. James Laplante was not a student or a member of military living in Rhode Island; and thus James Laplante was not a *non resident* pursuant to the

[14] *Flather v. Norberg, 119 R.I. 276, 377 A.2d 225,281,282 (1977).**** It is true that "residence is sometimes construed to mean domicile and the terms are often used to connote the same meaning." Reese & Green, *That Elusive Word, "Residence."* 6 Vand. L. Rev. 561, 569-74 (1953). Nonetheless, domicile, as it is properly understood, has a reasonably distinguishable and constant meaning. "`To establish a domicile and become a domiciled inhabitant there must be an actual abode in the state with the intention in good faith to live here permanently and without any *present* intention of changing the home in the future. Actual residence without such intention does not suffice.'" *Nevin* v. *Nevin*, 88 R.I.426, 433, 149 A.2d 722, 725 (1959), *quoting McCarthy* v. *McCarthy*,45 R.I. 367, 369, 122 A.529, 531 (1923).***Generally, the controlling factor in determining a person's domicile is whether he or she possesses the requisite domiciliary intent. *Soucy* v. *Knight*, 52 R.I. 405, 408-09, 161 A. 132, 133(1932). Residence, on the other hand, is not a word of fixed legal definition but must be interpreted according to the context and the purpose of the statute in which it is found. *District of Columbia* v. *In re H.J.B.*, 359 A.2d 285. (App. D.C. 1976). *See* Reese & Green, *That Elusive Word*,Page 282 *"Residence," supra*, at 563-64; Cramton, Currie, & Kay, *Conflict of Laws* 48 (2d ed. 1975).

[15] *R.I.G.L§ 31-1-18 Resident and nonresident*. *** (b) "Resident" means a person:
(1) Who owns, rents, or leases real estate within the state as his or her residence and:
(i) Engages in a trade, business, or profession in this state; or
(ii) Enrolls his or her children in a school in this state for a period exceeding ninety (90) days; or
(2) Who is registered to vote or is eligible to register to vote under the laws of this state.

[16] *R.I.G.L.§* 31-47-8 Revocation of registrations (h) ***With respect to a nonresident the policy may also be issued by a non admitted insurance carrier provided the requirements of this chapter, with respect to issuance of an owner's policy of liability insurance by the carrier, have been met.

provisions of R.I.G.L§ 31-1-18 (b) [17]. Since Laplante visited with his finance' often when he was not working from Rhode Island, neither he nor his truck was in Rhode Island for thirty (30) continuous days[18],[19]; and thus he was not otherwise required to carry insurance issued by a Rhode Island insurer. Since York Insurance Company of Maine, provided *extra –territorial coverage*[20] and uninsured and underinsured coverage met the requirements of Rhode Island law. Laplante was a R.I. resident who met R.I. law by through an insurance policy obtained in Vermont.[21]

### 5. The Insurance Policy Favors the Insured and Stacking Statutes Favor The Insured.

A reader of an auto insurance policy must first review its structure and provisions, in light of legal principles interpreting insurance policies, and then determine which statutory overrides are to be imposed. Rules of construction of an insurance contract indicate that ambiguity[22] favors the insured[23], and that insurance contracts are contracts of adhesion which must be liberally construed in favor coverage. Statutory over

---

[17] *R.I.G.L§* 31-1-18 Resident and nonresident. —
(a) "Nonresident" means any person who is not a resident of this state or is temporarily residing in this state as a student or as a member of the armed forces of the United States.

[18] *R.I.G.L.*§ 31-3-2 Every motor vehicle*** owned by a resident of this state when operated or drawn upon a highway within this state for a period of thirty (30) days shall be subject to the registration provisions of chapters 3 — 9 of this title except: except: (a) Any vehicle operated upon a highway in conformance with the provisions of the chapters relating *** nonresidents;

[19] *R.I.G.L.§ 31-10-*1 License required to drive. — (a) No person, except those expressly exempted in this chapter, shall drive any motor vehicle upon a highway in this state unless that person has a valid license as an operator or chauffeur under the provisions of this chapter ***. Any resident as defined under § 31-1-8 shall be required to obtain a Rhode Island operator's or chauffeur's license within thirty (30) days of establishing residency.

[21] ***Exhibit 1***, See Form G11244 03 02 (G11244-7) , Personal Auto Composite Endorsement-Vermont, at page 1 of six which states the following endorsements contained in your policy booklet are not applicable if your "covered auto" is principally garaged in Vermont. (Note that Any doubt regarding this intent is resolved for the insured under contract of adhesion standards and remedial law interpretation.)

[22] *URI CoGeneration Partners, LP v. R.I. Board of Governors for Higher Educations*, 915 F. Suppl.1267, 1281 (D.R.I. 1996) An ambiguity results when the policy is "reasonable and clearly susceptible to more than one interpretation."(Citations omitted).

[23] *Bartlett* v. *Amica Mutual Insurance Company*, 593 A.2d 45, at 47, (RI. 1991). Where an ambiguity is present in a policy, typically resulting in two or more reasonable interpretations of that policy, the language used must be construed against the insurer and in favor of the insured. (citations omitted).

rides requiring coverage for uninsured and underinsured motorist must be liberally construed in favor of coverage are considered part of the insurance contract. James Laplante and Corinna Brown, the insured, paid three (3) separate premiums for uninsured and underinsured coverage and paid three (3) separate premiums for medical payments coverage. According to the Master Policy Declaration, for the three (3) motor vehicles in his policy: 1994 Jeep Cherokee, 1978 Ford F378, and a 1985 Subaru Standard, Mr. Laplante paid three (3) **separate** premiums of $60 each for uninsured motorist coverage and underinsured coverage, and three (3) **separate** premiums: $12, $12, and $17, for medical coverage.

James Laplante, who had been living in Rhode Island, was driving the 1978 Ford 378 rebuilt truck when the accident occurred on February 23, 2003 in Lincoln, Rhode Island with a hit and run driver. His truck was demolished and he sustained severe injuries and was disabled. He is entitled to stacking coverage.

**6. Defendant's Policy Intended to Protect Laplante in R.I.**

The provisions of the policy issued by York Insurance Company of Maine to James Laplante (YM-Z263796F) are written to provide Laplante protection from bodily injuries caused by a hit and run drivers in any state. [24] Laplante's accident with the uninsured driver occurred in Lincoln, Rhode Island.

The Defendant's Policy intended to protect Laplante in Rhode Island, and it knew when rating the policy that Laplante drove vehicles in R.I.

In its **Rating Data** in the **Declaration**, under **Accidents and Convictions**, the Defendant listed an accident involving James Laplante, operator 14, which occurred on

---

[24] Exhibit 1-B Contract, **Part F-General Provisions**
**Policy Period and Territory**
*******B. The Policy territory is: 1. <u>The United States of America</u>, its territories ***.

January 23, 2001 in Woonsocket, Rhode Island, from which an additional point was charge. See page 4 of Declarations, Exhibit 1.

The **Personal Auto Policy Form Agreement**, (Form PP 000106094), (Form G130070995) provides Liability Coverage required under state law in States other than Vermont**.**[25] That coverage indicates that **"**your policy will provide the higher specified limit" of the other state's compulsory laws.

Under Rhode Island, the higher specified limit required is the sum mandated by the R.I. stacking law.[26]

**7. The Garaging Provisions of the Policy Assumes Coverages in Other States.**

The *Personal Auto Composite Endorsement*-Vermont, (FormG11244-7) modifies some of sections of the *Personal Auto Policy Form Agreement* and provides additional coverage. It provides that for vehicles not garaged in Vermont that the following endorsements[27] in the Personal Auto Policy and Endorsements apply, to wit: PP 03 11 06 94-Underinsured Motorists Coverage; PP 04 01 04 86-Split Uninsured Motorist Coverage; and PP 04-02 04 86 -Split Underinsured Motorists Limits. Unless The

---

[25] *Exhibit 1*-Personal Auto Policy and Endorsements, Form G130070995 at page 4 of 18 pages
Part A –Liability Coverage provides -
*****Out of State Coverage**
If an **auto accident** to which this policy applies occurs in any state or province other than the one in which "your covered auto"is principally garaged, we will interpret your policy for that accident as follows:
A, If the state or province has: 1. A financial responsibility or similar law specifying limits of liability for :bodily injury " or "property damage" higher than the limit in the Declarations, your policy will provide the higher specified limit.

[26] *R.I.G.L.*§ ***27-7-2.1*** (i) Whenever an insured has paid two (2) or more separate premiums for uninsured motorists' coverage in a single policy of insurance or under several policies with the same insurance company, the insured shall be permitted to collect up to the aggregate amount of coverage for all of the vehicles insured, regardless of any language in the policy to the contrary. (Emphasis Added).

[27] Exhibit 1-C Personal Auto Composite Endorsement- Vermont
(G11244 03 02 (G11244-77)
*** The following endorsements contained in your policy booklet are not applicable if your "covered auto" is principally garaged in Vermont.
PP 03 11 06 94 Underinsured Motorists Coverage
PP 04 01 04 86 Split Uninsured Motorist Coverage
PP 04-02 04 86 Split Underinsured Motorists Limits.

additional endorsements in the **Personal Auto Composite Endorsement** Form for vehicles garaged out of state are illusory benefits, the Defendant's policy was intended to cover Laplante's vehicles garaged in Rhode Island.

The main policy parts, (Exhibit 1-B, and I-C), contains several references to "covered autos" either principally garaged in Vermont or those not principally garaged in Vermont or those at alternative locations. For example, travel expenses are paid when a loss occurs more than 100 miles from the place of alternative garaging. [28]. Changes in premiums[29] can be made if the principal place of garaging for covered vehicles are changed. [30]. In the Master Driver Automobile Declaration, effective December 20, 2002, it noted a change endorsement was made effective December 20, 2002 by adding coverage of a 1978 Ford 378, File 18, for no additional premium based on "**information/coverage change-garage territory."** [31] The Master Policy **Declaration,**

---

[28] Exhibit 1**Part F-General Provisions. 6. Travel Expense Coverage**. ***This coverage applies only if the loss occurs more than 100 miles from your address shown on the declarations page **or your place of alternative garaging**.(Page 18, Policy Number YMZ263796F, Form Number G13007 09 95, Process Date 7-09-2002).

[29] Exhibit 1, **Part F-General Provisions**-Changes-B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease, include, but are not limited to, changes in:
1. The number, type or use classification of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles;
4. Coverage, deductible or limits.

[30] *Exhibit 1***Part F-General Provisions**
**Changes**
*****
**B.*****Changes during the policy term that may result in a premium increase or decrease include *** **The place of principal garaging of insured vehicles**

[31] Exhibit 1. **Master Driver Automobile Policy Declarations**
*****
**Change Endorsement**
Policy has been amended as follows:
Premium Adjustments: Additional Premiums None
**Information/Coverage Change –Garage Territory**
Substitution of Vehicle 18 for 16.
(Page 1, Master Driver Automobile Policy Declarations Number YMZ263796F, Process Date 01-02-2003)

under its Covered Auto Section, has a heading entitled "**Alternative Garage Location"** for each vehicle of the two automobiles, one truck, and one camper covered ensured under the policy. Coverage is provided for persons involved in accidents in all fifty states[32]. Coverage is designed to conform to mandatory insurance[33] coverage in all fifty states. Some contract provisions are not applicable to vehicles garaged in Vermont.[34] Those references in the Personal Auto Policy and Endorsement and in the Personal Auto Composite Endorsement are implicit acceptance by the insurer that the Island law is to be followed.

The state in which the vehicle is garaged or the state in which the accident involving a hit and run driver happens, however, does not change the coverage under the policy, but it does impact certain provisions on underinsured motorist coverage and Split Uninsured and Split Underinsured coverage. The provisions of the policy clearly intends to provide coverage for damages no matter where a motor vehicle is principally garaged or alternatively garaged.

---

[32] Exhibit 1-Contract, **Part F-General Provisions**
**Policy Period and Territory**
******* B. The Policy territory is: 1. The United States of America, its territories ***.

[33] *Exhibit 1*-Personal Auto Policy and Endorsements, Form G130070995 at page 4 of 18 pages
Part A –Liability Coverage provides -
*** **Out of State Coverage**
If an **auto accident** to which this policy applies occurs in any state or province other than the one in which "your covered auto"is principally garaged, we will interpret your policy for that accident as follows:
A, If the state or province has:
1. A financial responsibility or similar law specifying limits of liability for :bodily injury " or "property damage" higher than the limit in the Declarations, your policy will provide the higher specified limit.

[34] Exhibit 1, Contract, Personal Auto Composite Endorsement- Vermont
(G11244 03 02 (G11244-77)
*** The following endorsements contained in your policy booklet are not applicable if your "covered auto" is principally garaged in Vermont.
PP 03 11 06 94 Underinsured Motorists Coverage
PP 04 01 04 86 Split Uninsured Motorist Coverage
PP 04-02 04 86 Split Underinsured Motorists Limits

**8. York Insurance Company Of Maine By Ceding Its Insurance Business To A Company Subject To R.I. Law Agreed Explicitly To Stacking.**

By its ceding agreement with OneBeacon Insurance Company, Defendant, York Insurance Company of Maine voluntarily agreed to be subject to R.I.'s stacking law. It ceded its policy, premiums, payment responsibilities, and adjustment duties, prior to the accident, to a licensed foreign insurance company in the State of Rhode Island which was subject to the insurance laws of Rhode Island.

The Defendant, York Insurance Company of Maine "reinsures 100 percent of its business with OneBeacon Insurance Company. (Deposition of Dennis Smith, Secretary of York, page 17 lines 18-19, February 21, 2006, C.A. 05-496ML). "It's 100 percent reinsurance agreement by which York Insurance Company of Maine cedes 100 percent of its insurance business to OneBeacon Insurance Company, which in turns assumes all of that business in exchange for receipt of premiums and its handles the claims on policies written by York Insurance Company of Maine." (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006, C.A. 05-496ML). "Cede is when an insurance company transfers some amount of some portion of its business to another, to a reinsuring company, which assumes that particular amount of the business." (Deposition of Dennis Smith, page 33, lines 11-14, February 21, 2006, C.A. 05-496ML).

OneBeacon Insurance Company, a Pennsylvania Corporation, which is a wholly owned subsidiary of OneBeacon Insurance Group, LLC, collected the premiums and handled the adjustment of claims for York Insurance Company of Maine under a ceding agreement of premiums and claims with York Insurance of Maine . (Answer of York Insurance Company of Maine to paragraph 9 of Plaintiff's Complaint, Paragraph 6, February 14, 2007), (Deposition of Dennis Smith, page 29, lines 6-12, February 21, 2006,

C.A. 05-496ML).Under the ceding agreement, except for the issuance of contract, OneBeacon Insurance Company, a foreign corporation subject to the insurance laws of Rhode Island stood in the shoes of the Defendant, York Insurance Company of Maine.

**9. Several Cases Cited By Defendant Are Inapposite.**

The cases cited by Defendant are inapposite.

In *Mancini v. Utica Mut. Ins. Co*., 653 A.2d 727 (R.I. 1995), a driver under a policy purchased by fleet owner was not allowed to stack because he had not purchased the coverage, here Laplante had purchased coverage.

Unlike *Mendez* in the interest weighing in *Mendez v. Brites*, *849 A.2d 329, 337* (R.I. 2004), Laplante like *Amick,* in *Amick v. Liberty Mutual Insurance Co.*,455 A.2d 793,(R.I. 1983) [35] .chose to have extra territorial coverage in R.I., had a Rhode Island accident, and, thus using interest weighing analysis is entitled to *intra-policy* stacking. Like the dicta mandated in *Mendez*, Laplante bargained for coverage in R.I. The Defendant misreads the import of the dicta in that case.

Although Defendant cites the case, *Crellin Technologies v. Equipmentlease Corp*., 18 F.3d 1, 5 (1st Cir. 19940, the Defendant does not appreciate the significance of retired First Circuit Court Judge Bruce Selya comment that that the R.I. Supreme Court.

---

[35]*Mendez v. Brites*, ***849 A.2d 329, 337*** (R.I. 2004) *** Id. at 794. This Court applied Rhode Island law to that policy's coverage and reformed the minimum coverage limits to conform to applicable Rhode Island law. Id. at 796. In doing so, the Court reasoned that raising the limit on the policy to meet Rhode Island's minimum coverage requirement implemented the state's public policy that those who undertake to insure a vehicle against accidents occurring in this state must do so for at least the statutory minimum amount of coverage. See id. And the Court also ruled that such a reformation of the contract was consistent with the parties' intent when they entered into the contract. See id. Because the insured had selected this optional out-of-state coverage, Rhode Island law would have to deem him an underinsured motorist — unless the Court reformed the policy to raise the limit on the policy's coverage to conform to Rhode Island laws. Id. at 795.In these circumstances, the Court said, "[w]e do not believe that the insured bargained for the status of an uninsured motorist when he purchased the optional coverage from Liberty Mutual." Id. at 796. Thus, the Court reformed the policy and raised the policy limit from the Massachusetts minimum to the minimum that Rhode Island law required. Id.

has "indicated a preference for an interest-weighing analysis in contract related matters. *Crellin Technologies v. Equipmentlease Corp.*, 18 F.3d 1, 5 (1st Cir. 1994

Laplante is entitled to have his benefit of R.I. law in Rhode Island[36] protected by the Due Process[37] and Reciprocity considerations of the Constitutions of the United States and Rhode Island. Article 4, §1, of the United States Constitution mandates that Full Faith and Credit be "given in each state to the public acts, records, and judicial proceedings of every other state".

Plaintiff
James P. Laplante
By His Attorney
/s/Keven A. McKenna
Keven A. McKenna, PC
23 Acorn Street
Providence, RI 02903
(401) 273-8200
(401) 521-5820 Facsimile

**Certification of Notice**

I, the undersigned, hereby certify that on the 15th day of October, 2007, a true copy of the within document was filed electronically, and is available for viewing and downloading from the ECF system; and that C.Russell Bengston, the Attorney for York Insurance Company of Maine, C. Russell Bengsten, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903 will receive notice through the ECF system.

/s/ Keven A McKenna

---

[36] *Restatement (Second) Conflict of Laws (1971) Choice of Law Principles*. (1) A court, subject to constitutional restrictions, will follow **a statutory directive** of its own state on choice of law.

[37] *Mitchell v. State Farm Ins. Co.*, 315 Mont. 281, 68 P.3d 703 (2003) 102, 2003 MT); U.S.C.A. Const Amend XIV.. Anti-stacking provision in automobile insurance policies violated substantive due process, where provision permitted insurer to charge premiums for five separate uninsured motorist (UM) coverages, in spite of fact that the anti-stacking provision only permitted insured to recover for one coverage.