**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **James P. Laplante**, | : | |
| Plaintiff | : | |
| v. | : | C.A. 07-0062ML |
| **York Insurance Company of Maine**: | | |
| Defendant | : | |

**Plaintiff's Objections to Certain of Defendant's Undisputed Facts and Proposed Corrections of Those "Disputed" Undisputed Facts.**

Now comes the Plaintiff, pursuant to LR Cv 56 (a)(4); and (a) disputes the Factual Averments numbered **3, 4, 5, 6, 7, 9, 11, 12, 15, 16, 18,20, 21, 23, 24, 26** and **27**, as contained in Defendant's Statement of Undisputed Facts Set forth on September 28, 2007; and (b) suggests the following proper statements of the actual undisputed facts by the Defendant as they relate to the opposition to the merits of Defendant's Partial Summary Judgment Motion. The actual facts relating to the stay of James Laplante in Rhode Island in 2001, 2002, and 2003 and to the his garaging of his vehicles in Rhode Island during that time are not material facts in dispute, however, the legal characterization of those facts by the Defendant are disputed.

The underlined sentences and words in the Defendant's statements are the disputed phrases. The *italicized* sentences are the changes to which the Plaintiff agrees to be undisputed facts.

1. The Plaintiff disputes Defendant's Undisputed **Fact 3**, which states as follows:

   **"**3. The Plaintiff and Ms. Brown had been living together **in Vermont** since approximately the late 1990's and **continuing** to the present. Laplante 5. at 5 and 25.**"**

   The Plaintiff contends that the correct averment should have read as follows:

3.The Plaintiff and Ms Brown have been living together *as companions since 1990's.(*Deposition of Corrina Brown, 9/21/07,pages, 6, 7, 8,12, 26, 35,40*) Initially they resided together in Vermont. In 2001 Ms. Brown, with the assistance of the Plaintiff, purchased a duplex house in North Smithfield, Rhode Island.(Depo.Brown,P.6.) Ms. Brown desired to live near her father and grandmother in nearby Middleboro, Massachusetts. (*Brown Depo, p.7, Laplante Deposition,6/12/07.p. 31 *) The duplex was sold in the fall of 2003. (*Brown, p.8 *) From 2001 through 2003, the parent's of James Laplante. Joseph and Susan Laplante, lived in one side of the duplex, and James Laplante and Corrina Brown lived in the other side of the duplex.*(Brown, p.9 *) During that period, for economic reasons, Corrina Brown maintained her job at Pizza Chef in Quechee, Vermont, and her apartment in Hartland Vermont. (*Brown,p.83*) During that three-year period, Corrina Brown would live in Rhode Island when she was not working.* (Brown, pages 44, 54, 66,68,71,73, 83, 88) *During that time period, James Laplante lived in Rhode Island, excepting when he was working out of state at overnight locations, and excepting for the few occasions when he visited overnight with his fiancée in Hartland when he was not on a job."* (Laplante, p.58)

2. The Plaintiff disputes Defendant's Undisputed **Fact 4**, which states as follows:

"4. The **Policy was issued** by York Insurance Company of Maine (hereinafter "York" through Ford Agency in Woodstock, Vermont. O'Donnell Par. 3."

Only *Parts* of the Policy were issued in Vermont. The Ford Insurance Agency only processed the issuance of two of the several parts of actual policy, the Declarations, and the Auto Insurance Cards. The then adjuster of One Beacon Insurance Company, Kathleen Ahearn, on June 15, 2004,(Exhibit 3 of Affidavit of James Laplante),mailed from its archives to Plaintiff's counsel in Rhode Island the following parts of the Master Automobile Drivers Policy, (i) The Master Driver Automobile Declaration pages and changes**,** Form Number G208020699**,**(ii) The Personal Auto Policy and Endorsements, Form number (G130070995), (iii) The Vermont Personal Auto Composite Endorsement, Forms (G112440302) and (11244-7)**,**and the (iv) The Civil Union, form G135770101,

Vermont Changes, Copies of Privacy Notices and Discounts, and copies of some of the insurance cards. See Plaintiffs, Exhibit 1-A, Exhibit 1-B, Exhibit 1-C, and Exhibit 1 D.

The Defendant's Affiant, Kristin O' Donnell, was not an employee of the Ford Insurance Agency of Vermont, or of York Insurance Company of Maine, and could not have had any personnel knowledge of the past administrative practices of those entities. None of the claims adjusters of OneBeacon Insurance Company, who have identified themselves to the Plaintiffs through letters to the Plaintiff and in depositions, in the years 2003 through 2005, have filed affidavits. Carl Kallenberg, Kathleen Ahearn, and Edward P. Facchetti, of OneBeacon Insurance Company, as set forth in their letters in 2003 and 2004 (Brown Depo, page 39, Plaintiff's Exhibits 33,34,35, 37, 38 attached to Affidavit of James Laplante) had knowledge of the adjustment activities of OneBeacon Insurance Company after the accident.

Paragraph **4** of the Defendant's Undisputed Facts should have read as follows:

> "4. *The Declaration Pages of the Master Drivers' Automobile Policy and the Auto Insurance Cards of Corrina Brown and of James Laplante were prepared* by the Ford Insurance Agency in Woodstock, Vermont. *The archive copies of the entire policy was first delivered to James Laplante to his then counsel in Rhode Island, on June 15, 2004." (Deposition of Corrine Brown, August 21, 2007, Page 14, line 13, Defendant Exhibit 35 to Affidavit of James Laplante.)*

3. The Plaintiff disputes Defendant's Undisputed **Fact 5,** which states as follows:

> "5. The Policy has a single limit of coverage in the amount of $300,000.00 and contains a provision that states: Single Limit of Liability A. Our maximum limits of liability for all damages for bodily injury resulting from any one accident is the limit of liability shown in the Declarations for bodily injury Uninsured Motorist Coverage. …1. … 2. …3. Vehicles or premiums shown in Declarations. Exhibit 1 to the O'Donnell Affidavit, Personal Auto Composite Endorsement-Vermont, For G11244 03 02, page 4 of 6, Endorsement G131156 03-02."

The statutory supplements of Rhode Island for James Laplante and of Vermont for Corrina Brown are part of the policy and override its contractual provisions, which limit statutory coverage. Various Single Limits of Coverage are located in each of the sections, A, B, C, and D of the two major sections, the Basic Policy, and the Auto Composite Section. Although the single limit of coverage on page 4 of 6 of Endorsement G131156 03-02 may apply to vehicles garaged in Vermont, the single limit of liability in Form G13007 09 05 on page 5 of 18, subject to R.I.'s statutory overrides, appears to be designed for vehicles garaged in other states. The statutory overrides include both uninsured and underinsured contract limitations.

Paragraph **4** of the Defendant's Undisputed Facts should have read as follows:

> "4.*At page 4 of 6 of the Personal Auto Composite Endorsement-Vermont, For G11244 03 02, Endorsement G131156 03-02.There is* a single limit of coverage in the amount of $300,000.00 and contains a provision that states: Single Limit of Liability A. Our maximum limits of liability for all damages for bodily injury resulting from any one accident is the limit of liability shown in the Declarations for bodily injury Uninsured Motorist Coverage. …1. … 2. …3. Vehicles or premiums shown in Declarations. Exhibit 1 to the O'Donnell Affidavit"

4. The Plaintiff disputes Defendant's Undisputed **Fact 6,** which states as follows:

> 6.An alternative garage location" was required to be listed in the Policy declarations for each of the vehicles covered by the Policy because the mailing address provided by Mr. Laplante the mailing address provided by Mr. Laplante and Ms. Brown was a Post Office Box and the identification of the location where the vehicles are principally garaged is required for determination of the rating information and the ultimate issuance of the policy. O'Donnell Aff. Par. 3."

The explanation of the current claims adjuster is inconsistent with the documents and the facts; and is an opinion by a person who is non employee.

O'Donnell was not the employee of Ford Insurance Agency who processed the archived declaration sheets on July 9, 2002, August 22, 2002, and on January 1, 2003.

(Plaintiff's Exhibit 1-A). As previously noted, it appears from Defendant's Exhibit 3, that it was Heather Redington of the Ford Insurance Agency, who prepared the 2002 renewals and the amended endorsements. Since the basic policy provided fifty (50) state coverage for liability, (Exhibit 1-B, Page 4 of 18 on Extraterritorial Coverage), and for uninsured and underinsured coverage, (Exhibit 1-B, Part F-B(1)at Page 9 of 18, and allowed garaging in other states, the location of the garaging of vehicles, either on principal basis or an alternative basis appeared to be little significance other than for rental coverage and for split coverage on property damages. The policy cover persons, not vehicles. Laplante expected coverage in Rhode Island of his person.

The sequence of changes on the policy parts furthermore suggest a scenario of more consistent with the depositions and photographs of Laplante and Brown, that all of the vehicles, but for the Jeep driven by Brown, were garaged in R.I., registered in Vermont, and only insured when actually in use. (James Laplante Deposition, May 12, 2007. Page 31, line 12, Page 32, line 2, Page 32, line 13 Page 33, line 4., Page 34, line 4,) "Q. Was the 1978 Ford Pickup principally garaged in Rhode Island. A. Yes." (Depo. Laplante, Page 34, lines 12,13)

According the printing on the Declaration Sheets, on the Basic Policy, and on the Personal Auto Composite Policy for Vermont, for the term August 29, 2002 to August 29, 2003, the renewals were first processed on July 9, 2002. On July 1, 2002 Heather Redington of Ford Insurance Company had inquired of two trucks that James had on a separate policies. (See Plaintiff's Exhibit 3 to his Affidavit). On July 9, 2002, the first declaration sheet for the renewal for August 29, 2002 through August 29, 2003, was first processed. Effective July 25, 2002, on August 22, 2002, the Declaration Sheet for August

29, 2002 through August 29, 2003 was amended to delete Vehicle 15 and to provide a premium rebate of $326. (See Defendant's Exhibit to Affidavit of O'Donnell.). Effective December 20, 2002, the only Information/Coverage Change-Garage Change noted on the amended Declaration pages was made to substitute the eventual accident truck, Vehicle 18, for Vehicle 16 . On the Declaration page effective December 20, 2002, there was a terroritorial change for the Ford F378 Truck on December 20, 2002 because that truck had originally been covered when it was located in Vermont, prior to its being garaged and rebuilt in North Smithfield, R.I. (See Exhibit 1-A Declarations, processed January 1, 2003.) That is the only change of territory notice included on any of the declaration changes. (See Exhibit 3 on inquiry letter on two trucks from the Ford Insurance Agency on July 1, 2002, and see the photograph of two trucks in Exhibit 4 and Exhibit 5 attached to James Laplante's affidavit, See the photograph of Subaru and Jeep and trucks of Corrina Brown in North Smithfield, Rhode Island in Exhibit 6 to James Laplante's Affidavit.).

Regarding the switching of coverage, Brown said: "I didn't have insurance on my cars all the time, we used it when we needed it" (Corrina Brown, page 14, lines 4-6, Depo. 8/21/07) Regarding the earlier coverage issues on the trucks, Laplante, in response to a question said: "Q. How many times do you believe you talked to somebody at the Ford Agency?" A. I 'd say since then at least a dozen whenever an issue came up and we needed to contact them, whenever I need an updated card that shows you have insurance or we were taking a vehicle off because we were putting a different on . They all stayed registered but only the insured ones we were using would be insured at the time." (Deposition of James Laplante, June 12, 2007, page 38, lines 18 to 24, page 39, line 1.).

He had an expectation from the terms of the policy that he was covered while living in Rhode Island.

**Paragraph 6** of the Defendant's Undisputed Facts should have read as follows:

> "6. *Alternative garage locations were listed on the declaration pages and coverage provisions related to alternative garage locations were list in the Basic Policy and In Auto Composite Policy for Vermont."* (Plaintiff's Exhibit 3 to his Affidavit

5. The Plaintiff disputes Defendant's Undisputed **Fact 7**, which states as follows:

> "7. The alternate garage location for each vehicle covered under the Policy is stated in the Policy's declaration to be Hartland, Vermont where the plaintiff and Ms. Brown reside***d***. O'Donnell Aff. Par. 3, Deposition Transcript of James Laplante at page 5, (hereafter , "Laplante T. at __")."

Paragraph 6 is designed to mislead the reader in assuming that Laplante and Brown resided in Vermont. It is true that the alternative garage location on the Policy Declarations from July 9, 2002 through January 3, 2002 states the alternate garage locations as Hartland, Vermont, but it is not true that such location was the residence of James Laplante in 2001 after the North Smithfield duplex house was purchased, in 2002, and in 2003 prior to his being transported to Vermont after leaving the R.I. Hospital in the spring of 2003. (See Depositions of Brown and James and Joseph Laplante, Affidavits and Exhibits of Laplante.). Joseph Laplante states that he observed his son, James, and his fiancée, Corrina Brown, maintaining a residence in the adjoining duplex at the North Smithfield addresses and observed him and his companion garaging their vehicles at that location, and pointed to photographs of their presence at the North Smithfield duplex

**Paragraph 7** of the Defendant's Undisputed Facts should have read as follows:

"7. The alternate garage location for each vehicle covered under the Policy is stated in the Policy's declaration to be Hartland, Vermont."(Exhibit 1-A, Declaration Pages)

6. The Plaintiff disputes Defendant's Undisputed **Fact 9,** which states as follows:

"9. The 1978 Ford was not a part of the Policy as originally issued, but was added to the Policy by Change Endorsement dated January 2, 2003 with an effective date of December 20, 2002. O'Donnell Aff. ¶ 5 and Exhibit B thereto."

James Laplante first insured his Ford 378 Pick up with the Defendant for the policy year August 29, 2001 through August 29, 2002.on August 31, 2001.( Attached Exhibit _ Copy of C.U. York Insurance Card Form No. G20185 10 95). That vehicle was not included on the renewal Laplante then added again that rebuilt vehicle to his policy for the term ending on August 29, 2003 on December 20, 2002, when it garaged in North Smithfield, R.I.

**Paragraph 9** of the Defendant's Undisputed Facts should have read as follows:

9. *The 1978 Ford was part of the Defendant's auto insurance coverage for the policy year ending August 29, 2002 The truck was rebuilt in the summer and fall of fall of 2002 in North Smithfield, R.I. It was added to the policy ending on August 29, 2003 on December 20, 2002, that vehicle.* was added to the Policy by Change Endorsement dated January 2, 2003 with an effective date of December 20, 2002. "(Exhibit _ CU York Insurance Card, August 2001-August 29,2002, Exhibit 1-A, Declaration Page of December 20, 2002).

7. The Plaintiff disputes Defendant's Undisputed **Fact 11,** which states as follows:

11. The Change Endorsement states that the garage location for the 1978 Ford being added to the Policy was Hartland, Vermont, as it was for all other vehicles covered by the Policy, and that James Laplante would be using it for "pleasure". O'Donnell Aff. ¶ 5. The endorsement also issued the Vermont Automobile Insurance Card for the 1978 Ford which states in capital letters across the top: "VERMONT AUTOMOBILE INSURANCE IDENTIFICATION CARD". O'Donnell Aff. ¶ 5 and Exhibit B thereto.

The Defendant failed to note that Hartland was an alternative location in an attempt to suggest that the Hartland, Vermont was where the 1978 Ford 378 was principally garaged after December 20, 2002. There is no evidence that the rebuilt 1978 Ford 378 was garaged anyplace else but in North Smithfield, R.I. after Brown purchased the property.

Paragraph **11**of the Defendant's Undisputed Facts should have read as follows:

> "11. The Change Endorsement states that *the alternate* garage location for the 1978 Ford being added to the Policy was Hartland, Vermont, as it was for all other vehicles covered by the Policy, and that James Laplante would be using it for "pleasure". O'Donnell Aff. ¶ 5. The endorsement also issued the Vermont Automobile Insurance Card for the 1978 Ford which states in capital letters across the top: "VERMONT AUTOMOBILE INSURANCE IDENTIFICATION CARD".

8. The Plaintiff disputes Defendant's Undisputed **Fact 12,** which states as follows:

> "12. The Change Endorsement's reference to information/coverage change – garage territory" refers strictly to the fact that there has been a change of vehicles covered within the specified garage territory. It does not mean that the place of garaging of any of the covered vehicles has changed. O'Donnell Aff. ¶5 and Exhibit B thereto."

The Change Endorsement speaks for itself on December 20, 2002 on the Declaration Amendment, as set forth in Exhibit 1 A of Defendant's Exhibit and in the Defendant's Exhibits. There is no factual basis for the opinion that the phrase "change of garage territory" on the amended declaration does not refer to a truck, which was located in North Smithfield Rhode Island after it been earlier located in Vermont. (Affidavit of Joseph Laplante, Affidavit of James Laplante, Ex. Photo of Truck Being rebuilt in North Smithfield, R.I.)That basis for using the term "alternate garage location" on the declaration sheet is pure speculation by a person who did not prepare the change in the Declaration.

Paragraph **12** of the Defendant's Undisputed Facts should have read as follows:

"12. The Change Endorsement's reference to information/coverage change – garage territory" refers to the fact that there has been a territorial change of a vehicle covered.

9. The Plaintiff disputes Defendant's Undisputed **Fact 15**, which states as follows:

"15. The plaintiff and Ms. Brown intended to move to the North Smithfield property at some point in time but decided against this when they determined that they did not like the congestion or the driving habits of Rhode Islanders. Laplante T. at 16 and 106. The plaintiff's parents decided that they could use the property despite the plaintiff and Ms. Brown being unable to do so and they moved into the property shortly after it was purchased. Laplante T. at 16 and 97."

The evidence is that initially, but for economic reason, Corrina Brown, intended to move out of her rented apartment near the Pizza Chef which she worked.(          ) The house Corrina Brown purchased in North Smithfield, Rhode Island was a duplex, where James Laplante and his companion maintained a residence on one side and the parents of James Laplante, Joseph and Susan Laplante lived on the other side, (See Affidavit and Exhibits of Joseph Laplante). After the accident, when Laplante was completely disabled and unable to care for himself in the spring of 2003, he moved to the apartment of Brown in order that she could care for him, and she then sold her North Smithfield apartment in the fall of 2003. (                                        ).

Paragraph **15** of the Defendant's Undisputed Facts should have read as follows:

"15. The plaintiff and Ms. Brown *decided after the accident on February 23, 2003 to move back to Vermont in order that Ms. Brown could care for James Laplante and continue to work.(Brown Depo, Page 88)*

10. The Plaintiff disputes Defendant's Undisputed **Fact 16**, which states as follows:

"16. From the time of purchase of the North Smithfield property until it was ultimately sold after the February 23, 2003 accident, the plaintiff's

parents resided at the premises and paid rent to Brown along with reimbursement for utilities they utilized. Laplante T. at 15 and 97."

Paragraph **16** of the Defendant's Undisputed Facts should have read as follows:

"16. From the time of purchase of the North Smithfield property until it was ultimately sold after the February 23, 2003 accident, the plaintiff's parents resided at the premises *in their side of the duplex house with the plaintiff and his fiancée*; *who lived in the other side of the duplex house. Both families shared the cost of the mortgage and the utilities for the duplex in North Smithfield. (*Deposition of Corrina Brown, page 46, Deposition of James Laplante, Affidavits of Joseph Laplante regarding living arrangements, Photo Exhibits of Brown and Laplante together at North Smithfield house, and photo exhibits of vehicles of Brown and Laplante in yard of North Smithfield house )

11. The Plaintiff disputes Defendant's Undisputed **Fact 18**, which states as follows:

"18. Bills connected to the North Smithfield property were paid by Ms. Brown from either a Vermont checking account that was in her name alone with Mascoma Savings Bank or a Rhode Island account with Sovereign Bank that was in the plaintiff's name alone for a short time until Ms. Brown's name was added as well. Brown T. at 19-20 and 78, Laplante T. at 37. The two bank accounts were also utilized by Ms. Brown to pay bills related to her own credit cards, car payments, cell phone and other living expenses in Vermont. Brown T. at 20-23, 34, 53 and 76. Ms. Brown kept the check books for both accounts with her and the plaintiff used the only ATM card from the Sovereign account. Brown T. at 20-21 and 70, Laplante T. at 65.

This statement is trying to mislead the reader to assume that only Corrina Brown paid the expenses of the North Smithfield residence. Plaintiff has submitted extensive evidence of his expenditures. (Plaintiff's Ex.. 7) Plaintiff's Exhibits and his deposition indicated that he spent money in Rhode Island for household and vehicle bills and that he contributed by his deposits to their joint checking account of the bills of the North Smithfield duplex. (See Brown Deposition, pages ,

Paragraph **18** of the Defendant's Undisputed Facts should have read as follows:

> "18. *Some of the* Bills connected to the North Smithfield property were paid by Ms. Brown from either a Vermont checking account that was in her name alone with Mascoma Savings Bank or a Rhode Island account with Sovereign Bank that was in the plaintiff's name alone for a short time until Ms. Brown's name was added as well. Brown T. at 19-20 and 78, Laplante T. at 37. The two bank accounts were also utilized by Ms. Brown to pay bills related to her own credit cards, car payments, cell phone and other living expenses in Vermont. Brown T. at 20-23, 34, 53 and 76. Ms. Brown kept the check books for both accounts with her and the plaintiff used the only ATM card from the Sovereign account. Brown T. at 20-21 and 70, Laplante T. at 65.

12. The Plaintiff disputes Defendant's Undisputed **Fact 20**, which states as follows:

> "20. After Ms. Brown's purchase of the North Smithfield property, the plaintiff periodically stayed there with the plaintiff's parents and the plaintiff's brother stayed there for a period of time as well. Laplante T. at 19 and 86. Ms. Brown would visit the property when she had time off for two or three days in a row and then would return to Vermont. Brown T. at 66-67."

Ms. Brown rented an apartment in Hartland, Vermont in order that she could be near her job as the Manager of Pizza Chef. She bought a home in North Smithfield, R.I in a duplex, and stayed there as often as she could in side of the duplex. Her in-laws lived in the adjoining duplex. (                    )

Paragraph **20** of the Defendant's Undisputed Facts should have read as follows:

> "20. After Ms. Brown's purchase of the North Smithfield property, the Plaintiff periodically stayed there with the Plaintiff's *companion, Corrina Brown, in their side of the house*, and the plaintiff's brother stayed there for a period of time as well. Laplante T. at 19 and 86. Ms. Brown would stay at her R.I. residence, at times when she had time off, for two or three days in a row and then would return to Vermont. Brown T. at 66-67."

13. The Plaintiff disputes Defendant's Undisputed **Fact 21**, which states as follows:

"21. The plaintiff worked on repairing and customizing the 1978 Ford at the North Smithfield property after the property was purchased by Ms. Brown and also utilized a 1985 Subaru, registered in Vermont and included under the Policy, to commute back and forth between Vermont and Rhode Island. "Comp. ¶ 26 and Laplante T. ¶ 34.

The phraseology of paragraph 21 is misleading. It is designed to suggest that Laplante was actually living in Hartland, Vermont, and that he was commuting from Vermont to Rhode Island. Laplante's activities were centered around his home in North Smithfield. He did use his Subaru, which was garaged in R.I. to visit his fiancée in Hartland Vermont, periodically, when she had to work and he did not. ( )

Paragraph **21** of the Defendant's Undisputed Facts should have read as follows:

"21. The plaintiff worked on repairing and customizing the 1978 Ford at the North Smithfield property after the property was purchased by Ms. Brown and also utilized a 1985 Subaru, registered in Vermont and included under the Policy, to *travel* back and forth between *North Smithfield, Rhode Island, and Hartland, Vermont in 2001 and 2002* "Comp. ¶ 26 and Laplante T. ¶ 34.

14. The Plaintiff disputes Defendant's Undisputed **Fact 23,** which states as follows:

"23. During 2002, the plaintiff continued to travel relative to his work and the record of his ATM purchases indicates that he was variously in Rehoboth, Delaware, Brattleboro, Vermont, Fitchburg, Massachusetts, Nashua, New Hampshire, Raynham, Massachusetts, Plymouth, Massachusetts, Bellows Falls, Vermont, Claremont, New Hampshire and North Attleboro, Massachusetts, among other locations. Laplante T. at 65."

In 2002 the Plaintiff made ATM purchases also in Rhode Island related to his work and his living expenses. ( James Laplante Affidavit, Spending Exhibits 7, Ex.9, Ex. 12, Ex. 13, Plaintiff's Undisputed Facts.)

Paragraph **23** of the Defendant's Undisputed Facts should have read as follows:

"23. During 2002, the plaintiff continued to travel relative to his work and the record of his ATM purchases indicates that he was variously in ***Rhode Island,*** Rehoboth, Delaware, Brattleboro, Vermont, Fitchburg, Massachusetts, Nashua, New Hampshire, Raynham, Massachusetts, Plymouth, Massachusetts, Bellows Falls, Vermont, Claremont, New Hampshire and North Attleboro, Massachusetts, among other locations. Laplante T. at 65."

15. The Plaintiff disputes Defendant's Undisputed Fact **24**, which states as follows:

24. When the plaintiff was working at a job some distance away his employer would take care of his lodging. Laplante T. at 98. For jobs in Massachusetts, Vermont and New Hampshire, the plaintiff would drive to the jobs and stay with his parents at 217 Douglas Pike, North Smithfield or with Ms. Brown in Vermont. Laplante T. at 98.

James Laplante stayed his home in North Smithfield, R.I. when he worked within commuting distance and not from his fiancee's rental apartment in Hartland, Vermont. ( )

Paragraph **24** of the Defendant's Undisputed Facts should have read as follows:

24. When the plaintiff was working at a job some distance away his employer would take care of his lodging. Laplante T. at 98. For jobs in Massachusetts, Vermont and New Hampshire *in 2001 and 2002*, the plaintiff would drive to the jobs *from North Smithfield*, and *stay in his duplex at Douglas Pike, North Smithfield. ( )*

16. The Plaintiff disputes Defendant's Undisputed Fact **26**, which states as follows:

"26. The plaintiff has filed income tax returns with the state of Vermont since at least 2000 and has never filed income tax returns in the state of Rhode Island. Laplante T. at 25 and 50-51. The address utilized by the plaintiff for his income taxes since at least 2000 has been the Vermont address he shares with Ms. Brown. Brown T. at 29."

When the Plaintiff worked in R.I he had R.I. income taxes deducted. He help pay for the property taxes on duplex in North Smithfield, R.I. However, he does not recall filing for a refund in Rhode Island. ( )

Paragraph 26 of the Defendant's Undisputed Facts should have read as follows:

> "26. The plaintiff has filed income tax returns with the State of Vermont *in* *2000* and has never filed income tax returns in the state of Rhode Island. Laplante T. at 25 and 50-51. The address utilized by the plaintiff for his income taxes since at least 2000 has been the Vermont address he shares with Ms. Brown. Brown T. at 29."

**Plaintiff**
James P. Laplante
By His Attorney
/s/Keven A. McKenna
Keven A. McKenna, PC
23 Acorn Street
Providence, RI 02903
(401) 273-8200
(401) 521-5820 Facsimile

**Certification of Notice**

I, the undersigned, hereby certify that on the 15th day of October, 2007, a true copy of the within document was filed electronically, and is available for viewing and downloading from the ECF system; and that C.Russell Bengston, the Attorney for York Insurance Company of Maine, C. Russell Bengsten, Carroll, Kelly & Murphy, Counselors at Law, One Turks Head Place, Suite 400, Providence, R.I. 02903 will receive notice through the ECF system.

/s/ Keven A McKenna