UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JAMES LAPLANTE | : | |
| | : | |
| vs. | : | C.A. No. 07-62 ML |
| | : | |
| YORK INSURANCE COMPANY OF MAINE | : | |
| | : | |

DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY (Docs. #18-#20)

**A. Vermont Law is Not Unsettled in This Area: Vermont Enforces Intra-Policy Anti-Stacking Policy Language.**

The plaintiff argues in opposition to the Motion for Partial Summary Judgment filed by defendant York Insurance Company of Maine ("York"), that Vermont and Rhode Island law are not in conflict on the issue of intra-policy stacking and that the case of Monteith v. Jefferson Insurance Company, 618 A.2d 488 (VT, 1992), which permitted stacking of coverages from multiple policies issued by different insurers, calls into question the continuing viability of Sanders v. St. Paul Mercury Ins. Co., 536 A.2d 914 (VT, 1987), the leading case on enforcement of policy provisions prohibiting intra-policy stacking. The plaintiff is wrong on both points. Monteith, by its express holding, is limited to cases of Inter-policy stacking and it expressly reaffirms the Sanders holding.

The Monteith court was faced with a plaintiff who was seeking to stack underinsured motorist coverage provided by Jefferson Insurance Company for his motorcycle and coverage provided under a separate policy by a different insurer, Peerless Insurance Company, for his automobiles. Peerless invoked the "owned but uninsured" clause of its policy to exclude coverage "while occupying . . . any

motor vehicle owned by you . . . which is not insured for this coverage under this policy." The plaintiff argued that Vermont law, 23 V.S.A. §941(a), which provided that no policy could be delivered or issued for delivery in Vermont for a vehicle registered or principally garaged in Vermont without uninsured/underinsured coverage, required stacking of the coverage afforded by each, distinct policy. In ruling for the plaintiff, the Court determined that to deny coverage to the plaintiff under the Peerless policy would be to allow Peerless to write into the policy an exception to the statutory mandate for coverage – a situation not present with intra-policy stacking. The Court also clearly observed:

> Peerless mistakenly relies on *Sanders* to support its argument. In *Sanders* we held that the insurer could write and enforce an *intra*policy stacking provision but we did not extend our rationale to *inter*policy stacking provisions. [Citation Omitted]. We thus distinguished between an insurer's power to define the scope of UM coverage within a single policy that did cover multiple vehicles under separate endorsements, and the absence of an insurer's power to delimit or affect UM coverage in policies written by other insurers. Id. at 491. Emphasis in original.

The Court's holding relative to inter-policy stacking has no effect upon Sanders and, in fact, Sanders is recognized by the Court to still be good law. There is simply no support for the plaintiff's argument that Vermont has retreated from the holding in Sanders or that Vermont's recognition of anti-stacking policy language is not in conflict with R.I.G.L. §27-7-2.1.

**B. The Plaintiff Has Mixed-Up Tort and Contract Choice of Law Principles.**

The issue currently before the Court concerns the construction of an insurance contract – not the facts of the underlying motor vehicle accident. The

plaintiff's repeated emphasis upon the facts of the accident and the injuries sustained by the plaintiff is irrelevant to the stacking issue before the Court in this Motion for Partial Summary Judgment. The plaintiff's confusion on this issue spills over into his choice of law argument where he focuses on, essentially, tort choice of law principles.

When analyzing this issue, it is critical that the contract between the parties remain the focus of attention and not the motor vehicle accident. It is absolutely undisputed that the accident occurred and that it occurred in Lincoln, Rhode Island, but the Court is not being asked to determine what law should apply to the adjudication of the underlying claim for injuries – only what law should apply to the determination of the contractual coverage issue. The location of the actions and relationships are fundamentally different depending on which issue is being addressed with the balance of equities clearly favoring the application of Vermont law to a contract entered into in Vermont, covering persons who represented themselves to be Vermont residents, covering vehicles that the insureds represented to be garaged in Vermont and for which the insureds paid Vermont rates. When York's lack of connection to Rhode Island on any level is added to this mix, the outcome is clear: Vermont law must apply.

**C. <u>The Extra-territorial Coverage Afforded By The York Policy Has No Significance To The Construction Of The Policy</u>.**

The plaintiff states that because the policy provides coverage throughout the United States, York was on notice that the laws of the State of Rhode Island would apply to it. While it is certainly true that York knew the coverage of the policy could be invoked for an accident anywhere in the United States, it does not then follow

that York should have assumed that the construction of its policy terms would be governed by the law of any state except the states which regulate its conduct. This policy was clearly applied for, negotiated and issued in Vermont. The endorsements to it identify it as a Vermont policy and the declarations pages identify the insureds as Vermont residents with vehicles garaged in Vermont. It complies in all respects with Vermont law because Vermont had the authority and the right to regulate York's conduct relative to policies issued to Vermont residents for vehicles registered in Vermont.

On the other hand, York does not do business of any kind in Rhode Island. It had no reason to anticipate that the terms of this policy or the extent of its obligations under this policy would be construed by the application of Rhode Island law beyond its obligations to meet the financial requirements of any compulsory insurance law.[1] This is particularly true in this case where the insureds, if they are now telling the truth, were not truthful with York about either their living arrangements or the location of some of the vehicles covered under the policy at the time the coverage was obtained. That the policy covers an accident anywhere in the United States does not mean that York should be expected to anticipate that, after the policy issues, its insureds will move to another state with their vehicles and fail to inform it of that critical change – a change that affects the rates charged by the insurer and the willingness of the insurer to continue coverage – particularly in a jurisdiction where the insurer is not licensed to conduct business. After the fact, the

[1] The plaintiff argues (doc. 35-2, page 10) that this policy provision providing that the limits of the policy will automatically increase if necessary to comply with any state's financial responsibility law, includes Rhode Island's stacking statute. The plaintiff fails to understand that the stacking statute is not a financial responsibility law.

plaintiff is simply trying to unilaterally alter the terms of the contract by changing his address and the location of the vehicle without advising the insurer.

The plaintiff's argument, that because coverage is provided in all fifty states, the insurer must anticipate that it's policy provisions will be construed under the law of any one of those states in the event of a coverage dispute, means that an insurer such as York, which does business in only three jurisdictions, must craft a policy that complies with the regulatory requirements of all fifty states – even those that have no right to regulate its conduct. Since these regulatory requirements are sometimes contradictory, it would be a virtual impossibility for most insurance companies to issue a policy in full compliance with all these obligations. In addition, because state laws have no extra-territorial effect, an insurer can hardly be expected to comply with the statutes of states where it does not do business. And the plaintiff cannot confer this obligation on York by the mere fact of being involved in an accident in a state other than the one that he reported to York as being his residence and the location of his vehicles. Does the policy provide coverage for accidents in Rhode Island and the other states in the United States? Yes, according to the terms of the policy. Does this fact have anything at all to do with the construction of the terms of the policy? No.

**D. <u>The Plaintiff Was Not a Domiciliary of Rhode Island</u>**

The plaintiff's efforts to bolster his claim of domiciliary status in Rhode Island include a new affidavit of Joseph Laplante filed with the plaintiff's objection to the defendant's Motion for Partial Summary Judgment (doc. #35-3). Interestingly, for the first time, ever, in this case, the house in Smithfield is referred to as a "duplex"

with Joseph Laplante describing he and his wife as living on one side and his son and girlfriend living on the other. Throughout the long history of this accident and the aftermath, through the filing of many affidavits and the taking of a fair number of depositions, no one has ever used the word "duplex" or described the living arrangements in this manner. It simply defies credulity.

Equally as interesting is the plaintiff's attempt to claim on one hand at page 7-8 of his Memorandum (doc. #35-2) that he is a "resident" as defined by R.I.G.L. §31-1-18 (the definitional section for the statutory title: Motor & Other Vehicles) and to then explain away, on the other hand, his failure to comply with R.I.G.L. §31-3-2 and §31-10-1. The former statute requires registration in Rhode Island of any vehicle operated on the highways of this state for a period of thirty days and the latter requires anyone claiming to be a resident under §31-1-18 (as the plaintiff does) to obtain a Rhode Island operator's license within thirty days of establishing residency. It is undisputed that the plaintiff neither obtained a Rhode Island operator's license nor registered in this state either of the vehicles he claims were principally garaged in Rhode Island for a number of years. Therefore, the plaintiff has argued that "since Laplante visited with his fiancé often when he was not working from Rhode Island, neither he nor his truck was in Rhode Island for thirty (30) continuous days."[2] Memorandum (doc. # 35-2), page 8. The plaintiff does not advise as to just how many "continuous days" he was present in this state, but in his zeal to use §31-1-18 to his benefit, he has admitted that he has never been resident in this state for thirty days at a time. Apparently, the plaintiff was enough of a

[2] It should be noted that the statutes do not contain the word "continuous" and do not require that the residency be, in fact, continuous, so this is a gloss on the statute created strictly by the plaintiff.

resident of Rhode Island to claim domiciliary status in this litigation but not enough of a resident to otherwise comply with the laws of this state. He also, we know, was not enough of a resident to change his address from Vermont to Rhode Island relative to his employers, to file his income tax returns in this state or from an address in this state, to register to vote here, register his vehicles here or obtain a driver's license. The bottom line is clear: he was not a resident at all.

**E. <u>The Relationship Between York and OneBeacon Insurance Company And/Or OneBeacon Insurance Group, LLC is Irrelevant To This Matter</u>**

Despite the reams of paper filed in connection with the case of <u>James Laplante v. OneBeacon Insurance Group</u>, C.A. No. 05-496ML, the many depositions taken and the resulting Order of this Court dismissing that case, the plaintiff persists in erroneously arguing that York's relationship to OneBeacon Insurance Company and/or OneBeacon Insurance Group, LLC somehow enhances his position on the application of Rhode Island's stacking statute. It does not.

In advancing his argument that York is subject to Rhode Island law because of its reinsurance contract with OneBeacon Insurance Company, a company which is licensed to do business in Rhode Island, the plaintiff relies upon the discovery conducted in civil action 05-496ML and rehashes his "ceding" arguments made there. Essentially, the plaintiff argues that by entering into a reinsurance contract with OneBeacon Insurance Company that requires OneBeacon Insurance Company to handle and adjust claims submitted to York in exchange for receipt of some portion of the premiums collected by York, York "voluntarily agreed to be subject to R.I.'s stacking law." Memorandum (doc. #35-2, p. 13). Just how the plaintiff reaches this conclusion is not clear, although it seems to involve the theory that by

entering into a contract with OneBeacon Insurance Company, York has thereby subjected itself to the laws of any state in which OneBeacon Insurance Company conducts business. The plaintiff cites to no legal authority for this proposition for the very good reason that none exists. It is simply unthinkable that the mere act of entering into a contract subjects the contracting parties to the law of any jurisdiction in which the other party does business.

The plaintiff also seems to argue that the undisputed fact that both York and OneBeacon Insurance Company are owned by OneBeacon Insurance Group, LLC renders them, essentially, one corporate entity such that the business conducted by OneBeacon Insurance Company in Rhode Island is imputed to York. This is the argument that was advanced by the plaintiff in civil action 05-496ML to justify the naming of OneBeacon Insurance Group as defendant. This Court's Memorandum and Order dismissing civil action 05-496ML "unequivocally" recognizes York as a separate corporation from OneBeacon Insurance Group LLC, OneBeacon America Insurance Company, and OneBeacon Insurance Company. That Memorandum and Order should have put this issue to bed once and for all.

Finally, along these lines, the plaintiff seeks to create an issue out of the forms used by York, OneBeacon Insurance Company and OneBeacon Insurance Group. The argument seems to be that because certain standardized ISO forms are used by these various companies for various purposes, this somehow implies that York subjected itself to the law of jurisdictions in which it does not do business, including Rhode Island. While it is certainly true that some of the forms used by York are ISO certified, it is also true that specific Vermont endorsements were

included in the policy, including the very endorsement that we are concerned with, Personal Auto Composite Endorsement – Vermont, Form G11244 03 02, page 4 of 6, Endorsement G13156 03 02, governing uninsured/underinsured motorist coverage. And, of course, whatever forms may be used by OneBeacon Insurance Company and OneBeacon Insurance Group, LLC are utterly irrelevant to this dispute.

No matter which choice of law standard is applied to the undisputed facts, the result is the same: Vermont law applies to this coverage dispute and Vermont law gives full effect to the anti-stacking language present in this policy. York Insurance Company of Maine respectfully requests that its Motion for Partial Summary Judgment be granted and that judgment enter in its favor that the plaintiff's potential recovery, here, is limited to the clearly stated policy limit of $300,000.00.

YORK INSURANCE COMPANY
OF MAINE
By its Attorneys,
CARROLL, KELLY & MURPHY

/s/ C. Russell Bengtson
C. RUSSELL BENGTSON #1233
PATRICIA A. BUCKLEY #2987
One Turks Head Place, Suite 400
Providence, RI 02903
(401) 331-7272
(401) 331-4404 (fax)
rbengtson@ckmlaw.com

CERTIFICATION

I hereby certify that on the 26 day of October, 2007, a true copy of the within document was filed electronically and is available for viewing and downloading from the ECF system and that Keven A. McKenna, Esq., kevenm@mckennalaw.cc will receive notice through the ECF system.

/s/ C. Russell Bengtson